## UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE
PUBLIC COMPANY LIMITED,

        *Plaintiff,*

v.

UNITED STATES,

        *Defendant,*

   and

WHEATLAND TUBE COMPANY,

        *Defendant-Intervenor.*

Hon. Stephen A. Vaden, Judge
Court No. 21-00049

## PROPOSED ORDER

Upon consideration of Plaintiff Saha Thai Steel Pipe Public Company Limited's Motion for Judgment on the Agency Record pursuant to Rule 56.2 of the Rules of the Court of International Trade, and the response briefs of Defendant United States and Defendant-Intervenor Wheatland Tube Company, it is hereby:

**ORDERED** that Plaintiff's motion is **DENIED.**

**SO ORDERED**

Date:
    New York, New York                _____
                                  Stephen A. Vaden, Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, | |
| *Plaintiff,* | Hon. Stephen A. Vaden, Judge Court No. 21-00049 |
| v. | |
| UNITED STATES, | PUBLIC VERSION |
| *Defendant,* | |
| and | |
| WHEATLAND TUBE COMPANY, | |
| *Defendant-Intervenor.* | |

**DEFENDANT-INTERVENOR WHEATLAND TUBE COMPANY'S RESPONSE IN OPPOSITION TO RULE 56.2 MOTION**

/s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

Dated: September 16, 2021

PUBLIC VERSION

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ............................................................................ 1

RULE 56.2 STATEMENTS ........................................................................................... 4

STATEMENT OF FACTS ............................................................................................. 4

STANDARD OF REVIEW ........................................................................................... 8

ARGUMENT ................................................................................................................. 10

   I.  Commerce Properly Applied Adverse Facts Available Based on Saha Thai's Participation in an Evasion Scheme and Its Failure to Report a Significant Volume of U.S. Sales of Subject Merchandise ........................................................................... 10

   II.  Saha Thai's U.S. Sales of Dual-Certified Pipe Were Necessary to Calculate an Accurate Dumping Margin and Assessment Rates ............................................... 13

   III.Commerce's Authority to Suspend Liquidation of Entries Does Not Otherwise Detract from the Effect of Its Scope Ruling ................................................................... 15

   IV.  Saha Thai's Arguments Based on 19 U.S.C. § 1677m(d) Are Unavailing ...................... 19

      A. Saha Thai Failed to Exhaust Its Administrative Remedies for This Argument .......... 19

      B. Commerce Provided Saha Thai an Opportunity to Explain Its Failure to Report Its Sales of Dual-Stenciled Pipe ................................................................................... 21

      C. Section 1677m(d) Does Not Apply to Situations Like Those Present Here ............... 22

      D. Saha Thai Could Not Be "Shocked" by Commerce's Decision to Apply AFA ......... 24

   V. Commerce's Reliance on the EAPA Report Was Reasonable ............................................. 25

CONCLUSION ............................................................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes From Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986) ....................................................... 4

*Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017) ........................................ 20

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) ........................... 9

*Coal. for Fair Trade in Garlic v. United States*, 437 F. Supp. 3d 1347 (Ct. Int'l Trade 2020). ... 21

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ................................................................. 8

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) ............................................... 20

*Daewoo Elecs. Co. v. United States*, 6 F.3d 1511 (Fed. Cir. 1993) ............................................... 10

*Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010) ..................................................... 24

*Goodluck India Ltd. v. United States*, No. 2020-2017, 2021 WL 3870722 (Fed. Cir. Aug. 31, 2021) ........................................................................................................................................... 10

*Hyundai Elecs. Indus. Co. v. United States*, 28 C.I.T. 517 (2004) ............................................... 12

*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013). ....................................... 21

*Koyo Seiko Co. v. United States*, 36 F.3d 1565 (Fed. Cir. 1994) ................................................... 10

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ........................... 8, 9

*Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538 (Ct. Int'l Trade 1988) ....................... 11

*Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056 (Fed. Cir. 2001) .......................... 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29 (1983) .............................................. 9

*Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) ........................................................................................................................................... 11

*Nippon Steel v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ......................................... 11

*NSK Ltd. v. United States*, 28 CIT 1535, 346 F. Supp. 2d 1312 (2004) ........................................ 9

*Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016) ................. 13, 22

*Qingdao Sea-Line Trading Co., Ltd. v. U.S.*, 766 F.3d 1378 (Fed. Cir. 2014) ............................. 20

*Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) ................................................. 18

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ........ 8

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed. Cir. 2002) .................. 10

*Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752 (2001) ............................................. 12, 14, 23

*Tung Mung v. United States*, 219 F. Supp. 2d. 1333 (Ct. Int'l Trade 2002) ................................. 11

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996) .................................. 9

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ................................................................ 10

*United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 73 S. Ct. 67, 97 L. Ed. 54 (1952) .......... 21

*Washington Int'l Ins. Co. v. United States*, 33 C.I.T. 1023 (2009) ................................. 12

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................... 8

19 U.S.C. § 1677e(a)(2) ................................................................................................ 10

19 U.S.C. 1677m(d) ........................................................................................... passim

28 U.S.C. § 2637(d) ....................................................................................................... 20

*NSK Ltd. v. United States*, 481 F.3d 1355, 1360 (Fed. Cir. 2007) ................................. 24

## OTHER AUTHORITIES

*Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 83 Fed. Reg. 51,927 (Dep't
    Commerce Oct. 15, 2018) (final results of antidumping duty admin. review; 2016-2017) ....... 5

*Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's
    Republic of China,* 69 Fed. Reg. 55,574 (Dep't Commerce Sept. 15, 2004) ............................ 14

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743
    (May 29, 2019) ............................................................................................................... 6

## REGULATIONS

19 C.F.R. § 351.225(a) ..................................................................................................... 17

19 C.F.R. § 351.225(l)(1) ............................................................................................... 17

PUBLIC VERSION

## INTRODUCTION AND SUMMARY

Defendant-Intervenor Wheatland Tube Company ("Wheatland") hereby submits its response brief in opposition to the Rule 56.2 motion of Plaintiff Saha Thai Steel Pipe Public Company Limited ("Saha Thai"). As demonstrated below, the final results of the U.S. Department of Commerce ("Commerce") in the 2018-2019 administrative review of the antidumping duty order on circular-welded pipe ("CWP") from Thailand are supported by substantial record evidence and otherwise in accordance with law.

The record evidence shows that Saha Thai and another Thai company, Blue Pipe, engaged in a scheme during the period of review ("POR") to evade the payment of duties under the antidumping duty ("AD") order on CWP from Thailand (the "Order"). In particular, after Saha Thai's assigned dumping rate increased in October 2018, Saha Thai ceased shipping pipe that is single-stenciled as standard pipe directly to its U.S. customers and instead began shipping pipe that is dual-stenciled as standard pipe and as line pipe to the same U.S. customers. Saha Pipe also stopped shipping directly to its U.S. customers and instead shipped the pipe indirectly through Blue Pipe. The dual-stenciled pipe was not declared to be subject to the Order when it was entered into the United States, and no AD duties were paid for it. U.S. Customs and Border Protection ("CBP"), through a separate investigation of Saha Thai and Blue Pipe that was conducted pursuant to the Enforce and Protect Act ("EAPA"), found that these companies had engaged in a scheme to evade the Order. Acting on its own authority, CBP suspended liquidation of the relevant entries of merchandise—including entries during the POR—so that the proper AD duties could be applied to them.

The entire purpose of Saha Thai's and Blue Pipe's scheme was to avoid detection of their sales of subject merchandise during the POR  in order to avoid paying AD duties. It is thus

unsurprising that during the course of the underlying administrative review, Saha Thai also failed to report these sales to Commerce. Based on this conduct, Commerce found in the final results that Saha Thai failed to cooperate to the best of its ability and applied total adverse facts available ("AFA") to the company.

There is no question that the information that Saha Thai failed to report regarding its U.S. sales of dual-stenciled pipe was necessary information. Indeed, because information regarding a respondent's sales goes to the heart of Commerce's dumping margin calculations, this court has repeatedly upheld Commerce's application of AFA where respondents have failed to report a portion of their sales to Commerce.

Commerce's decision not to combine its scope inquiry regarding dual-stenciled pipe with the underlying administrative review does not undermine its decision to apply AFA to Saha Thai. When Commerce stated that its scope ruling "would not be effective" during the POR, it was merely acknowledging that Commerce could not suspend liquidation of any entries of merchandise that entered prior to the date of initiation of its scope ruling. At the time it made this statement, however, Commerce did not know that CBP would suspend liquidation of Saha Thai's entries of dual-stenciled pipe pursuant to CBP's own authority. Moreover, Commerce's inability to suspend liquidation of entries on its own does not mean that its scope ruling can have no effect on the entries of dual-stenciled pipe that were suspended by CBP. Those entries can be now liquidated at the appropriate dumping rate because their liquidation was suspended by CBP. In any event, Commerce's decision not to combine the scope ruling with the administrative review does not in any way excuse Saha Thai's failure to report a substantial portion of its sales of subject merchandise during the POR. Saha Thai knew that Commerce's scope ruling could result in a finding that its dual-stenciled pipe was covered by the Order, but it nevertheless chose not to

report its U.S. sales of dual-stenciled pipe during the POR. Indeed, even after Commerce issued its scope ruling, Saha Thai made no efforts whatsoever to report the missing sales of dual-stenciled pipe.

Saha Thai's arguments that Commerce violated 19 U.S.C. 1677m(d) because the agency did not give it an opportunity to provide the missing sales data should be rejected. First, Saha Thai waived any arguments based on this statutory provision when it failed to raise them in the proceedings before Commerce. Second, even if its arguments were not waived, consistent with the dictates of § 1677m(d), Commerce gave Saha Thai an opportunity to explain the deficiency in its reporting once the deficiency came to light. Finally, this Court has held that § 1677m(d) not apply where a respondent has engaged in a scheme to intentionally evade reporting information to Commerce. This type of intentional conduct is not the type of "deficiency" contemplated by § 1677m(d) that Commerce must allow a respondent to correct.

While Commerce's decision to apply AFA was grounded in the record evidence of the underlying proceeding and on Saha Thai's conduct during that proceeding, there was no error in Commerce also relying on the final EAPA report issued by CBP. The EAPA report provides additional support for and corroboration of the other record evidence showing that Saha Thai participated in a scheme to avoid paying AD duties on its sales of subject merchandise by shipping dual-stenciled pipe through Blue Pipe to its U.S. customers.

For all these reasons, Wheatland respectfully requests that the Court uphold Commerce's final results as being supported by substantial evidence and in accordance with law.

## RULE 56.2 STATEMENTS

### A.  Administrative Determination Under Review

The administrative determination under review is Commerce's final results in the 2018-2019 administrative review of the antidumping duty Order on CWP from Thailand. *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019,* 86 Fed. Reg. 7,259 (Jan. 27, 2021), Appx10804–10806, and accompanying Issues and Decision Memorandum ("IDM"), Appx10778–10794.

### B.  Issues of Law Presented

1. Whether substantial evidence supports Commerce's decision to apply total AFA to Saha Thai based on the company's participation in an evasion scheme that caused it not to report a substantial portion of its U.S. sales of subject merchandise during the POR.

2. Whether Saha Thai's sales of dual-stenciled pipe were necessary for Commerce to calculate a dumping margin.

3. Whether Commerce's decision not to combine its scope ruling inquiry with the underlying administrative review prevents Commerce from finding that Saha Thai's sales of dual-stenciled pipe during the POR are covered by the scope of the Order and should have been reported as subject merchandise.

4. Whether Commerce's decision to apply total AFA should be reversed because it was based in part on the final EAPA report in which CBP found that Blue Pipe and Saha Thai had participated in a scheme to evade payment of the AD duties.

## STATEMENT OF FACTS

Commerce first issued the antidumping duty order on CWP from Thailand in 1986. *Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes From Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986). In the ensuing decades, [

]. Saha Thai 2nd SQR (Apr. 20, 2020) at Exhibit 5, Appx804296-804298. Indeed, there were no shipments of line pipe or dual-stenciled standard pipe from Thailand to the United States from any Thai company during this time period. *See* Domestic Interested Parties' Case Brief (Dec. 18, 2020) at 9, Appx10696.

This situation changed in October 2018, when Commerce published the final results of the 2016-2017 administrative review and assigned Saha Thai a dumping margin of 28.00 percent. *Circular Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 51,927 (Dep't Commerce Oct. 15, 2018). This dumping margin was substantially higher than the margins that Saha Thai had been receiving for several decades. *See* Saha Thai Br. (ECF 22) at 2. Indeed, Saha Thai had received dumping margins of 0.00% in five of the prior six reviews. *Id.*

In response to this increase in its dumping margin, Saha Thai stopped shipping single-stenciled standard pipe to the United States, and Blue Pipe began shipping dual-stenciled standard pipe that was manufactured by Saha Thai to the United States. *See* Domestic Interested Parties' Case Brief (Dec. 18, 2020) at 6-12, Appx10693-10699. Over the course of a few months, all of Saha Thai's shipments of pipe to the United States were replaced by Blue Pipe's shipments of pipe to the United States. *Id*. All of Blue Pipe's shipments of pipe manufactured by Saha Thai were being sold to Saha Thai's own customers in the United States. *Id.* at 11, Appx10698. None of these entries of dual-stenciled pipe were declared as subject to the Order on CWP from Thailand, and thus no antidumping duties were paid on these entries. Wheatland Submission of NFI (Sept. 18, 2020) at Exhibit 1, Appx10584.

Saha Thai was a willing participant in the scheme, as the record shows that [

].[1] For example, [

]. Saha

Thai 2nd SQR (Apr. 20, 2020) at Exhibits 4 and 9, Appx804140-804295, Appx804354-804355.

[

]. *Id.* at Exhibit 4, Appx804181.

On May 29, 2019, Commerce initiated the 2018-2019 review of CWP from Thailand.

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743

(May 29, 2019). On November 22, 2019, Commerce self-initiated a scope inquiry to determine

whether dual-stenciled standard pipe was subject to the Order on CWP from Thailand. IDM at 5,

Appx10782. Saha Thai thus knew at that point that Commerce could consider any sales of dual-

stenciled pipe to be covered by the scope of the Order and that it may thus be obligated to report

any sales of dual-stenciled pipe. *See id.* On December 18, 2019, Saha Thai submitted its response

to Section C of Commerce's antidumping questionnaire, which purported to include all of Saha

Thai's sales of subject merchandise to the United States during the relevant POR. *See* Saha Thai

---

[1]   Responses provided by Blue Pipe to U.S. Customs and Border Protection ("CBP") confirm
that the only way that Blue Pipe could begin selling dual-stenciled pipe to Saha Thai's U.S.
customers was by acting in concert with Saha Thai to evade payment of the antidumping
duties. In particular, Blue Pipe informed CBP that it "is a small trading company in
Thailand" that "does not have a website" and "does not have marketing materials or
catalogs" and thus "uses its existing business relationships" to make new sales. Wheatland
RFI (June 26, 2020) at Exhibit 3, p. 2, Appx7967. Yet despite having no public presence
whatsoever, and despite having never made any sales to the United States before, Blue Pipe
was suddenly able to start shipping dual-stenciled pipe to Saha Thai's customers in 2018.
The only possible way for this to happen was through a concerted effort between Saha Thai
and Blue Pipe. Indeed, Blue Pipe reported that for its sales of dual-stenciled pipe to the
United States, "Blue Pipe worked with Saha Thai because Blue Pipe and Saha Thai have a
long-standing relationship." *Id.* at p. 18, Appx7983.

Sec. C. Resp. (Dec. 18, 2019) at 2, Appx2060. However, Saha Thai failed to report any sales of dual-stenciled pipe in its response.

On January 9, 2020, Wheatland submitted factual information to Commerce that exposed Saha Thai's scheme for avoiding the payment of AD by shipping dual-stenciled pipe to its customers through Blue Pipe. Wheatland RFI (Jan. 9, 2021), Appx2459. Wheatland requested that Commerce issue a supplemental questionnaire to Saha Thai inquiring further into this issue. *Id.* at 14-17, Appx2472-2475.

On February 24, 2020, Commerce issued a preliminary scope ruling that dual-stenciled pipe is covered by the Order, and it issued a final scope ruling to the same effect on June 30, 2020. Final Scope Ruling (June 30, 2020), Appx10599-10600. Thus, Saha Thai knew at least as early as February 24, 2020 that its sales of dual-stenciled pipe were definitively covered by the Order and must be reported to Commerce as sales of subject merchandise. *See id.*

On March 23, 2020, Commerce issued a supplemental questionnaire to Saha Thai requesting detailed information regarding its sales of dual-stenciled pipe during the POR. Commerce SQR (Mar. 23, 2020), Appx4579-4583. On April 20, 2020, Saha Thai submitted a response that completely validated Wheatland's allegations of evasion. In particular, Saha Thai's response showed that it had sold approximately [          ] worth of dual stenciled-pipe during the POR that it had not reported to Commerce in its U.S. sales database. Commerce AFA Memo (Jan. 21, 2021) at 4, Appx10798, Appx804706. These unreported sales accounted for approximately [     ] of its U.S. sales of subject merchandise during the POR. *Id.*

Meanwhile, CBP had been conducting an investigation under EAPA as to whether Blue Pipe and Saha Thai had evaded the Order. On September 11, 2020, CBP issued a final affirmative determination as to evasion of the Order with respect to the dual-stenciled pipe

PUBLIC VERSION

produced by Saha Thai and sold by Blue Pipe to Saha Thai's U.S. customers. *See* Wheatland

Submission of Final EAPA Determination (Sept. 18, 2020), Appx10574. As part of its

determination, CBP issued findings that supported and corroborated the information that

Wheatland had submitted to Commerce regarding Saha Thai's participation in an evasion

scheme. *Id.* at Exhibit 1, pp. 7-8, Appx10589-10589. Wheatland submitted the CBP final

determination for Commerce to include as part of the record of the review. *Id.*

On January 27, 2021, Commerce issued its final results in the underlying review.

Commerce determined that because Saha Thai had failed to report a substantial portion of its

U.S. sales during the POR, it was applying AFA to Saha Thai. Commerce AFA Memo (Jan. 19,

2021) at 1, Appx10795, Appx804703.

## STANDARD OF REVIEW

The applicable standard of review requires that the Court uphold an agency determination

as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in

accordance with law" 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a

mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978,

985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In

evaluating Commerce's determination, the Court must decide whether "the administrative record

contain{s} substantial evidence to support" Commerce's decision and whether that decision was

"rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

A plaintiff must do more than simply point to contradictory evidence in the record to

overturn the agency's decision. "{T}he possibility of drawing two inconsistent conclusions from

the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence." *Id.* (citations omitted). To the extent, therefore, that a plaintiff claims the evidence before Commerce "could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933). In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for Commerce. *See Matsushita*, 750 F.2d at 933. The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

The standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983). While Commerce must explain the basis for its decisions, the court "will . . . 'uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

Given Commerce's special expertise in applying the antidumping law, this Court has repeatedly held that Commerce is the "master" of the antidumping law, entitling its decision to great deference from the courts. *See NSK Ltd. v. United States*, 28 CIT 1535, 1561, 346 F. Supp. 2d 1312, 1335 (2004), *aff'd*, 481 F.3d 1355 (Fed. Cir. 2007) (citation omitted). The Federal Circuit has also noted that Commerce's "special expertise in administering the anti-dumping law entitles its decisions to deference from the courts." *Ta Chen Stainless Steel Pipe, Inc. v. United*

*States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (citations omitted); *see also Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("Deference to an agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws.") (citing *Daewoo Elecs. Co. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993)). In addition, the Supreme Court has held that where the agency is applying the antidumping statute, "we ask only whether the Department's application was reasonable." *United States v. Eurodif S.A.*, 555 U.S. 305, 319 (2009).

Finally, in the context of reviewing Commerce's application of AFA, the Federal Circuit has stated that this Court should not improperly substitute its judgment for that of Commerce with respect to a decision to reject a respondent's data or a determination that a respondent has failed to cooperate to the best of its ability. *Goodluck India Ltd. v. United States*, No. 2020-2017, 2021 WL 3870722, at *7 (Fed. Cir. Aug. 31, 2021). When it comes to these issues, "{t}he CIT cannot impose its own contrary finding over a determination by Commerce that is supported by substantial evidence." *Id.*

## ARGUMENT

### I.  Commerce Properly Applied Adverse Facts Available Based on Saha Thai's Participation in an Evasion Scheme and Its Failure to Report a Significant Volume of U.S. Sales of Subject Merchandise

The statute requires Commerce to apply facts available where either necessary information is not on the record or an interested party significantly impedes a proceeding. 19 U.S.C. § 1677e(a)(2). In selecting facts available, Commerce may employ an adverse inference (*i.e.*, apply AFA) if an interested party fails to cooperate by not acting to the best of its ability to comply with Commerce's requests for information. *Id.* § 1677e(b). It is not enough for a respondent to simply submit any information to Commerce; the information provided by the

PUBLIC VERSION

respondent must represent the "maximum it is able to do" and must be complete and accurate. *Nippon Steel v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

The Federal Circuit has recognized that Commerce has the authority to apply AFA to address situations where foreign producers and exporters engage in schemes to evade full payment of the applicable AD duties – including situations where a producer and exporter coordinate together to evade the payment of antidumping duties but one of them is not a respondent in Commerce's antidumping proceeding. *Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014) (recognizing that "the fact that Commerce has alternative methods for addressing evasion does not mean that the particular chosen method is arbitrary. Commerce can use all of the methods provided in the Act for enforcement of the antidumping provisions"). In fact, the courts have recognized that Commerce has a responsibility to apply its law in a manner that prevents the evasion of antidumping duties: "{Commerce} has been vested with authority to administer the antidumping laws in accordance with the legislative intent. To this end, the ITA has a certain amount of discretion {to act} ... with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law." *Tung Mung*, 219 F. Supp. 2d. 1333, 1343 (Ct. Int'l Trade 2002), *aff'd* 354 F.3d 1371 (Fed. Cir. 2004) (citing *Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 555 (Ct. Int'l Trade 1988), *aff'd* 898 F.2d 1577 (Fed. Cir. 1990)).

Consistent with its statutory authority and mandate, Commerce properly applied total AFA to Saha Thai in the underlying review to address Saha Thai's evasion of the payment of AD duties and the company's failure to report a substantial volume of its U.S. sales of subject merchandise during the POR. As discussed above, once Commerce imposed higher AD duties on entries of CWP from Saha Thai in October 2018, Saha Thai and Blue Pipe conspired to avoid the

payment of these higher duties by shipping dual-stenciled pipe to Saha Thai's customers without declaring this merchandise to be subject to the Order. Furthermore, even though Saha Thai knew that Commerce was considering dual-stenciled pipe to be covered by the Order, it did not report any of its sales of dual-stenciled pipe during the POR. As Commerce found in the final results, although its questionnaire "clearly instructed Saha Thai to report all of its U.S. sales of subject merchandise," Saha Thai's questionnaire response "did not include information with respect to its sales of subject merchandise during the [                    ] the POR." Commerce AFA Memo (Jan. 21, 2021) at 5, Appx10799, Appx804707. Saha Thai thus "failed to cooperate to the best of its ability by underreporting its U.S. sales, thereby undermining Commerce's ability to calculate an accurate weighted-average dumping margin and issue instructions to {CBP} with accurate cash deposit and assessment rates." *Id.*

Commerce has the authority to apply total AFA under these circumstances. Indeed, this Court has upheld Commerce's application of AFA in numerous cases based on a respondent's failure to report a portion of its sales of subject merchandise. *See, e.g., Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752 (2001) (upholding application of AFA where the respondent "failed to report approximately one fifth of its home market sales, a reporting failure that goes to the heart of a dumping investigation"); *Washington Int'l Ins. Co. v. United States*, 33 C.I.T. 1023, 1036 (2009) (upholding application of AFA where respondent "made a significant number of sales of subject merchandise that it failed to report"); *Hyundai Elecs. Indus. Co. v. United States*, 28 C.I.T. 517 (2004) (upholding application of AFA to respondent who "knowingly and willfully" dumped DRAMs into the United States by shipping DRAMs to the customer's German subsidiary, which would then ship the DRAMs to the customer's Puerto Rican manufacturing facility, and who failed to report these sales as U.S. sales).

In addition to the decisions from the Court of International Trade cited above, the Federal

Circuit's decision in *Papierfabrik Aug. Koehler SE v. United States* is also directly on point. 843

F.3d 1373, 1376 (Fed. Cir. 2016). There, midway through the underlying review, Commerce

discovered that the respondent had engaged in a scheme to omit the reporting of certain German-

market sales, thereby altering the home-market prices that were compared to U.S. prices to

measure the dumping margin. *Id.* After this scheme was uncovered, the respondent proffered an

updated home-market sales database that included the omitted sales. *Id.* Commerce refused to

accept the updated home-market sales data that included the omitted sales, explaining that the

new sales data was untimely and that respondent had not shown good cause for extending the

deadline for data submission. *Id.* In addition, Commerce applied AFA against the respondent. *Id.*

The Federal Circuit upheld Commerce's decision:

> There is substantial evidence that Koehler engaged in an intentional
> transshipment scheme that caused it to withhold certain home-sales information
> from its responses to Commerce, an omission that impeded the investigation, and
> that it offered updated information only after the deadline for submitting data.
> Commerce could properly find one or more of the conditions stated in § 1677e(a)
> satisfied in this case. … Substantial evidence likewise supports Commerce's
> decision to apply § 1677e(b). There is substantial evidence that Koehler did not
> cooperate to the best of its ability. The kind of misconduct evidenced here is far
> from the cooperation that standard demands.

*Id.* at 1379. Here, similar to the respondent in *Papierfabrik*, Saha Thai engaged in an intentional

scheme that caused it to withhold certain U.S. sales information from its responses to Commerce,

an omission that impeded the investigation. This intentional misconduct did not meet the

statutory requirement that Saha Thai cooperate to the best of its ability.

## II.     Saha Thai's U.S. Sales of Dual-Certified Pipe Were Necessary to Calculate an Accurate Dumping Margin and Assessment Rates

There is no merit to Saha Thai's argument that the U.S. sales data that it failed to report

were somehow not "necessary" for Commerce's dumping margin calculation. Saha Thai Br.

(ECF 22) at 21. Nothing could be more necessary to determining whether U.S. sales have been dumped than the data regarding those U.S. sales. This Court has previously recognized that the omission of U.S. sales from a respondent's database is "a reporting failure that goes to the heart of a dumping investigation." *Tung Mung*, 25 C.I.T. at 752. Commerce had alerted Saha Thai that it may consider dual-stenciled pipe to be subject merchandise and ultimately reached this conclusion as part of its scope ruling. Nevertheless, Saha Thai failed to report [                    ] of sales of dual stenciled-pipe during the POR, which represented [       ] of its U.S. sales of subject merchandise during the POR. Commerce AFA Memo (Jan. 21, 2021) at 4, Appx10798, Appx804706.

Furthermore, as a result of its investigation, CBP suspended the liquidation of entries of dual-stenciled pipe produced and sold by Saha Thai and imported by Blue Pipe during the POR. IDM at 9-10, Appx10786-10787. Thus, Commerce was required to calculate an assessment rate based on the entire universe of sales made by Saha Thai, but was not able to do so because of Saha Thai's reporting failure. Commerce AFA Memo (Jan. 21, 2021) at 5, Appx10782 This also warranted the application of AFA. *See Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 69 Fed. Reg. 55,574 (Dep't Commerce Sept. 15, 2004) and accompanying IDM at Comment 19 ("Given that the respondents reported … that the seller of the merchandise is the principal, but participated in a scheme that allows the importer to incorrectly identify the agent as the seller to CBP, the universe of sales for which the Department would calculate the antidumping duty rate, and the universe of sales against which CBP would assess that rate, are different.").

Saha Thai also attempts to challenge as part of this action the legality of Commerce's scope ruling that dual-stenciled standard pipe is subject to the Order on CWP from Thailand.

Saha Thai Br. (ECF 22) at 10. Under this theory, it was not necessary for Saha Thai to report its sales of dual-stenciled pipe because they were not sales of subject merchandise. *See id.* Besides being devoid of merit, this challenge is the subject of a separate action before this Court and is should not be decided as part of this action. *See Saha Thai Steel Pipe Public Company, Limited v. United States* (Ct. Int'l Trade No. 20-133). In any event, Commerce had issued its preliminary scope ruling as early as February 24, 2020 and its final scope ruling by June 30, 2020. At that point Saha Thai knew that its sales of dual-stenciled pipe were considered subject merchandise and that information regarding those sales would be considered necessary information. Nevertheless, Saha Thai continued to make no efforts to report them.

In sum, the sales which Saha Thai failed to report to Commerce were necessary for Commerce to calculate an accurate dumping margin and assessment rate for Saha Thai's sales of subject merchandise during the POR. Saha Thai's assertions to the contrary are meritless and should be rejected.

III.    **Commerce's Authority to Suspend Liquidation of Entries Does Not Otherwise Detract from the Effect of Its Scope Ruling**

The Court should also reject Saha Thai's contention that Commerce's application of AFA should be overturned because it is inconsistent with the agency's rationale for not combining the scope inquiry with the administrative review. Saha Thai Br. (ECF 22) at 22-23. When Commerce decided not to combine the two proceedings, it stated it would not be practicable to do so because the scope ruling "would not be effective during the period of review." Commerce Letter (Feb. 24, 2020), Appx4421-4422. According to Saha Thai, this statement means that "the conclusion from that scope inquiry cannot go back in time" and that Commerce was clearly informing the parties that "the scope ruling had no applicability for the AD review." Saha Thai Br. (ECF 22) at 22-24. As demonstrated below, however, Saha Thai broadly misinterprets a

statement regarding Commerce's ability to suspend the liquidation of entries to mean that Commerce's scope ruling could never have any effect on those entries and that Saha Thai was completely excused from reporting those entries of merchandise. In fact, Commerce was merely stating that there was no point in combining the two proceedings because, given the date on which Commerce initiated the scope ruling, combining the two proceedings would still not allow Commerce to suspend liquidation of entries of merchandise during the POR.

As an initial matter, when Commerce made the statement at issue, it was adopting an argument that Saha Thai had advanced. In particular, in arguing that Commerce should reject Wheatland's request to combine the scope ruling and the administrative review, Saha Thai argued that "combining the scope inquiry and the administrative review would have no practical effect *in terms of liquidation of entries* and would make *suspension and liquidation instructions* issued at the time of the final review determination unnecessarily complicated." Saha Thai Objection to Petitioner's Scope Inquiry Request (Dec. 30, 2019), Appx2455-2456 (emphasis added). Thus, even Saha Thai understood that the practical effect of the scope ruling was only limited in the sense that the scope ruling would not allow Commerce to suspend the liquidation of entries prior to the date of initiation. Because the POR (March 2018 through February 2019) was prior to the date of initiation (November 2019), that meant Commerce could not suspend the liquidation of any entries of dual-stenciled pipe during the POR.

This does not mean that Commerce's scope ruling had no effect on the entries of dual-stenciled pipe, including the critical issue of whether Saha Thai was obligated to report the sales of dual-stenciled pipe to Commerce. To step back for a moment, Commerce issues scope rulings to clarify the scope of its AD orders and whether they cover certain merchandise. 19 C.F.R. § 351.225(a). The issuance of these scope rulings does not mean that entries of the merchandise

at issue were outside the scope of the relevant order prior to the issuance of the ruling. However, Commerce's ability to suspend the liquidation of such entries is limited by its regulations. When Commerce conducts a scope inquiry "and the product in question is already subject to suspension of liquidation, that suspension of liquidation *will be continued*" pending the final scope ruling. 19 C.F.R. § 351.225(l)(1) (emphasis added). When Commerce issues a final scope ruling "to the effect that the product in question is included within the scope of the order, any suspension of liquidation under paragraph (l)(1) or (l)(2) *will continue*." 19 C.F.R. § 351.225(l)(3) (emphasis added). If there has been no previous suspension of liquidation, and the final scope ruling determines that the product is covered by the order, then Commerce is commanded by subsection (l)(3) to instruct CBP to suspend liquidation and collect the requisite cash deposit "for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption *on or after the date of initiation of the scope inquiry*." *Id.* (emphasis added). Neither set of circumstances implies, however, that any products that entered prior to Commerce's suspension of liquidation were somehow "outside" of the scope prior to the scope ruling.

As Commerce explained in the final results:

> To be clear, Commerce's scope ruling did not find that dual-stenciled standard pipe and line pipe that entered the United States prior to November 22, 2019, the date of self-initiation, was once not covered by the *Order*, and is now covered by the scope of the *Order*. Though the timing of the scope inquiry regulations limits Commerce's ability to order suspension of liquidation as a result of that inquiry itself, those procedural suspension restrictions in no way limit Commerce's ability to examine U.S. entries of all subject merchandise in this review – both entries preceding the scope inquiry initiation and entries following the scope inquiry initiation.

PUBLIC VERSION

IDM at 10, Appx10787.[2] Commerce's inability to suspend the liquidation of entries prior to the date of initiation of the scope proceeding does not mean that Saha Thai's conduct prior to that date cannot be taken into account to determine whether the application of AFA is warranted in the context of the administrative review. Nor does Commerce's inability to suspend the liquidation of entries prior to the date of initiation of the scope proceeding excuse Saha Thai from reporting its sales of dual-stenciled pipe in the administrative review. The fact that Saha Thai's evasion scheme resulted in its entries of merchandise not being properly suspended during the course of the administrative review only further shows how Saha Thai impeded Commerce's ability to review those entries and assess the appropriate AD liability for those entries.

Significantly, CBP has its own independent authority to suspend the liquidation of entries as part of its own investigations. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317-1318 (Fed. Cir. 2020). Based on that authority, CBP suspended the liquidation of entries of dual-stenciled standard pipe for the period October 18, 2018 through September 11, 2020. IDM at 10, Appx10787. This period includes over four months of the POR for Commerce's administrative review. *Id.* Those entries of dual-stenciled pipe are unquestionably subject to the Order and the payment of AD duties. *Id.* When Commerce decided not to combine the scope inquiry with the administrative review, it did not know that CBP was going to suspend these entries. Thus, Commerce's statement that its scope ruling would not have an effect on entries of dual-stenciled pipe during the POR ended up not being correct. CBP's suspension of liquidation of these entries ultimately—in conjunction with Commerce's scope ruling—allowed Commerce to instruct CBP to liquidate those entries at the appropriate dumping rate.

---

[2]   Conversely, if Commerce issues a scope ruling that merchandise is *outside* the scope of an AD order, that does not mean that any entries of the merchandise that entered before Commerce issued the scope ruling are considered covered by the order.

The bottom line is that Commerce's decision not to combine the scope ruling and the underlying administrative review—as well as the rationale it provided for this decision—does not mean that its scope ruling has no impact on the entries of dual-stenciled pipe that were suspended by CBP. Nor does Commerce's decision not to combine the proceedings excuse Saha Thai's conduct in participating in a scheme to evade the payment of antidumping duties and its failure to report a substantial portion of its sales of subject merchandise during the POR.

IV.    **Saha Thai's Arguments Based on 19 U.S.C. § 1677m(d) Are Unavailing**

The statute provides at 19 U.S.C. § 1677m(d) that if Commerce determines that a response to a request for information does not comply with the request, the agency shall promptly inform the respondent of the nature of the deficiency and, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigation. Saha Thai argues that Commerce did not follow this requirement after it discovered that Saha Thai had failed to report its U.S. sales of dual-stenciled pipe. Saha Thai Br. (ECF 22) at 24-28. As demonstrated below, there are at least three reasons that Saha Thai's arguments are unavailing. First, Saha Thai waived any arguments based on this statutory provision when it failed to raise them below in its briefing to Commerce. Second, even if its arguments with respect to § 1677m(d) were not waived, Commerce did provide Saha Thai with an opportunity to explain the deficiency in its reporting, which satisfies the requirements of the statute. And third, this Court has held that § 1677m(d) does not apply where a respondent has engaged in a scheme to intentionally evade reporting data to Commerce.

A.    **Saha Thai Failed to Exhaust Its Administrative Remedies for This Argument**

In its case brief in the underlying review, Wheatland argued that Commerce should apply total AFA based on Saha Thai's conduct, including its failure to report all of its U.S. sales of

subject merchandise. Domestic Interested Parties' Case Brief (Dec. 18, 2020) at 3-30, Appx10690-10717. In response to a request by Saha Thai, Commerce extended the deadline for Saha Thai to file a rebuttal brief to Wheatland's case brief. Commerce Memo (Dec. 22, 2020), Appx10731. Saha Thai subsequently filed a rebuttal brief arguing that Commerce should reject Wheatland's request to apply total AFA. Saha Thai Rebuttal Brief (Dec. 28, 2020) at 1-6, Appx10738-10743. Nowhere in its rebuttal brief, however, did Saha Thai assert that Commerce had failed to follow the requirements of 19 U.S.C. § 1677m(d).

By statute, this Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Federal Circuit has explained that this statutory mandate "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). To exhaust their administrative remedies, parties must raise all arguments that they view to be relevant to Commerce's final results in their case brief and rebuttal brief. *Corus Staal,* 502 F.3d at 1378 (citing 19 C.F.R § 351.309(c)(2)). *Accord*, *Qingdao Sea-Line Trading Co., Ltd. v. U.S.*, 766 F.3d 1378, 1388 (Fed. Cir. 2014) (refusing to consider arguments not raised in case brief filed with Commerce); *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (same). This principle applies equally to situations where a party could have raised an argument its rebuttal brief but failed to do so. *Boomerang*, 856 F.3d at 913 (overturning the court's decision that a party had not waived its argument with respect to an issue because "its rebuttal brief made no mention of its current argument").

The Court has previously recognized that the exhaustion doctrine applies to arguments raised under § 1677m(d). For example, in *Coal. for Fair Trade in Garlic v. United States*, a party

argued that Commerce violated 19 U.S.C. § 1677m(d) when it rejected certain submissions made by the party during the underlying review. 437 F. Supp. 3d 1347, 1358 (Ct. Int'l Trade 2020). The Court held that the party had failed to exhaust its administrative remedies in connection with this challenge because it had not raised the challenge in its briefing with the agency. *Id.* Here, similarly, by failing to raise the argument that the application of AFA would violate § 1677m(d) in its briefing, Saha Thai failed to exhaust its administrative remedies with respect to this argument.

The Federal Circuit has explained that exhaustion serves the interest of both the agency and the reviewing courts "by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes." *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013). It gives the agency the first opportunity to address the parties' concerns and resolve factual and legal issues, before litigation: "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952). By failing to raise its arguments regarding § 1677m(d) to Commerce, Saha Thai deprived the agency of the opportunity to address its concerns and respond to its arguments, and it deprived this Court of an opportunity to hear Commerce's position on this issue. The Court should, therefore, reject Saha Thai's arguments as waived.

### B. Commerce Provided Saha Thai an Opportunity to Explain Its Failure to Report Its Sales of Dual-Stenciled Pipe

The statute provides that if Commerce identifies a deficiency in a respondent's reporting, it shall inform the respondent and provide it "with an opportunity to remedy *or explain* the

deficiency." 19 U.S.C. § 1677m(d) (emphasis added). Here, when it came to light that Saha Thai had failed to include its sales of dual-stenciled pipe in its U.S. sales database due to its participation in a widespread evasion scheme, Commerce followed § 1677m(d) by issuing a supplemental questionnaire that provided an opportunity for Saha Thai to explain this failure. *See* Saha Thai 2nd SQR (Apr. 20, 2020), Appx4579-4583. In particular, Commerce provided Saha Thai an opportunity to provide extensive information regarding [

], Saha Thai's business relationships [

], and Saha Thai's monthly production and sales of dual-stenciled pipe and other types of pipe. *Id.*, Appx804092-804104. Saha Thai responded to Commerce's supplemental questionnaire, but its response was not satisfactory to the agency. Indeed, Saha Thai's response was the final nail in the coffin establishing that Saha Thai had participated in an evasion scheme that caused it to intentionally omit a substantial portion of its U.S. sales of subject merchandise.

## C.   Section 1677m(d) Does Not Apply to Situations Like Those Present Here

The courts have recognized that § 1677m(d) does not apply to situations where a respondent has engaged in a scheme to intentionally evade reporting data to Commerce, because this type of fraudulent conduct is not properly considered a mere "deficiency." In *Papierfabrik*, for example, the Federal Circuit rejected the respondent's argument that Commerce was required to give it an opportunity to submit the home market sales data that it had previously failed to submit. 843 F.3d at 1383–84. The Federal Circuit noted that the so-called "deficiency" had not come about because the respondent inadvertently omitted a number of sales due to an unintentional error or a misunderstanding of Commerce's questionnaire. *Id.* Rather, the respondent's submitted information was missing home market sales because of the respondent's fraudulent conduct. *Id.* The Federal Circuit explained as follows:

PUBLIC VERSION

> The first, more general sentence of § 1677m(d) states that, where "a response to a request for information under this subtitle does not comply with the request," Commerce must "promptly *inform* the person submitting the response of the nature of the *deficiency* and shall, to the extent practicable, provide that person with an opportunity *to remedy or explain* the deficiency." *Id.* (emphases added). But nothing in that language compels Commerce to treat intentionally incomplete data as a "deficiency" and then to give a party that has intentionally submitted incomplete data an opportunity to "remedy" as well as to "explain." The consequence of such a reading would be to permit respondents to submit fraudulent data with the knowledge that, should their misconduct come to light, they can demand an opportunity to remedy their intentionally deficient data and avoid the otherwise-authorized adverse inferences. The language of § 1677m(d) does not compel that reading. It permits Commerce not to deem such misconduct to be a "deficiency" or to provide only an opportunity to "explain" (but not "remedy") such misconduct. Here, Commerce did both.

*Id.* This rationale applies equally to Saha Thai's conduct. The statute does not require Commerce to treat Saha Thai's intentionally evasive conduct as a mere "deficiency." Commerce may deem Saha Thai's misconduct not to be a deficiency or to provide only an opportunity to "explain" that misconduct but not remedy it. And that is exactly what Commerce did in the underlying review.

Finally, the terms of § 1677m(d) do not give rise to an obligation for Commerce to permit a remedial response by Saha Thai unless all five criteria of § 1677m(e) are met. Failure to fulfill any one criterion renders § 1677m(d) inapplicable. *Tung Mung Dev. Co. v. United States*, 25 C.I.T. 752, 789 (Ct. Int'l Trade 2001). Because Saha Thai's information were so incomplete that it could not serve as a reliable basis for calculating its dumping margin, because any additional reporting of U.S. sales could not be used without undue difficulties, and because Saha Thai did not act to the best of its ability in providing the information, at least three of the five criteria were not met. This provides yet another reason for Commerce to reject Saha Thai's data in its entirety and apply total AFA. *See, e.g., NSK Ltd. v. United States*, 481 F.3d 1355, 1360 (Fed. Cir. 2007).

**D.      Saha Thai Could Not Be "Shocked" by Commerce's Decision to Apply AFA**

A central theme of Saha Thai's brief is that it was "shocked" by Commerce's decision to apply AFA, because Saha Thai could never have imagined that it would be required to report its sales of dual-stenciled pipe as sales of subject merchandise. Saha Thai Br. (ECF 22) at 18. This is a total farce. When Saha Thai devised its evasion scheme, it made a bet that, in its own words, "it is likely that {Commerce} will conclude that Saha Thai's U.S. exports of {dual-stenciled} line pipe are not included within the scope of the AD order" and therefore that "it would be illogical and unreasonable to burden Saha Thai and {Commerce} by including U.S. sales of line pipe in the ongoing AD review of CWP." Saha Thai Objection to Petitioner's Scope Inquiry Request (Dec. 30, 2019), Appx2453.

But Saha Thai always knew there was at least a chance its dual-stenciled pipe would be covered by the Order and that it would be required to report its sales of dual-stenciled pipe. Indeed, it is because Saha Thai knew that its sales of dual-stenciled pipe may potentially be covered by the Order that it attempted to hide these sales by making them indirectly through Blue Pipe instead of making them directly to its U.S. customers as it had prior to the increase in its dumping margin. Furthermore, in its Section A response, submitted as early as November 26, 2019, Saha Thai stated that it was not reporting it sales of dual-stenciled pipe because "as of the date of the filing of this response, {Commerce} has not determined whether Line Pipe is included within the scope of this administrative review." Saha Thai Section A Resp. (Nov. 26, 2019), page 3, fn. 3, Appx1314. A reasonably prudent respondent under the circumstances would have reported the sales of dual-stenciled pipe but continued to argue that they should not be included by Commerce in the calculation of its dumping margin. Saha Thai, despite knowing the risks of failing to report these sales, chose not to report them based on its incorrect prediction

that Commerce would find the sales to be outside the scope of the Order. In this regard, Saha Thai has only itself to blame.

Furthermore, Commerce issued a preliminary scope ruling on February 24, 2020 finding that dual-stenciled pipe is covered by the Order, and it issued a final scope ruling confirming this fact on June 30, 2020. Saha Thai made no efforts whatsoever after either of these dates to report the company's sales of dual-stenciled pipe in the administrative review. Once again, Saha Thai has only itself to blame for this failure.

## V.   Commerce's Reliance on the EAPA Report Was Reasonable

There is no basis for Saha Thai's assertion that Commerce's decision to apply total AFA was based solely "on the so-called CBP EAPA report" and that this reliance was "unreasonable and therefore unlawful." Saha Thai Br. (ECF 22) at 29-30. Commerce's decision to reject Saha Thai's data and apply total AFA did not rest on the EAPA report. Rather, it rested on Saha Thai's own failure to report a substantial portion of its U.S. sales of subject merchandise. Commerce AFA Memo (Jan. 21, 2021) at 4, Appx10798. However, the EAPA report provided additional support for and corroboration of the other record evidence showing that Saha Thai had participated in a scheme to avoid paying antidumping duties on its sales of subject merchandise by shipping dual-stenciled pipe through Blue Pipe to its U.S. customers. *See* Wheatland Submission of Final EAPA Determination (Sept. 18, 2020), Appx10574. In particular, as part of its determination, CBP made the following findings:

- When acting as its own importer of record for imports of single-stenciled ASTM A53 CWP into the United States, Saha Thai paid the applicable antidumping duty cash deposits.

- When the antidumping duty rates increased for CWP from Thailand, Blue Pipe became the importer of record for Saha Thai's dual-stenciled pipe.

25

PUBLIC VERSION

- Saha Thai shifted the importer of record from Saha Thai to Blue Pipe and indicated an alteration of the channel of trade.

- Blue Pipe started to sell merchandise that still met the ASTM A53 specification for standard pipe to the same U.S. customers previously served by the importer Saha Thai, but under dual-stenciling.

- Blue Pipe imported CWP from Thailand by misrepresenting dual-stenciled pipe as Type 01 entries that are not subject to the Order rather than Type 03 entries that are subject to the Order.

- All of these actions were taken with the "intention to avoid the increased cash deposit rate" for Saha Thai's sales of subject merchandise.

*Id.* at Exhibit 1, pp. 7-8, Appx10589-10590.

Saha Thai states that it is of "critical importance" that "the CBP EAPA Report is effectively only a notice of initiation, not any official findings." Saha Thai Br. (ECF 22) at 29. Actually, the EAPA report that was placed on the record was CBP's final determination of evasion. *See* Wheatland Submission of Final EAPA Determination (Sept. 18, 2020), Appx10574. This last argument is thus completely baseless.

*       *       *

PUBLIC VERSION

**CONCLUSION**

For the foregoing reasons, Wheatland respectfully requests that the Court deny Saha Thai's motion for judgment on the agency record and uphold Commerce's final results in the underlying review.

Respectfully,

/s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

Dated: September 16, 2021

PUBLIC VERSION

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 8,514 words, including accompanying motion, text, headings, table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Luke A. Meisner
Luke A. Meisner

Dated: September 16, 2021