# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

_____
)
SAHA THAI STEEL PIPE )
PUBLIC COMPANY LIMITED, )
)
               Plaintiff, )
)
     v. )     Court No. 21-00049
)
UNITED STATES, )
)
              Defendant, )
)
     and )
)
WHEATLAND TUBE COMPANY, )
)
              Defendant-Intervenor. )
_____)

## PROPOSED ORDER

Upon consideration of plaintiff Saha Thai Steel Pipe Public Company Limited's Motion

for Judgment upon the Agency Record pursuant to Rule 56.2 of the Rules of the Court of

International Trade, the response brief filed by the United States, and all other papers, it is

hereby:

**ORDERED** that plaintiff's Rule 56.2 Motion for Judgment upon the Agency Record is

denied.


Dated: _____          _____
       New York, New York                           JUDGE

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>WHEATLAND TUBE COMPANY, )<br><br>Defendant-Intervenor. ) | **PUBLIC VERSION**<br>Court No. 21-00049 |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001
Telephone: (240) 449-5906
Facsimile: (202) 482-8184
Email: JonZachary.Forbes@trade.gov

IN K. CHO
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile: (202) 305-7644
Email: In.K.Cho@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ................................................................................ 2

   I.   Administrative Determination Under Review ................................................................... 2

   II.  Issues Presented For Review ............................................................................................ 2

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ............................................................................................................................... 8

   I.   Standard Of Review ......................................................................................................... 8

   II.  Commerce's Decision To Apply Total Adverse Facts Available Is Supported By
       Substantial Evidence And Otherwise In Accordance With Law ......................................... 9

      A.   Legal Requirements For The Use of Adverse Facts Available .................................... 10

      B.   Commerce's Finding That Saha Thai's U.S. Sales Of Dual-Stenciled Pipe Is
          Necessary Information Is Supported By Substantial Evidence And Otherwise In
          Accordance With Law .............................................................................................. 12

      C.   Commerce's Finding That Saha Thai Had Failed To Cooperate To The Best Of Its
          Ability Is Supported By Substantial Evidence And Otherwise In Accordance With
          Law ........................................................................................................................ 18

      D.   Commerce Notified Saha Thai Of The Deficiencies In Saha Thai's U.S. Sales
          Database ................................................................................................................. 21

      E.   Commerce's Decision To Reject Saha Thai's Incomplete U.S. Sales Database Is
          Supported By Substantial Evidence And Otherwise In Accordance With Law ......... 24

      F.   Commerce's Decision to Reopen The Record And To Accept New Factual
          Information Is Supported By Substantial Evidence And Otherwise In Accordance
          With Law ................................................................................................................ 26

CONCLUSION ........................................................................................................................... 27

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017)............................................................. 25
*Bridgestone Americas, Inc. v. United States*,
   33 CIT 1040 (2009) .......................................................................... 30
*Chevron, U.S.A. v. Natural Resources Defense Council.*
   467 U.S. 837 (1984) .................................................................. 10, 27
*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938).......................................................................... 9
*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .................................................................... 9, 23
*Deacero S.A.P.I. de C.V. v. United States*,
   996 F.3d 1283 (Fed. Cir. 2021)................................................. passim
*Dorbest Ltd. v. United States*,
   604 F.3d 1363 (Fed. Cir. 2010)........................................................ 25
*FAG Kugelfischer Georg Schafer KGaA v. United States*,
   932 F. Supp 315 (Ct. Int'l Trade 1996) ..................................... 20, 21
*Fla. Citrus Mut. v. United States*,
   550 F.3d 1105 (Fed. Cir. 2008)........................................................ 11
*Hung Vuong Corp. v. United States*,
   483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ...................... 11, 12, 18
*Hyundai Heavy Indus., Co. v. United States*,
   399 F. Supp. 3d 1305 (Ct. Int'l Trade 2019) ...................... 15, 16, 29
*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992)......................................................................... 9
*Juancheng Kangtai Chem. Co., Ltd. v. United States*,
   322 F. Supp. 3d 1351 (Ct. Int'l Trade 2018) ................................... 18
*Kisor v. Wilkie*,
   139 S.Ct. 2400 (2019)..................................................................... 10
*Martin v. Occupational Safety and Health Review Comm'n*,
   499 U.S. 144 (1991)........................................................................ 10
*Mukand, Ltd. v. United States*,
   767 F.3d 1300 (Fed. Cir. 2014)....................................................... 14
*Nan Ya Plastics Corp. v. United States*,
   810 F.3d 1333 (Fed. Cir. 2016)................................................. 13, 18
*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003)............................................. 9, 13, 22
*Papierfabrik Aug. Koehler SE v. United States*,
   843 F.3d 1373 (Fed. Cir. 2016)........................................ 10, 26, 28, 30
*Qingdao Sea-Line Trading Co. v. United States*,
   766 F.3d 1378 (Fed. Cir. 2014)....................................................... 24
*Shandong Huarong Mach. Co. v. United States*,
   435 F.Supp.2d 1261 (Ct. Int'l Trade 2006) ............................... 17, 19

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020)............................................................... 19, 20
*Tai-Ao Aluminium (Taishan) Co. v. United States*,
    983 F.3d 487 (Fed. Cir. 2020)................................................................. 19, 20
*Torrington Co. v. United States*,
    68 F.3d 1347 (Fed. Cir. 1995)...................................................................... 16
*U.S. Steel Corp. v. United States*,
    621 F.3d 1351 (Fed. Cir. 2010).................................................................... 15
*United States v. Eurodif S. A.*,
    555 U.S. 305 (2009)................................................................................... 10

**Statutes**

19 U.S.C. § 1516a....................................................................................... 8
19 U.S.C. § 1675....................................................................................... 13
19 U.S.C. § 1677a..................................................................................... 13
19 U.S.C. § 1677b..................................................................................... 13
28 U.S.C. § 2637................................................................................. 21, 22

**Regulations**

19 C.F.R. § 351.213................................................................................... 15
19 C.F.R. § 351.225.................................................................. 14, 15, 16, 18
19 C.F.R. § 351.302................................................................................... 26
19 C.F.R. § 351.308.............................................................................. 11, 12
19 C.F.R. § 351.309................................................................................... 21

**Administrative Determinations**

*Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from Thailand*,
    51 Fed. Reg. 8,341 (March 11, 1986) (Thailand Order)............................ 4
*Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand; Preliminary Results of Antidumping Duty Administrative Review*,
    55 Fed. Reg. 42,596 (Dep't Commerce Oct. 22, 1990)............................ 4
*Circular Welded Carbon Steel Pipes and Tubes From Thailand, 2018-2019*,
    86 Fed. Reg. 7,259 (Jan. 27, 2021) (final results).................................... 2
*Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review; 2016-2017*,
    83 Fed. Reg. 51,927 (Dep't of Commerce Oct. 15, 2018)........................ 6

**Other Authorities**

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994)................................................................. 11

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

_____

|  |  |
|---|---|
| SAHA THAI STEEL PIPE ) | |
| PUBLIC COMPANY LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **PUBLIC VERSION** |
| v. ) | Court No. 21-00049 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| WHEATLAND TUBE COMPANY, ) | |
| ) | |
| Defendant-Intervenor. ) | |

_____

### DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion of plaintiff, Saha Thai Steel Pipe Public Company, Limited (Saha Thai), for judgment upon the agency record.  As demonstrated below, the determinations of the United States Department of Commerce (Commerce) are supported by substantial evidence and otherwise in accordance with law.  Accordingly, we respectfully request that the Court deny Saha Thai's Rule 56.2 motion for judgment upon the agency record and sustain Commerce's determinations.

## STATEMENT PURSUANT TO RULE 56.2

**I.      Administrative Determination Under Review**

Saha Thai seeks judicial review of the final results in the administrative review of the

antidumping duty order on circular welded carbon steel pipes and tubes from Thailand.  *See*

*Circular Welded Carbon Steel Pipes and Tubes From Thailand, 2018-2019*, 86 Fed. Reg. 7,259

(Jan. 27, 2021) (final results), Appx10804-06, and accompanying Issues and Decision

Memorandum (IDM), Appx10778-94.  The period of review is March 1, 2018, through February

28, 2019.  IDM at 1, Appx10778.

**II.      Issues Presented For Review**

This case presents only one issue: whether Commerce's application of total adverse facts

available for Saha Thai's failure to cooperate to the best of its ability is supported by substantial

evidence and otherwise in accordance with law.  *See* IDM at 4-8, 11-15, Appx10781-85,

Appx10788-92; 2018-2019 Antidumping Duty Administrative Review of Circular Welded

Carbon Steel Pipes and Tubes from Thailand: Application of Adverse Facts Available (Dep't of

Commerce Jan. 19, 2021) (AFA Memo.) at 1-9, Appx804703-711.

## STATEMENT OF FACTS

On March 5, 2019, Commerce published a notice of opportunity to request an

administrative review of the antidumping duty order for the period March 1, 2018, through

February 28, 2019.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended*

*Investigation; Opportunity to Request Administrative Review*, 84 Fed. Reg. 7,877 (Dep't of

Commerce Mar. 5, 2019), Appx1000; *Antidumping Duty Order; Circular Welded Carbon Steel*

*Pipes and Tubes from Thailand*, 51 Fed. Reg. 8,341 (Dep't of Commerce Mar. 11, 1986)

(Thailand Order).  On March 29, 2019, Saha Thai and domestic producers, including Wheatland

Tube, requested that Commerce review several Thai producers and exporters.  *See Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743 (Dep't of Commerce May 29, 2019), Appx1073; PDM 1-2, Appx4602-03.  On July 29, 2019, Commerce announced that it intended to consider whether the scope of the Thailand Order included line pipe.  *See Circular Welded Carbon Steel Pipes and Tubes from Thailand: Scope Inquiry on Line Pipe* (Dep't of Commerce July 29, 2019) at 1, Appx1115.  On October 18, 2019, Commerce selected Saha Thai as the sole mandatory respondent in the administrative review.  *See generally* Administrative Review of the Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Respondent Selection (Oct. 18, 2019) at 1, Appx1131.

On October 21, 2019, Commerce requested that Saha Thai report all of its U.S. sales of subject merchandise for the period of review.  *See* Initial Antidumping Duty Questionnaire (Oct. 21, 2019) at C-2, Appx1201.  On December 18, 2019, Saha Thai reported some — but not all — of the requested information and reported U.S. sales of approximately [          ].  *See* AFA Memo. at 4, Appx804706.  About [          ] of those reported sales were made to [

          ], a customer of Saha Thai since [     ].  *Id.*, Appx804706.

On November 22, 2019, Commerce self-initiated a scope inquiry.  *See* Wheatland Tube's Request to Conduct Scope Inquiry in Conjunction with Administrative Review (Dec. 18, 2019) at 1, Appx2270; *Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe* (Dep't of Commerce June 30, 2020) (Final Scope Ruling) at 2, Appx10600.[1]  On December 18,

---

[1] The scope of the antidumping duty order is as follows:

> The products covered by this order are certain circular welded carbon steel pipes and tubes from Thailand. The subject merchandise has an outside diameter of 0.375 inches or more, but not exceeding 16 inches. These products, which are commonly referred to in the industry as

2019, Wheatland Tube requested that Commerce conduct its administrative review in conjunction with the agency's scope inquiry. *See id.* On December 30, 2019, Saha Thai objected, stating that Commerce's scope ruling would affect only the entries dated after November 22, 2019, the date on which Commerce initiated its scope inquiry, whereas the antidumping duty review's period of review was March 1, 2018, through February 28, 2019. *See Saha Thai Objection to Petitioner's Scope Inquiry Request* (Dec. 30, 2019) at 4, Appx2455. Saha Thai stated that "Commerce has the express authority to conduct a scope inquiry and to clarify the scope . . . during an administrative review," even though "the restrictions imposed on that authority to suspend liquidation to only those entries made on or after the date of initiation of a formal scope inquiry." *Id.* Saha Thai did not indicate that it had been selling dual-stenciled pipe in the United States or mention dual-stenciled pipe at all. *See id.* at 1-6, Appx2452-57. On February 24, 2019, Commerce denied Wheatland Tube's request. *See* Rejection of Conjunction Request (Feb. 24, 2019) at 1, Appx4421; IDM at 9, Appx10786 (citing *United Steel and Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235, 1248-55 (Ct. Int'l Trade 2017)).

---

"standard pipe" or "structural tubing" are hereinafter designated as "pipes and tubes." The merchandise is classifiable under the Harmonized Tariff Schedule of the United States (HTSUS) item numbers 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30.5040, 7306.30.5055, 7306.30.5085 and 7306.30.5090. Although the HTSUS subheadings are provided for convenience and purposes of CBP, the written description of the merchandise subject to the order is dispositive.

*See* IDM at 3, Appx10780. The language governing the scope of the Thailand Order has been amended since the 1989 shift from the Tariff Schedule of the United States (TSUSA) to the Harmonized Tariff Schedule of the United States (HTSUS). *See*, *e.g.*, *Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand; Preliminary Results of Antidumping Duty Administrative Review*, 55 Fed. Reg. 42,596 (Dep't Commerce Oct. 22, 1990) (noting transition from TSUSA to HTSUS).

On January 9, 2020, Wheatland Tube submitted rebuttal comments, alleging a pattern of circumvention, evasion, and fraud involving Saha Thai and [

          ]. *See* Wheatland Tube's Rebuttal Comments on Saha Thai's B-C Response (Jan. 9, 2020) at 2-12, Appx802524-34. On March 23, 2020, Commerce issued a supplemental questionnaire, requesting that Saha Thai provide additional information, in response to Wheatland Tube's allegations. *See* Second Supplemental Questionnaire (March 23, 2020) Appx803815 (requesting report of subject and non-subject merchandise sold to [

          ] and explanation of Saha Thai's relationship with [

          ]). On March 27, 2020, before Saha Thai responded to Commerce's supplemental questionnaire, Commerce released its preliminary results and calculated a weighted-average dumping margin of 0.00 percent for Saha Thai. *See* PDM at 15, Appx4616. On April 2, 2020, Commerce published its preliminary results. *See* IDM at 2, Appx10779.

On April 20, 2020, Saha Thai responded to Commerce's supplemental questionnaire. Saha Thai Second Supplemental Questionnaire Response (Apr. 20, 2020) at 1, Appx804085. Saha Thai indicated that it had sold dual-stenciled pipe meeting ASTM A53 specification — i.e., standard pipe — to [

          ]. *See* AFA Memo. at 4, Appx804706. Saha Thai had reported that it made its [    ] U.S. sale of standard pipe during this period of review in [          ]. *Id.* In October 2018, the antidumping duty cash deposit rate applicable to Saha Thai's imports had increased from 0.69 percent to 28.0 percent. *Id.* n.24 (citing *Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 51,927 (Dep't of Commerce Oct. 15, 2018)). At that time, Saha Thai began selling to [          ] dual-stenciled pipe, which Saha Thai knew was destined for the United

States, as evidenced by Saha Thai's sales record. *Id.* Saha Thai had sold dual-stenciled pipe for

a total of about [        ] in the United States during the [last five months] of the period of

review. *Id.* [   ] of those sales were made to [      ], who then sold the merchandise to

[      ] in the United States. *Id.* [       ] was Saha Thai's [    ] U.S. customer

for the merchandise meeting ASTM A53 specifications — i.e., standard pipe — during the [

      ] of the period of review. *Id.* at 4-5, Appx804706-07.

        On June 30, 2020, Commerce issued its final scope ruling in the separate scope inquiry,

finding that the scope of the Thailand Order included dual-stenciled pipe. *See generally* Final

Scope Ruling, Appx10599-617. On September 18, 2020, Wheatland Tube submitted new factual

information, containing certain findings of United States Customs and Border Protection (CBP)

under the Enforce and Protect Act of 2015 (EAPA). *See* Wheatland Letter, "New Factual

Information" (Sept. 18, 2020) at Exhibit 1 (EAPA Report) at 1-8, Appx10583-90. Specifically,

the EAPA Report stated that, in [    ], [      ] emerged as the importer of record for pipe

manufactured by Saha Thai and that the entries subject to antidumping duties, also known as

Type 03 entries, significantly decreased. *Id.* at 5, Appx10587. Saha Thai had been exporting its

own pipe meeting ASTM A53 specifications (standard pipe). *Id.* With [      ] being the

importer of Saha Thai's merchandise, [      ] began declaring the merchandise as dual-

stenciled pipe, meeting both ASTM A53 (standard pipe) and API 5L (line pipe) specifications

and declaring the pipe as Type 01 entries, meaning that the pipe was being classified as non-

subject merchandise. *Id.* at 5-6, Appx10587-88. During the first two quarters of [   ],

Saha Thai resumed direct imports of its own merchandise, and those imports were declared as

Type 03 entries. *Id.* at 7, Appx10589. These Type 03 entries meeting both ASTM A53 and API

5L specifications (dual-stenciled pipe) were the same merchandise imported by [      ] as

Type 01 entries. *Id.* The EAPA Report indicated that CBP would suspend the liquidation for all entries of dual-stenciled standard pipe imported by [          ] for the period between October 18, 2018, and September 11, 2020. *Id.* at 8, Appx10590. About four and a half months of that period overlapped with the period of review for Commerce's administrative review. *Compare id.* (noting suspension of liquidation for entries for October 18, 2018, through September 11, 2020), *with* IDM at 1, Appx10778 (noting period of review March 1, 2018, through February 28, 2019). IDM at 1, Appx10778. Thus, there were unliquidated entries of the subject merchandise that had entered the United States classified as Type 03 entries during the period of review.

In response to Wheatland Tube's introduction of the EAPA Report, Saha Thai requested that Commerce reject the EAPA Report and accept Saha Thai's own new factual information as rebuttal. *See* Saha Thai Request for Rejection of Petitioner's New Factual Information and To Accept Rebuttal Factual Information (Sept. 25, 2020) at 1-5, Appx10591-95. On November 25, 2020, Commerce accepted the submissions containing new factual information from both Wheatland Tube and Saha Thai, concluding that CBP's finding of evasion, which reportedly occurred during the period of Commerce's administrative review, showed good cause to reopen the administrative record. *See* Acceptance of New Factual Information (Nov. 25, 2020) at 1-2, Appx804609-10. Commerce accordingly extended the scheduling for administrative case briefs and rebuttal briefs. IDM at 2-3, Appx10779-80. The interested parties, including Wheatland Tube and Saha Thai, submitted their briefs. *See* Case Brief of Domestic Parties (Wheatland Tube and Nucor Tubular Products Inc.) (Dec. 18, 2020), Appx10683-725; Saha Thai Rebuttal Brief (Dec. 28, 2020), Appx10735-51.

In its final results, Commerce determined that Saha Thai had failed to report a substantial portion of its U.S. sales and that Saha Thai had failed to cooperate to the best of its ability under

19 U.S.C. § 1677e(b).  IDM at 3-5, Appx10780-82.  Commerce found that, given the

circumstances, and for the reasons discussed further below, applying total adverse facts available

was appropriate.  *See id*.  Pursuant to 19 U.S.C. §§ 1677e(c)(2), (d), Commerce assigned Saha

Thai a weighted-average dumping margin of 37.55 percent, the highest rate which had been

applied in a previously completed segment of the proceeding.  *Id*. at 6, Appx10783.

## ARGUMENT

### I.  Standard Of Review

This Court sustains any determination of Commerce unless it is unsupported by

substantial evidence or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The

possibility of drawing inconsistent conclusions from the record does not prevent Commerce's

finding from being supported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966).  When an issue is inherently fact-intensive, the Court will set aside Commerce's

finding only if the evidence is "so compelling that no reasonable factfinder" could reach the

same conclusion.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).  Thus, the substantial

evidence standard is a "high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d

1345, 1352 (Fed. Cir. 2006) (citation omitted)).  Commerce's determination to apply total

adverse facts available is a matter that implicates the substantial evidence standard.  *See Deacero*

*S.A.P.I. de C.V. v. United* States, 996 F.3d 1283, 1296 (Fed. Cir. 2021) (reviewing application of

total adverse facts available under substantial evidence standard); *Papierfabrik Aug. Koehler SE*

*v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016) (reviewing application of 19 U.S.C.

§§ 1677e(a)-(b)).

Commerce's statutory interpretations are reviewed under the two-part test of *Chevron, U.S.A. v. Natural Resources Defense Council*. 467 U.S. 837, 842-43 (1984). First, the Court considers whether the statutory text addresses the "precise question at issue," and if so, the agency must follow the statutory text. *Id*. at 842-43. If the text is silent or ambiguous, the agency's determination must rely on a "permissible construction of the statute." *Id*. at 843. "*Any* reasonable construction . . . is a permissible construction." *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (emphasis added). Commerce's interpretation "governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009).

Although the Supreme Court has recently narrowed the circumstances in which a court should defer to an agency's interpretation of its own ambiguous regulation, *see Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), the Court has continued to recognize that "{a}gencies (unlike courts) have 'unique expertise,' often of a scientific or technical nature, relevant to applying a regulation 'to complex or changing circumstances,'" *Id.* at 2413 (quoting *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991)). Moreover, Commerce's methodologies for calculating dumping margins are "presumptively correct." *Fla. Citrus Mut. v. United States*, 550 F.3d 1105, 1111 (Fed. Cir. 2008).

## II.    Commerce's Decision To Apply Total Adverse Facts Available Is Supported By Substantial Evidence And Otherwise In Accordance With Law

The sole issue in this case is whether Commerce's decision to apply total adverse facts available is supported by substantial evidence and otherwise in accordance with law. *See also* AFA Memo. at 4-5, Appx804706-07 (finding that Saha Thai failed to report U.S. sales of dual-stenciled pipe, for approximate total of [

] despite having reported that its [                                                      ]). Saha Thai

contends that it had no obligation to report its U.S. sales of dual-stenciled pipe because such information was not "necessary." Saha Thai Br. at 19-24. But as a preliminary matter, the use facts otherwise available did not require a finding that the missing information is necessary, given that Saha Thai had impeded the administrative review. *See* 19 U.S.C. § 1677e(a)(2)(C); *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1337 (Ct. Int'l Trade 2020); AFA Memo. at 5 (finding that Saha Thai "impeded Commerce's ability to conduct this administrative review"). In any event, as Commerce correctly determined, Saha Thai's U.S. sales of dual-stenciled pipe was necessary to "calculate an accurate weighted-average dumping margin for Saha Thai." IDM at 4. And even after being notified of the deficiencies, Saha Thai never provided a complete U.S. sales database. *See* AFA Memo. at 4 (finding that about [          ] of Saha Thai's U.S. sales were missing); Second Supplemental Questionnaire (Mar. 23, 2020) at 1-3, Appx803817-19. These facts justified applying total adverse facts available. *See Deacero*, 996 F.3d at 1296.

### A.    Legal Requirements For The Use of Adverse Facts Available

Commerce must use facts otherwise available to fill the gap in the record when the record lacks "necessary information." 19 U.S.C. § 1677e(a)(1); *accord Deacero*, 996 F.3d at 1295 (Fed. r. 2021). The agency must use facts otherwise available also when an "interested party:"

> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>
> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>
> (C) significantly impedes a proceeding under this subtitle, or
>
> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title . . . .

19 U.S.C. § 1677e(a)(2); *accord* 19 C.F.R. § 351.308.  Whereas 19 U.S.C. § 1677e(a)(1) asks

whether "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(2) omits

the word "necessary" and focuses on an interested party's conduct.  *See Hung Vuong*, 483

F. Supp. 3d at 1337.  In either of the two situations, Commerce *must* use facts otherwise

available.  19 U.S.C. §§ 1677e(a)(1)-(2) (providing that Commerce "*shall* . . . use the facts

otherwise available in reaching the applicable determination") (emphasis added).

When selecting facts otherwise available, Commerce may use an inference adverse to the

interests of a party if the agency finds that the party has failed to cooperate to the "best of its

ability." 19 U.S.C. § 1677e(b)(1)(A); *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333,

1337 (Fed. Cir. 2016) (discussing need for adverse inference given that burden of creating

adequate record lies with interested parties, not Commerce); Statement of Administrative Action

Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, at 868 (1994)

(noting that, because Commerce has no subpoena power, using adverse inference is "essential

investigative tool" to induce cooperation from interested parties in antidumping proceedings).

Satisfying the best of its ability standard requires "maximum effort" from an interested party "to

provide Commerce with full and complete answers to all inquiries."  *Nippon Steel*, 337 F.3d at

1382; *accord Deacero*, 996 F.3d at 1295.  An adverse inference is appropriate not only when an

interested party fails to respond to a request for information, but also when "it is reasonable for

Commerce to expect that more forthcoming responses should have been made."  *Deacero*, 996

F.3d at 1298 (quoting *Nippon Steel*, 337 F.3d at 1383).  Although the best of its ability standard

"does not require perfection and recognizes that mistakes sometimes occur, it does not condone

inattentiveness, carelessness, or inadequate record keeping."  *Nippon Steel*, 337 F.3d at 1382.

The standard contains no "intent element," meaning that an interested party's failure to cooperate need not be intentional.  *See id.* at 1383.

When applying an adverse inference, Commerce may rely on information derived from a wide variety of sources:

> An adverse inference under paragraph (1)(A) *may include* reliance on information derived from:
>
> (A) the petition,
>
> (B) a final determination in the investigation under this subtitle,
>
> (C) any previous review under section 1675 of this title or determination under section 1675b of this title, or
>
> (D) any other information placed on the record.

19 U.S.C. § 1677e(b)(2) (emphasis added); *accord* 19 C.F.R. § 351.308(c).  Commerce need not corroborate the information if it is obtained during an administrative review.  19 U.S.C. § 1677e(c)(1).  And the agency need not "estimate what the . . . dumping margin would have been if the interested party . . . had cooperated."  19 U.S.C. § 1677e(d)(3)(A).  Similarly, Commerce need not "demonstrate that the . . . dumping margin used . . . reflects an alleged commercial reality of the interested party."  19 U.S.C. § 1677e(d)(3)(B); *accord Deacero*, 996 F.3d at 1301.

> **B.    Commerce's Finding That Saha Thai's U.S. Sales Of Dual-Stenciled Pipe Is Necessary Information Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

Commerce correctly determined that Saha Thai's U.S. sales of dual-stenciled pipe was necessary information.  No bright-line rule defines what constitutes necessary information in this context, but the case law guides our analysis.  Indeed, certain categories of information have been found so essential that an interested party's failure to supply such information has justified Commerce's application of total adverse facts available.  *See Mukand, Ltd. v. United States*, 767

F.3d 1300, 1308 (Fed. Cir. 2014) (upholding Commerce's application of total adverse facts available when interested party has failed to provide "cost data broken down by product size"). "In general, use of partial facts available is not appropriate when the missing information is core to the antidumping analysis and leaves little room for the substitution of partial facts without undue difficulty." *Id*. One example of such "core" information is the subject merchandise's price in the United States. *See Hyundai Heavy Indus., Co. v. United States*, 399 F. Supp. 3d 1305, 1313 (Ct. Int'l Trade 2019) (upholding Commerce's use of total facts available after noting that U.S. and home market prices are "central"), *aff'd*, 819 F. App'x 937 (Fed. Cir. 2020).

As part of an administrative review, Commerce determines the applicable dumping margin for each entry of the subject merchandise. *See* 19 U.S.C. § 1675(a)(2)(A)(i). A dumping margin reflects the amount by which the subject merchandise's "normal value" exceeds its "export price." 19 U.S.C. § 1677(35)(A). The normal value refers to the price the producer charges in its home market; the export price refers to the price of the merchandise in the United States. *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010); *see also* 19 U.S.C. § 1677b (normal value determination); 19 U.S.C. § 1677a (export price determination). The latter, the merchandise's export price, requires Commerce to determine the "the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation." 19 U.S.C. § 1677a(a). Commerce then makes various adjustments to that price, taking into account the circumstances under which the merchandise is sold in the United States, to allow an apples-to-apples comparison between the normal value and the export value. *See* 19 U.S.C. §§ 1677a(c)-(d); *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

Here, Saha Thai's U.S. sales of dual-stenciled pipe was necessary information. Given Commerce's obligation to determine the price at which the subject merchandise is first sold and

to make the required adjustments, the need for the very existence of such sales was apparent. But Saha Thai had failed to even acknowledge the existence of those sales. *See* AFA Memo. at 4-5, Appx804706-07. And the very existence of certain U.S. sales was more "central," *Hyundai Heavy Indus.*, 399 F. Supp. 3d at 1313, than the merchandise's price in the United States for purposes of calculating a dumping margin. Without the knowledge that certain U.S. sales existed, Commerce could not begin inquiring about the merchandise's U.S. price. Moreover, Saha Thai never provided a complete U.S. sales database, so "reliance on facts otherwise available {was} necessary," as Commerce correctly found. AFA Memo. at 4, Appx804706.

Saha Thai contends otherwise, arguing that the missing information was not "necessary" because: (1) the "existence of import entries of subject merchandise during the applicable review period defines the scope of the antidumping administrative review," Saha Thai Br. at 19-21; (2) Commerce's own regulations provide that the agency's scope ruling does not apply to the entries of the subject merchandise that predate "the date of initiation of the scope inquiry," *id*. at 22; (3) case law provides that Commerce's scope ruling cannot apply to import entries that predate the scope inquiry's initiation, *id* at 22-23; and (4) Commerce explicitly stated that its scope ruling would not apply to this particular administrative review, *id*. at 23-24. The Court should reject these arguments.

We discuss the central flaws in Saha Thai's rationale before addressing each of the four arguments. The fact that Commerce's scope inquiry was pending did not excuse Saha Thai from reporting its U.S. sales of dual-stenciled pipe. Commerce had the authority to request such information, despite the ongoing scope inquiry. *See* 19 C.F.R. § 351.225(l)(4) ("{N}otwithstanding the pendency of a scope inquiry, if the Secretary considers it appropriate,

the Secretary may request information concerning the product that is the subject of the scope inquiry for purposes of a review under this subpart.").  However confident Saha Thai might have been in its own interpretation of the Thailand Order, Saha Thai had the obligation to report its U.S. sales of dual-stenciled pipe.  *See Shandong Huarong Mach. Co. v. United States*, 435 F.Supp.2d 1261, 1272-73 (Ct. Int'l Trade 2006) ("Commerce was entitled to seek the requested information regardless of the status of the scope inquiries, and that Huarong and TMC were required to respond."); IDM at 5, Appx10782 (noting Commerce's scope inquiry, which concluded before re-opening of record, as basis to find that Saha Thai knew about its obligation to report sales of dual-stenciled pipe).  In addition, a scope ruling that a product is covered by an antidumping order is a determination that the product is — and always has been — covered by the order.  *See* 19 C.F.R. § 351.225; IDM at 9, Appx10786.  And Commerce's decision to use facts otherwise available did not require a finding that the missing information was necessary, given Commerce's additional and separate finding that Saha Thai had impeded the administrative review.  *See* 19 U.S.C. § 1677e(a)(2)(C); *Hung Vuong*, 483 F. Supp. 3d at 1337; IDM at 4-5; AFA Memo. at 5, Appx804707.

Each of Saha Thai's arguments lacks merit.  First, by focusing on the "import entries of subject merchandise," Saha Thai appears to argue that how an interested party decides to designate its merchandise — i.e., Type 01 or Type 03 entries — determines the scope of Commerce's administrative review.  But subject merchandise is statutorily defined as "the class or kind of merchandise that is within the scope of . . . a review," with no reference to how the merchandise is designated in an import entry.  19 U.S.C. § 1677(25).  And Commerce's own regulations provide that an administrative review may "cover, *as appropriate*, entries, exports, or sales of the subject merchandise."  19 C.F.R. § 351.213(e)(i) (emphasis added).  Those

regulations therefore grant Commerce the "discretion to choose entries, exports, or sales in determining whether sales activity occurred during" the period of review. *See Juancheng Kangtai Chem. Co., Ltd. v. United States*, 322 F. Supp. 3d 1351, 1357 (Ct. Int'l Trade 2018) (internal citation omitted). Further, under Saha Thai's rationale, an interested party would be incentivized to declare dumped subject merchandise incorrectly as Type 01 entries and therefore apparently outside Commerce's ability to review them. That cannot be correct. *See Nan Ya Plastics Corp.*, 810 F.3d at 1349 (reasoning that courts refuse to interpret texts in ways that lead to absurd results).

Second, Saha Thai mistakenly argues that, "{s}ince the scope inquiry here was initiated in November 2019, the conclusion from that scope inquiry cannot go back in time." Saha Thai Br. at 22. This argument misstates the nature of a scope ruling, which merely clarifies an order's scope. *See* 19 C.F.R. § 351.225(a) (providing that Commerce issues scope ruling to clarify scope of antidumping duty order). And the regulation cited by Saha Thai confirms its obligation to report its U.S. sales of dual-stenciled pipe despite the pending scope inquiry. *See* Saha Thai Br. at 22 (citing 19 C.F.R. § 351.225(l)). That regulation provides that, Commerce will instruct CBP to suspend the liquidation for each unliquidated entry of the product entered "on or after the date of initiation of the scope inquiry" when there is no suspension of liquidation already in place. 19 C.F.R. § 351.225(l)(2). But the same regulation also provides that, "notwithstanding the pendency of a scope inquiry, if {Commerce} considers it appropriate, {Commerce} may request information concerning the product that is the subject of the scope inquiry," as discussed above. 19 C.F.R. § 351.225(l)(4); *Shandong Huarong Mach.*, 435 F.Supp.2d at 1272-73.

Third, none of the cases cited by Saha Thai supports Saha Thai's argument. Specifically, Saha Thai incorrectly relies on three cases — *Sunpreme Inc. v. United States*, 946 F.3d 1300

(Fed. Cir. 2020) (en banc); *Tai-Ao Aluminium (Taishan) Co. v. United States*, 983 F.3d 487 (Fed.

Cir. 2020); and *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020) —

for the broad proposition that "there is substantial court precedent that the effective date for a

Commerce scope decision is the date of initiation; meaning that the scope decision does not

apply import entries prior to the date of initiation." Saha Thai Br. at 22. The Federal Circuit's

decision in *Sunpreme* addressed the authority of Commerce and CBP to suspend liquidation to

resolve ambiguities in the scope of an antidumping duty order before the initiation of a scope

inquiry. *See* 946 F.3d at 1317. The *Tai-Ao Aluminium* decision addressed whether an exporter

must be given notice that the exporter's merchandise "would be subject to Commerce's anti-

circumvention inquiry and therefore their unliquidated entries entered on or after that date could

be subject to duties." *See* 983 F.3d at 493. The *United Steel & Fasteners* decision addressed

whether Commerce may retroactively suspend liquidation after issuing its scope ruling. *See* 947

F.3d at 800. These cases do not support Saha Thai's broad proposition.

Further, Commerce acknowledged that its own regulations limited its ability to order

suspension of liquidation retroactively before a scope inquiry's initiation. IDM at 10,

Appx10787. A pending scope inquiry, however, did not limit Commerce's ability to examine all

U.S. entries of subject merchandise in this review. *See id.* Indeed, as this Court has explained:

> {Commerce} cannot assess dumping duties against previously-
> liquidated merchandise, but it is required to include sales information
> for the liquidated merchandise that is within the scope of the order for
> purposes of calculating assessment rates for remaining unliquidated
> entries and cash deposits for future entries. Any other result would
> permit too large of a windfall for a respondent participating in an
> antidumping duty review.

*FAG Kugelfischer Georg Schafer KGaA v. United States*, 932 F. Supp 315, 320 (Ct. Int'l Trade

1996).

Fourth, Saha Thai argues that Commerce is barred from considering Saha Thai's U.S. sales of dual-stenciled pipe. *See* Saha Thai Br. at 23-24. Instead of citing any statute, regulation, or case law, Saha Thai relies on a statement made by Commerce when the agency denied Wheatland Tube's request to conjoin the scope inquiry and administrative review. *See* Letter Rejecting Wheatland Tube's Request to Conjoin (Feb. 24, 2020) at 1, Appx4421 ("Thus, any finding that we make regarding whether line pipe or dual-stenciled standard and line pipe is covered by the scope of the order would not be effective during the period of review (i.e., March 1, 2018 through February 28, 2019) of the instant administrative review."). That statement, however, was referring to Commerce's ability to order suspension of liquidation, as Commerce explained as part of the final determination:

> Though the timing of the scope inquiry regulations limits Commerce's ability to order suspension of liquidation as a result of that inquiry itself, those procedural suspension restrictions in no way limit Commerce's ability to examine U.S. entries of all subject merchandise in this review — both entries preceding the scope inquiry initiation and entries following the scope inquiry initiation.

IDM at 10. Indeed, as discussed above, a pending scope inquiry did not limit Commerce's ability to examine U.S. entries of all subject merchandise in this review. *See FAG Kugelfischer Georg Schafer KGaA*, 932 F. Supp at 320; 19 C.F.R. § 351.225(a).

In sum, Saha Thai has identified no error in Commerce's decision to use facts otherwise available. Commerce's decision is supported by substantial evidence and otherwise in accordance with law.

**C.    Commerce's Finding That Saha Thai Had Failed To Cooperate To The Best Of Its Ability Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

Saha Thai does not explicitly argue that it has cooperated to the best of its ability in responding to Commerce's request that Saha Thai report all U.S. sales of the subject

merchandise.  Nevertheless, Saha Thai states that: (1) Commerce never requested U.S. sales of dual-stenciled pipe; (2) Saha Thai made "clear" that it was not reporting U.S. sales of dual-stenciled pipe; and (3) Saha Thai's reporting on its U.S. sales was consistent with its reporting in prior administrative reviews.  Saha Thai Br. at 16-18, 26.  Substantial evidence supports Commerce's determination that Saha Thai has failed to cooperate to the best of its ability.  *See* IDM at 14; AFA Memo. at 4-5 (finding that Saha Thai failed to cooperate to best of its ability and impeded Commerce's administrative review by underreporting U.S. sales).

    The substantial evidence standard applies to these factual issues, and under that deferential standard, Saha Thai cannot show that it has cooperated to the best of its ability.  *See Nippon Steel Corp.*, 458 F.3d at 1352.  First, Commerce asked Saha Thai to report all of its U.S. sales of subject merchandise.  *See* Initial Antidumping Questionnaire (Oct. 21, 2019) at C-2, Appx1201 ("Report each U.S. sale of merchandise entered for consumption during the {period of review} . . . .").  Subject merchandise included standard pipe, which had an outside diameter of 0.375 inches or more, but not exceeding 16 inches, of any wall thickness.  *See* AFA Memo. at 2-3, Appx10796-97.  Dual-stenciled pipe met that description, as Commerce correctly found.  *See id*.  Because dual-stenciled pipe met the description of subject merchandise, it was "reasonable for Commerce to expect that more forthcoming responses should have been made."  *Deacero*, 996 F.3d at 1298.  That is, even though whether "subject merchandise" included dual-stenciled pipe was a disputed issue that was being resolved as part of the scope inquiry, it was reasonable for Commerce to expect that, Saha Thai would at least acknowledge the existence of its U.S. sales of dual-stenciled pipe.  *See* IDM at 5, Appx10782 (noting scope inquiry as basis to find that Saha Thai was aware of its obligation to report its U.S. sales of dual-stenciled pipe).  A more forthcoming response would have been a complete U.S. sales database from Saha Thai including

the U.S. sales of dual-stenciled pipe — or at least acknowledgment of their existence — with a caveat noting Saha Thai's view that the Thailand Order's scope did not cover dual-stenciled pipe. But that was not Saha Thai's response.

Second, Saha Thai did not make "clear" that it was omitting its U.S. sales of dual-stenciled pipe. Saha Thai relies on the following *footnote* in its response to Commerce's Section A Questionnaire:

Saha Thai Section A Questionnaire Responses to (Nov. 26, 2019) at 3 n.3, Appx800040. This footnote mentions standard pipe and line pipe, but it does not mention dual-stenciled pipe. And even if the footnote could be construed to be stating that Saha Thai was excluding its U.S. sales of dual-stenciled pipe, the possibility of inconsistent conclusions from the record does not make Commerce's finding unsupported by substantial evidence. *See Consolo*, 383 U.S. at 620.

Third, Saha Thai argues that its report of U.S. sales was consistent with its reporting practices in prior administrative reviews. Saha Thai Br. at 26. Saha Thai's responses to Commerce's requests in prior administrative reviews are not included in the record. Even assuming that they were, the evasion concerns surrounding dual-stenciled pipe were not raised in those prior administrative reviews. Saha Thai's past responses in the absence of such concerns

were irrelevant.  *See Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("{E}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.").

In short, Saha Thai owed cooperation, not gamesmanship, in responding to Commerce's inquiries.  Saha Thai's conduct here fell far below the best of its ability standard.  Commerce's application of adverse inferences was supported by substantial evidence and in accordance with law.

### D.  Commerce Notified Saha Thai Of The Deficiencies In Saha Thai's U.S. Sales Database

Relying on the remedial provisions of 19 U.S.C. § 1677m(d), Saha Thai contends that Commerce failed to notify Saha Thai of the deficiencies pertaining to the missing U.S. sales of dual-stenciled pipe.  Saha Thai Br. at 25.  This argument should be rejected for three reasons: (1) Saha Thai did not raise this argument before Commerce during the administrative proceeding, so Saha Thai has failed to exhaust its administrative remedies; (2) the remedial provisions of 19 U.S.C. § 1677m(d) do not apply here, given Saha Thai's intentional failure to report its U.S. sales of dual-stenciled pipe; and (3) Commerce did, in fact, notify Saha Thai of the deficiencies.  Each of these three reasons provides an independent basis to reject Saha Thai's argument.

First, Saha Thai has failed to exhaust administrative remedies by failing to raise the argument during the administrative proceeding before Commerce.  Interested parties must raise their arguments relevant to Commerce's final determination in their administrative case briefs. *See* 28 U.S.C. § 2637(d); 19 C.F.R. §§ 351.309(b)-(e); *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (explaining that party waives its argument by failing to raise it before Commerce).  When a party fails to raise its argument before Commerce, this Court has the

discretion to reject that argument. *See Boomerang Tube LLC v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017). Given the statutory mandate that this Court "*shall*, where appropriate, require the exhaustion of administrative remedies," 28 U.S.C. § 2637(d) (emphasis added), this Court insists that parties exhaust administrative remedies absent a "strong contrary reason," *id*. at 912. The parties briefed the issue whether Commerce should apply total adverse facts available, so Saha Thai had the opportunity to raise its argument that Commerce should have provided a notice under 19 U.S.C. § 1677m(d). Despite the opportunity to do so, Saha Thai did not raise the argument. *Compare* Saha Thai's Rebuttal Brief at 1-7, Appx10738-44, *with* Saha Thai Br. at 24-28. The record shows no strong reason to depart from the requirement that parties must exhaust administrative remedies. Accordingly, the Court should reject Saha Thai's argument that Commerce had an obligation to notify Saha Thai of its reporting deficiencies.

Second, Commerce had no obligation to notify Saha Thai of its own reporting deficiencies. The Federal Circuit has explained that 19 U.S.C. § 1677m(d) does not require Commerce to treat an "intentionally incomplete" report as a "deficiency:"

> But nothing in that language compels Commerce to treat intentionally incomplete data as a "deficiency" and then to give a party that has intentionally submitted incomplete data an opportunity to "remedy" as well as to "explain." The consequence of such a reading would be to permit respondents to submit fraudulent data with the knowledge that, should their misconduct come to light, they can demand an opportunity to remedy their intentionally deficient data and avoid the otherwise-authorized adverse inferences. The language of § 1677m(d) does not compel that reading. It permits Commerce not to deem such misconduct to be a "deficiency" or to provide only an opportunity to "explain" (but not "remedy") such misconduct.

*Papierfabrik Aug. Koehler*, 843 F.3d at 1384.

Here, Commerce had no obligation to provide Saha Thai a notice under 19 U.S.C. § 1677m(d). Saha Thai's failure to report its U.S. sales of dual-stenciled pipe was intentional. Indeed, even now before this Court, Saha Thai does not attempt to argue that the exclusion of its

U.S. sales of dual-stenciled pipe was inadvertent.  *See* Saha Thai Br. at 24-28.  Further, Saha

Thai did not deny the underlying findings of the EAPA Report, including the finding that Saha

Thai had evaded the Thailand Order.[2]

Third, Commerce complied with the notice requirement under 19 U.S.C. § 1677m(d).

The statute provides:

> Deficient submissions
>
> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either--
>
> (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
>
> (2) such response is not submitted within the applicable time limits, then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d).  Because the statute explicitly does not describe the form in which

Commerce must provide a notice, the agency must rely on a "permissible construction of the

statute."  *Chevron, U.S.A.*, 467 U.S. at 8443.  "*Any* reasonable construction . . . is a permissible

construction."  *Timken*, 354 F.3d at 1342 (emphasis added).  Issuing a supplemental

questionnaire is one way to satisfy the notice requirement.  *Deacero*, 996 F.3d at 1298 (reasoning

---

[2] Saha Thai instead argues that Commerce erred by relying on the EAPA Report, and we address that argument below and explain how Commerce reopened the record.

that post-preliminary supplemental questionnaire satisfied requirements under 19 U.S.C. § 1677m(d).

Here, Commerce issued a supplemental questionnaire, in response to Wheatland Tube's allegation of a pattern of widespread circumvention, evasion, and fraud.  *See* Second Supplemental Questionnaire (Mar. 23, 2020) at 1-3, Appx803817-19 (requesting report of merchandise sold to [                                    ] and explanation of Saha Thai's relationship with [                                    ]).  In response to Wheatland Tube's submission of new factual information, Commerce permissibly reopened the administrative record to allow additional facts from parties other than Wheatland Tube — including Saha Thai's rebuttal.  *See* IDM at 10-11, Appx10787-88.  Saha Thai had adequate notice here.

### E.   Commerce's Decision To Reject Saha Thai's Incomplete U.S. Sales Database Is Supported By Substantial Evidence And Otherwise In Accordance With Law

Saha Thai contends that Commerce unlawfully rejected the U.S. sales database that had been submitted by Saha Thai.  Commerce correctly declined to consider the reported U.S. sales database because it was — and still is — "so incomplete that it cannot serve as a reliable basis for reaching the applicable determination."  19 U.S.C. § 1677m(e)(3); *see also* IDM at 13-14, Appx10790-91 (discussing application of total adverse faction available and noting Saha Thai's failure to provide necessary information); AFA Memo. at 4, Appx804706 (noting that about [        ] of Saha Thai's U.S. sales were missing and stating that reliance on facts otherwise available was necessary because complete U.S. sales remained unavailable).

The statutory text of section 1677m(e)(3) provides:

> In reaching a determination under section 1671b, 1671d, 1673b, 1673d, 1675, or 1675b of this title the administering authority and the Commission shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not

meet all the applicable requirements established by the administering authority or the Commission, if--

(1) the information is submitted by the deadline established for its submission,

(2) the information can be verified,

(3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

(4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information, and

(5) the information can be used without undue difficulties.

19 U.S.C. § 1677m(e)(3). Failure to fulfill any one criterion renders section 1677m(d) inapplicable. *Papierfabrik Aug. Koehler SE*, 843 F.3d at 1382.

Here, Saha Thai cannot satisfy the first and third criteria. As for the first criterion, Saha Thai does not argue that it ever submitted a complete database containing all U.S. sales of dual-stenciled pipe. *See*, *e.g.*, Saha Thai Br. at 29 ("The evidentiary record also confirms that Saha Thai did not submit any new sales or cost databases after Commerce's preliminary determination."). As for the third criterion, Commerce found that Saha Thai's U.S. sales database was missing about [          ] of Saha Thai's U.S. sales. AFA Memo. at 4, Appx804706. Further, calculating the dumping margin for Saha Thai required the missing U.S. sales of dual-stenciled pipe, as discussed above. Given that Saha Thai never provided a complete U.S. sales database, the sheer volume of the missing information, and the importance of the missing information, Commerce had no obligation to consider Saha Thai's reported U.S. sales. *See Hyundai Heavy Indus.*, 399 F. Supp. 3d at 1313.

**F.** **Commerce's Decision to Reopen The Record And To Accept New Factual Information Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

Saha Thai contends that Commerce unlawfully relied on CBP's EAPA Report. Saha Thai Br. at 29. According to Saha Thai, CBP's EAPA Repot was "only a notice of initiation, not any official findings." *Id.* This argument misstates Commerce's actions — and relies on no legal authority. Rather than adopting the EAPA Report wholesale, Commerce reopened the record and allowed the interested parties to submit additional factual information to rebut, correct, or clarify the new factual information in response to Wheatland Tube's submission of the EAPA Report. *See* IDM at 10-11, Appx10787-88; New Factual Information Acceptance Memorandum (Nov. 25, 2020) at 2, Appx804610. Thus, even though the EAPA Report led to Commerce's decision to reopen the record, Commerce allowed the parties to develop the record further and relied on the new record, which included the EAPA Report and the parties' submissions. *See* AFA Memo. at 4-5, nn.16-33, Appx804706-07 (record supporting application of total adverse facts available); IDM at 6-7 nn.44-46, Appx10783-84 (record supporting selection of AFA rate).

Commerce has broad discretion to reopen its administrative record and to accept new factual information. The agency may extend the deadlines established by its own regulations to accept new factual information if good cause exists. *See* 19 C.F.R. § 351.302(b) ("Unless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established by this part."). When Commerce accepts new factual information from an interested party, the agency allows other interested parties to submit additional factual information to rebut, correct, or clarify the factual information newly presented. *See* 19 C.F.R. § 351.301(c)(5)(ii) ("If the Secretary accepts the information, the Secretary will issue a schedule providing deadlines for submission of factual information to rebut, clarify or correct the factual information.");

*Bridgestone Americas, Inc. v. United States*, 33 CIT 1040, 1045 (2009) (reasoning that

Commerce's accepting new factual information was not procedurally unfair to given interested

parties' notice of and opportunity to challenge new factual information correcting prior

submissions).  Indeed, the Federal Circuit has explained that, in some cases, Commerce abuses

its discretion by refusing to accept new factual information when Commerce has plenty of time

to verify or consider it.  *See Papierfabrik Aug. Koehler*, 843 F.3d at 1384 (citing *NTN Bearing*

*Corp. v. United States*, 74 F.3d 1204, 1207-08 (Fed. Cir. 1995), and *Timken U.S. Corp. v. United*

*States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)).

Here, Commerce's decision to reopen the record and to consider new factual information

is supported by substantial evidence and in other accordance with law.  Wheatland Tube had

demonstrated good cause because its new factual information indicated that Saha Thai had failed

to report a significant portion of its U.S. sales.  *See* IDM at 11, Appx10788.  Commerce

recognized that, even though the record had already closed, reopening the record and considering

Wheatland Tube's new factual information was appropriate because the new factual information

called into question the accuracy of the agency's analysis of a weighted-average dumping

margin.  *Id.*  And consistent with its own regulations, the agency allowed other interested parties,

including Saha Thai, to submit their own additional factual information to rebut, correct, or

clarify the factual information newly accepted by Commerce.  Thus, Commerce's made no error

in reopening and considering Wheatland Tube's new factual information.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Saha Thai's Rule 56.2

motion for judgment on the agency record and sustain the challenged determination in its

entirety.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ In. K. Cho
IN K. CHO
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile:  (202) 305-7644
Email:       In.K.Cho@usdoj.gov

JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and
Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001
Telephone: (240) 449-5906
Facsimile: (202) 482-8184
Email: JonZachary.Forbes@trade.gov

September 16, 2021

*Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Standard Chambers Procedure 2(B)(2) of the U.S. Court of International Trade, I certify that this brief contains 9,496 words and complies with the word-count limit set forth in Standard Chambers Procedure 2(B)(1).  To make this certification, I have relied on the word-count feature of Microsoft Word.

/s/ In. K. Cho
IN K. CHO
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile:  (202) 305-7644
Email:      In.K.Cho@usdoj.gov

September 16, 2021