# UNITED STATES COURT OF INTERNATIONAL TRADE

*Before:* **The Honorable Stephen A. Vaden, Judge**

| | |
|---|---|
| **SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**UNITED STATES,** )<br><br>**Defendant,** )<br><br>**WHEATLAND TUBE,** )<br><br>**Defendant-Intervenor.** ) | **Court No. 21-00049** |

## PLAINTIFF SAHA THAI'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
James P. Durling
James C. Beaty
Ana Amador

**Curtis, Mallet-Prevost, Colt & Mosle, LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Plaintiff Saha Thai*

October 25, 2021

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

ARGUMENT .................................................................................................................... 4

I.  DEFENDANT HAS PROVIDED A MISLEADING SUMMARY OF THE KEY
    FACTS ................................................................................................................... 4

II.  COMMERCE DID NOT COMPLY WITH THE STATUTORY
     REQUIREMENTS TO APPLY ADVERSE FACTS AVAILABLE ..................... 8

     A.  The Sales Information for Dual-Stenciled Line Pipe Was Not "Necessary"
         Information ................................................................................................... 9

     B.  Saha Thai Cooperated and Fully Responded To All Requests For
         Information ................................................................................................. 12

     C.  Commerce Never Notified Saha Thai Of Deficiencies Or Any Need To
         Submit Transaction Sales Data on Dual-Stenciled Pipe ............................ 18

         1.  The argument is properly before the Court ..................................... 18

         2.  Commerce did not request sales data on dual-stenciled line pipe .... 21

     D.  Commerce Improperly Rejected the Saha Thai U.S. Sales ......................... 24

III.  COMMERCE'S RELIANCE ON THE EAPA REPORT WAS
      UNREASONABLE AND UNLAWFUL ............................................................. 26

CONCLUSION .............................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017) ...................................................................................... 20

*Bowe-Passat v. United States*,
   17 CIT 335 (1993) ..................................................................................................... 15

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .................................................................................................... 17

*Deacero S.A.P.I. De C.V. v. United States*,
   996 F.3d 1283 (Fed. Cir. 2021) .................................................................................... 21

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) .................................................................................... 13

*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000) .................................................................................... 14

*Godaco Seafood Joint Stock Co. v. United States*,
   435 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ............................................................... 20

*Hung Vuong Corp. v. United States*,
   483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ............................................................... 10

*Hyundai Elec. & Energy Sys. Co. v. United States*,
   2021 U.S. App. LEXIS 29810 (Fed. Cir. October 4, 2021) .......................................... 14

*Hyundai Heavy Indus.*,
   399 F. Supp. 3d 1305 (Ct. Int'l Trade 2019) ............................................................... 10

*Maverick Tube Corp. v. United States*,
   857 F.3d 1353 (Fed. Cir. 2017) .................................................................................... 13

*Mukand, Ltd. v. United States*,
   767 F.3d 1300 (Fed. Cir. 2014) ...................................................................... 10, 14, 25

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) .................................................................................... 13

*NSK Ltd. v. United States*,
   481 F.3d 1355 (Fed. Cir. 2007) .................................................................................... 13

*Saha Thai Steel Pipe Pub. Co. v. United States*,
   2021 Ct. Intl. Trade LEXIS 138 (Ct. Int'l Trade October 6, 2021).................. 15, 23, 25

*Shandong Huarong Mach. Co. v. United States*,
   30 CIT 1269, 435 F.Supp.2d 1261 (Ct. Int'l Trade 2006)............................................ 11

*Sigma Corp. v. United States*,
   17 CIT 1288, 841 F. Supp. 1255 (1993)...................................................................... 15

*United States v. L.A. Tucker Truck Lines*,
    344 U.S. 33 (1952) ................................................................................ 20

*Washington Int'l Ins. Co. v. United States*,
    33 CIT 1023 (2009) ............................................................................ 10

*Zhejiang Mach. Imp. & Exp. Corp. v. United States*,
    471 F. Supp.3d 1313 (Ct. Int'l Trade 2020) .................................... 20

**Statutes**

19 U.S.C. § 1677m(e) ................................................................... 24, 25

19 U.S.C. § 1677m(d) ................................................................... passim

**Regulations**

19 C.F.R. § 351.225 ......................................................................... 5, 11

## INTRODUCTION AND SUMMARY OF ARGUMENT

In applying adverse facts available in this proceeding, Commerce blatantly disregarded basic statutory requirements.  Defendant now seeks to obscure this failure by rewriting the factual history of this antidumping (AD) proceeding.  But the facts are clear.  The evidentiary record demonstrates that Saha Thai reported complete U.S. sales information for standard pipe, the <u>subject merchandise</u> at issue.  Commerce never asked for U.S. sales transactions of non-subject merchandise, such as line pipe – whether dual-stenciled or not.  Indeed, early in the proceeding, Commerce <u>explicitly ruled</u> that any change in the scope (from the ongoing scope inquiry) would not affect the review and thereby affirmatively indicated that U.S. sales data for line pipe and dual-certified line pipe were not relevant for this particular review.  Commerce made this ruling because, as a matter of law, the affirmative scope determination only applied to import entries made after the AD review time period.  Thus, Saha Thai responded to all the actual questions that Commerce posed, and responded fully to those questions, and Commerce therefore had no authority to apply total adverse facts available.

Faced with this record, Defendant struggles to find an excuse for what Commerce did here.  At the end of the proceeding and after the record had closed, Defendant argues Commerce decided the sales information for dual-stenciled line pipe somehow had become "necessary" to the proceeding.  This belated conclusion directly contrasted to Commerce's own previous finding that such sales information relating to a possible affirmative scope determination was <u>not</u> necessary in this case and would not have fallen in the relevant review period.  Since Commerce never asked for this information and

instead indicated it would not be relevant, it is hard to see how this information could actually be "necessary" within the meaning of 19 U.S.C. §1677m(d).

But even if the Court were to give Commerce the benefit of the doubt about what information is "necessary," Commerce's actions here would still blatantly violate the statute. It is not enough for information to be "necessary."  Under 19 U.S.C. §1677m(d), Commerce must actually ask for the information and must give respondents a chance to correct any deficiencies with provided information.  In this case, Commerce never specifically requested the sales information about dual-stenciled line pipe from Saha Thai.  Saha Thai stated explicitly it was only providing U.S. sales data for the standard pipe that was subject merchandise.  And for much of the proceeding, Commerce accepted this basis for reporting U.S. sales.  Indeed, Commerce itself fully accepted and utilized Saha Thai's submitted U.S. sales data (of only subject merchandise) in its preliminary determination.  The last minute change in expectations was abrupt.  And this abrupt change in expectations occurred only after the record for new factual information had closed.  Commerce never provided Saha Thai any notice of some deficiency that needed to be remedied, and never provided Saha Thai an opportunity to provide the information about non-subject dual-stenciled line pipe that Commerce later wanted.  For these reasons, Commerce violated the statutory requirements of 19 U.S.C. §1677m(d) for applying AFA.

We ask this Court to use its equitable powers to step back and view the absurdity of Commerce's position here.  Commerce's entire case is premised upon Commerce's affirmative scope ruling that this Court has just concluded was unlawful.  The U.S. AD

law is premised upon the proper scope of the AD order.  AD duties are imposed only on imported merchandise that meets the scope definition.  Imported merchandise not included within the scope definition cannot be subject to AD duties.  Moreover, a Commerce AD review seeks to establish final AD liability for imports of subject merchandise.  Given this Court's recent decision that dual-stenciled line pipe cannot lawfully be considered "subject merchandise," it would make no sense for this Court to affirm a Commerce determination that imposed significant AD liability because of an alleged absence of this non-subject dual-stenciled line pipe data.  Plaintiffs respectfully ask this Court to make sure that common sense prevails.

## ARGUMENT

## I.    DEFENDANT HAS PROVIDED A MISLEADING SUMMARY OF THE KEY FACTS

The specific facts in this case are critical.  Defendant has attempted to rewrite the history of this proceeding to excuse Commerce's own failures.  Yet the record evidence speaks for itself and confirms several key points that Defendant now tries to avoid or obscure.

**Critical fact  #1**:    The issue of whether this AD review should encompass only circular-welded carbon steel pipe (CWP or standard pipe) (as had been defined for 30+ years) or both CWP and line pipe was raised at the very beginning of the review. Specifically, just a few weeks after the Commerce initiation, Petitioner explicitly requested that Commerce delay the review "until after the scope determination on line pipe is issued so that {Commerce} may review entries of line pipe if they have been determined to be within the scope."  *See* Petitioner's Letter (August 1, 2019), Appx1106. Because it did not delay the review, Commerce effectively rejected Petitioner's request. Commerce's Revised U.S. Customs Entry Data Letter (August 8, 2019), Appx1120-1130.

**Critical fact #2**:    Section C of the AD questionnaire that Commerce issued to Saha Thai explicitly required Saha Thai to report its U.S. sales of "subject merchandise." "Subject merchandise" was defined as the merchandise meeting the then-definition of the scope of the AD order covering only CWP.  *See* Commerce AD Questionnaire (October 21, 2019), at Section C, Appx1200–1236.

**Critical fact #3**:      Saha Thai reported complete U.S. sales information for <u>subject merchandise</u>.  *See* Saha Thai Section C Response (December 23, 2019) Appx2280–2458.  Defendant suggests that Saha Thai's reporting of U.S. sales was incomplete, Def. Br. at 3, but this statement is incorrect. Saha Thai reported all the U.S. sales that had been requested – all sales of subject merchandise.  Indeed, to make sure there was no misunderstanding, early in the proceeding Saha Thai made clear on November 26, 2019 that it was reporting only subject CWP, and not non-subject line pipe.  Saha Thai Responses to Questionnaire Section A (November 26, 2019), at page 3, fn. 3, Appx1314.  Commerce's belated effort to rewrite the scope of the order – which this Court has already found to be an impermissible expansion of the actual scope of the order – does not change the understanding of the scope of subject merchandise that existed earlier in this proceeding.

**Critical fact #4**:      Commerce itself explicitly ruled that its scope determination would not apply to this particular AD review.  Commerce Letter (February 24, 2020), Appx4414-4415.  Commerce's ruled in response to Petitioner's request to combine the scope proceeding with the AD review.  Letter on Request for Scope of Inquiry (December 18, 2019), Appx2270-2274.  Had Commerce agreed with Petitioner's request, there might well have been some expectation for Saha Thai to provide sales of dual-certified line pipe at issue in the scope review.  But Commerce explicitly rejected Petitioner's request.  Commerce Letter (February 24, 2020), Appx4414-4415.  Commerce did so because, under Commerce's own regulations, a change in a scope has a defined start at the date of initiation of the scope proceeding.  *See* 19 C.F.R. §351.225(l).  And so,

under the governing regulation, those import entries of the merchandise at issue in the scope ruling made prior to the scope proceeding initiation date are not subject to AD duties.

**Critical fact #5**:      Commerce never asked for a complete listing of  U.S. sales transactions of <u>non-subject merchandise</u>; that is, line pipe and dual-stenciled line pipe. Commerce's overall factual narrative implies that Saha Thai knowingly withheld information that Commerce had requested.  But this narrative conveniently overlooks the fact that Commerce never requested U.S. sales transactions for non-subject dual-stenciled pipe.  Commerce did not make this request in the original questionnaire, even though the questionnaire issued on October 21, 2019 came almost three months after Commerce had initiated its scope review for the order on July 29, 2019.  Instead of adapting its questionnaire, Commerce issued its standard questionnaire.  Commerce did not make this request in the first supplemental questionnaire, even though this questionnaire came more than months after Saha Thai had made clear on November 26, 2019 that it had not included non-subject merchandise in its U.S. sales listing. First Supplemental Questionnaire (March 6, 2020), Appx 4465–4467.  Commerce did not make this request for specific sales transactions even in the second supplemental, which specifically focused on the alleged circumvention of the order but did not ask for a U.S. sales listing of these transactions. Second Supplemental Questionnaire (March 23, 2020), Appx4579–4583. That by the end of the proceeding Commerce might have wished it had asked for this specific information cannot change the fact that Commerce never actually asked for this information.

**<u>Critical fact #6</u>**:     Commerce rendered its preliminary results for the AD review using the U.S. sales database that Saha Thai had submitted -- a U.S. sales database of just subject merchandise.  Preliminary Decision Memorandum (March 27, 2020), Appx4602-4616. Such fact demonstrates that, as of that time, Commerce believed it had all "necessary" U.S. sales data to calculate Saha Thai's AD margin.  If Commerce did not believe it had the necessary sales data, it would not have calculated a margin for Saha Thai.  Such undisputed fact cannot be ignored.  Given Commerce's preliminary results, Commerce had an affirmative obligation to make an explicit request to Saha Thai for any additional U.S. sales data that Commerce believed had somehow become  "necessary" for the final results.  Commerce never did so.

**<u>Critical fact #7</u>**:     Saha Thai responded to all actual questions that Commerce posed.  Defendant now implies that Saha Thai should have been volunteering information, Def. Br. at 4, providing information about non-subject merchandise even though it had never been requested.  Defendant seems to believe that the mere pendency of the scope inquiry – which was a totally separate segment of the proceeding from the current AD review, as Commerce itself confirmed – eliminated the need for Commerce actually to pose specific questions in this review for the information Commerce needed in this review.  Questionnaires pose specific questions to delineate what information Commerce needs.  Respondents need not guess what Commerce might need.

**<u>Critical fact #8</u>**:     When Commerce actually asked questions, Saha Thai fully responded.  Defendant now suggests that Saha Thai was hiding information in its initial responses, and only later acknowledged the sale of non-subject merchandise.  Def. Br. at

5.  The reality is that Saha Thai clearly and explicitly explained in its initial response that it was reporting only U.S. sales of subject merchandise and was not reporting the non-subject merchandise subject to the then pending scope review.  Saha Thai Responses to Questionnaire Section A (November 26, 2019), at page 3, fn. 3, Appx1314.  Saha Thai was not silent.  Rather, Saha Thai specifically clarified what it was reporting and not reporting.  Commerce may not have read or focused on this language, but that failure by Commerce cannot justify acting as if the language is not even there.

In sum, what this evidentiary record demonstrates is an agency that explicitly clarified that U.S. sales of dual-certified line pipe were not needed for the AD review determination, and then suddenly changed its mind at the very end of proceeding.  But under the law, an agency cannot decide to punish respondents for failing to provide data that the agency never requested.

## II.   COMMERCE DID NOT COMPLY WITH THE STATUTORY REQUIREMENTS TO APPLY ADVERSE FACTS AVAILABLE

Commerce's review in this case sought to calculate a new AD rate for Saha Thai's import entries of the <u>subject merchandise</u> made during the specific review period (March 1, 2018 – February 28, 2019).  In applying adverse facts available, Commerce blatantly disregarded basic statutory requirements. Commerce, at the last minute and after the record had closed, decided the sales information for dual-stenciled pipe had somehow become "necessary" to the review, in contrast to its own previous finding that it was <u>not</u> necessary in this case.  Moreover, Commerce made this abrupt change even though Commerce had never specifically requested the sales information from Saha Thai or

provided Saha Thai any notice there was some deficiency that needed to be remedied. For these reasons, Commerce violated the statutory requirements and therefore unlawfully applied AFA.

### A.   The Sales Information for Dual-Stenciled Line Pipe Was Not "Necessary" Information

Defendant disagrees with Saha Thai's argument that the information on dual-stenciled pipe was not necessary in this particular review proceeding, Def. Br. at 12-18, but Commerce's contrary conclusion about what is necessary, is demonstrably wrong. First, the case law cited by Commerce largely involves (1) information about subject merchandise that (2) had been expressly requested.  Some cases fall into both categories; every case falls into one or the other category.  Second, the regulation cited by Commerce only demonstrates that Commerce may ask for the information but does not show that information is inherently necessary to the investigation. Commerce's efforts to deem this information "necessary" all fail and are not supported by precedent.

Defendant argues that some categories of information are so essential that a party's failure to supply such information justifies the application of adverse facts available, Def. Br. at 12,  but fails to demonstrate that the sales of non-subject merchandise fall into such a category.  Commerce cites cases for broad principles, but then ignores the important specific facts of those cases.  The case law referenced only pertains to situations in which the information not provided to Commerce involves subject merchandise, or cases in which Commerce specifically requested additional information that was not provided by the respondents.  All of the cases fall into one or

both of these categories and therefore fail to support Commerce's claim because they are not analogous to the situation here.

Commerce first references, *Mukand, Ltd. v. United States*, 767 F.3d 1300 (Fed. Cir. 2014), a case in which it was clear the information sought by Commerce involved subject merchandise. In *Mukand Ltd*, the respondent did not provide a breakdown of production costs for subject merchandise by product size after Commerce requested the specific breaks downs more than four times. *Mukand, Ltd. v. United States*, 767 F.3d at 1302. Here, dual-certified line pipe was not considered subject merchandise during the review and Commerce never requested that information on sales of dual-certified line pipe.

Similarly, the Defendant cites other cases, which again do not apply to the facts of this case because they all involve a respondent failing to provide accurate information regarding subject merchandise after specific requests. *See Hyundai Heavy Indus.*, 399 F. Supp. 3d 1305, 1313 (Ct. Int'l Trade 2019) aff'd, 819 F. App'x 937 (Fed. Cir. 2020) ( "despite a specific and comprehensive request" from Commerce, respondent failed to provide supporting documentation for the data reported regarding subject merchandise), *Washington Int'l Ins. Co. v. United States*, 33 CIT 1023, 1026-27(2009) (whether specific product bags were correctly labeled and invoiced as subject merchandise upon entry to the United States and a finding that the record lacked supporting documentation), *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321,1333 (Ct. Int'l Trade 2020) (Commerce resorted to AFA because the information regarding subject merchandise was not supported by company records and could not be verified). The above referenced

cases involved information deemed necessary as it pertained to subject merchandise and was specifically requested by Commerce, neither of which occurred here.

The case cited by Commerce that most closely resembles the situation before the Court, *Shandong Huarong Mach. Co. v. United States*, 30 CIT 1269, 435 F.Supp.2d 1261 (Ct. Int'l Trade 2006), still fails to support an application of AFA in this case. *Shandong* stands for the proposition that a respondent may not refuse to provide information actually requested by Commerce on the basis of a pending scope inquiry, but that is not what arose in this review. *Id.* at 1280-81. Saha Thai responded in full to all of Commerce's inquiries including providing detailed information regarding its sales of out-of-scope merchandise that was then subject to the inquiry. Saha Thai did not provide a full database for these U.S. sales because Commerce never asked for one. Therefore, *Shandong* does not support Commerce's argument. Commerce's argument about inherently "necessary" information fails because the cited case law does not apply to information about non-subject merchandise that was never expressly requested.

Defendant also cites Commerce's regulation, Def. Br. at 14-15, but this regulation does not excuse its behavior here. Commerce stresses that it has the authority to request information regarding the sales of dual-certified pipe, even if there is an ongoing scope inquiry. This argument, however, ignores the key language in the regulation that Commerce "may request information" about the merchandise subject to the scope proceeding. 19 C.F.R. §351.225(l)(4). Under the regulation, there must be a specific request. Here, there was no request for that information and therefore Saha Thai did not fail to comply. At no point did Commerce make a specific request for the detailed sales

information of dual-certified line pipe.  Therefore, Saha Thai could not have failed to respond to a request that was never received.

Finally, Defendant dismisses all four of Saha Thai's specific arguments why the information was not necessary in this review, Def. Br. at 14-18, but in making these specific arguments misses the more fundamental point Commerce itself had decided that its scope determination would not apply to this particular AD review and that the sales transactions for dual-certified line pipe were not relevant for the review proceeding.  That finding about relevance is largely why Commerce rejected Petitioner's request to merge the scope review and the normal administrative review.  For Commerce to now go back and make technical arguments why the information could have been relevant is *post hoc* and not what Commerce said at the time it rejected the request to merge the proceedings. Moreover, even if the information could be relevant, that does not relieve Commerce of the obligation actually to ask for the specific information it needs.

Saha Thai's claim is not that Commerce lacked any authority to request the out-of-scope sales data.  Rather, Saha Thai's argument is that since Commerce itself made the decision not to request the specific U.S. sales lists for dual-certified line pipe, Commerce could not change its mind at the eleventh hour, after the record had closed, and apply AFA on basis of so-called "necessary" information that had never been requested.

### B.   Saha Thai Cooperated and Fully Responded To All Requests For Information

Defendant argues that Saha Thai did not cooperate to the best of its ability in responding to the antidumping questionnaire because the sales database did not include

merchandise that was then the subject of a scope inquiry.  Def's Br. at 18-19.  Defendant acknowledges that "whether 'subject merchandise' included dual-stenciled pipe was a disputed issue that was being resolved as part of the scope inquiry," but still insists that "it was reasonable for Commerce to expect that, Saha Thai would at least acknowledge the existence of its U.S. sales of dual-stenciled pipe." Def. Br. at 19.  Defendant's argument, however, is inconsistent with the record and imposes a burden of foresight on Saha Thai that is not contemplated by the law.

It is true that respondents must exert "the maximum effort possible" in ensuring those responses are complete in order to avoid triggering Commerce's authority to apply adverse inferences in filling gaps in the record.  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  But the Federal Circuit has found that a failure to comply with the maximum effort standard only in situations where respondents withhold information that has been specifically requested.  *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (finding AFA reasonable because despite specific requests for documents regarding government benefits "Essar withheld these documents and provided contradictory information to Commerce."); *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) ("Borusan effectively concedes that it possessed information necessary to Commerce's investigation, that Commerce requested that information, and that Borusan did not provide that information."). The Federal Circuit has also found a failure to comply with the maximum effort standard in situations where a respondent fails to adequately explain or support a response.  *NSK Ltd. v. United States*, 481 F.3d 1355, 1361 (Fed. Cir. 2007) (explanation that "NTN failed to change its

allocation method or expand on why allocation by sales value was not distortive, even after a second request from Commerce" was sufficient); *Hyundai Elec. & Energy Sys. Co. v. United States*, 2021 U.S. App. LEXIS 29810 at *27 (Fed. Cir. October 4, 2021) (finding  effort to comply fell below the standard because "in response to Commerce's second supplemental questionnaire, it only provided the requested level of detail for one out of six cost categories of product-specific cost information.").  In each case it was clear what Commerce was asking for and it was clear that the respondents either failed to produce documents that were in their position or failed to respond to multiple requests for explanation.

These cases, however, also demonstrate that Commerce too is under an obligation to notify parties of any deficiencies in their responses to give the party an opportunity to correct the issue and submit the information that Commerce wants.  Specifically, 19 U.S.C. §1677m(d) states that when Commerce identifies a gap in a response it "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. §1677m(d).  This limitation on Commerce's AFA authority reflects the purpose of the authority -- to "provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see also Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307 (Fed. Cir. 2014) ("the purpose of the adverse inference provision is to encourage future cooperation and ensure

that a respondent does not obtain a more favorable antidumping rate by failing to cooperate.").

The Court has recognized that the statute does not require respondents to be "mind-readers." *Sigma Corp. v. United States*, 17 CIT 1288, 1303, 841 F. Supp. 1255, 1267 (1993).  Similarly, Commerce's AFA authority is not a license to employ a "predatory 'gotcha' policy," which "does not promote cooperation or accuracy or reasonable disclosure by cooperating parties intended to result in realistic dumping determinations." *Bowe-Passat v. United States*, 17 CIT 335, 343 (1993). The determination at issue here is of this latter category of decisions and is inconsistent with Commerce's AFA authority, specifically Commerce failed to observe its obligation under 19 U.S.C. §1677m(d).

As discussed above, the core issue here is a mischaracterization of the progression of this review and the scope inquiry.  Fundamentally, Commerce had not made a determination as to whether the merchandise subject to the scope inquiry was in-scope prior to Saha Thai's reporting of its sales database.  The initial questionnaire was issued on October 21, 2019.  Initial Questionnaire, Appx1136.  Commerce's Preliminary Scope Ruling was issued on February 24, 2020.  *Saha Thai Steel Pipe Pub. Co. v. United States*, 2021 Ct. Intl. Trade LEXIS 138 at *17 (Ct. Int'l Trade October 6, 2021).  Commerce issued a supplemental questionnaire on March 6, 2020 which asked certain questions about Saha Thai's hot rolled coil purchases but made no mention of the scope issue.  First Supp. Questionnaire at 1, Appx4465.  On March 23, 2020 Commerce issued its second supplemental questionnaire which included certain questions about sales of line pipe but

made no specific request for a new sales database.  Second Supp. Questionnaire,

Appx4579.  Commerce issued the Preliminary Results in this review on March 30, 2020

before receiving Saha Thai's response to the second supplemental questionnaire.  It was

not until the Final Results that Commerce indicated it required a U.S. sales database that

included the challenged merchandise for its calculations.

Indeed, rather than ask for this information, all of Commerce's indications were

that the scope proceeding was parallel and unrelated to this review proceeding.

Commerce expressly declined Petitioner's request to merge the two proceedings.

Rejection of Request to Conjoin at 1, Appx4414 ("any finding that we make regarding

whether line pipe or dual-stenciled standard and line pipe is covered by the scope of the

order would not be effective during the period of review.").  And the preliminary results

announced a margin for this review without any reference to the pending scope

proceeding or any potential issues with Saha Thai's sales reporting.  Preliminary

Decision Memorandum, Appx4602-4616.

Defendant argues that Saha Thai was not sufficiently clear about the universe for

merchandise Saha Thai was including in its sales database.  Def. Br. at 20. The initial

questionnaire requested "sales of <u>subject merchandise</u> in or to the United States."  Initial

Questionnaire at C-1, Appx1200 (emphasis added).  As the scope inquiry had not reached

any conclusions when Saha Thai compiled the database, it was reasonable for Saha Thai

to report its sales of subject merchandise as it had done in numerous prior reviews.  And

as Saha Thai believed – and this Court has found – dual use line pipe was not subject

merchandise within the scope.

Defendant cites a footnote that was included in Saha Thai's Section A response, but misreads that footnote. Defendant asserts that the footnote was not sufficiently clear to put Commerce on notice that Saha Thai was omitting the merchandise that was then the subject of the scope inquiry from its sales database. Def. Br. at 20. That interpretation of the footnote, however, cannot be sustained. The footnote specifically stated Saha Thai was not reporting line pipe, and specifically cited the pending scope inquiry alleging that some line pipe should be considered subject merchandise. That the footnote did not use the specific phase "dual use" does not make the footnote read as a whole any less clear. And even if there was some uncertainty, the footnote certainly put Commerce on notice to clarify any doubts it might have for the reported merchandise in the sales database. The fact that Commerce never asked any follow up questions about this point strongly confirms that the statement was clear and did not require any clarification.

Defendant's suggestion now that there was some other possible conclusion about what group of merchandise Saha Thai was referring to, Def. Br. at 20 (*citing Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)), is *post hoc* rationalization. Nowhere in Commerce's decision memorandum does it express confusion over the meaning of the footnote or reference the footnote at all. In fact, Commerce's AFA memo shows its findings were premised on the absence of the merchandise that was subject to the scope inquiry. AFA Memorandum at 3 ("As Commerce states in its Final Pipe Scope Memorandum, products which are dual-stenciled as standard pipe and line pipe are within the scope of this *Order*." (italics in original)), Appx10797. The challenged

- 17 -

footnote references the same proceeding demonstrating that Saha Thai's reporting, and

Commerce's understanding of the footnote, were clear.

### C.   Commerce Never Notified Saha Thai Of Deficiencies Or Any Need To Submit Transaction Sales Data on Dual-Stenciled Pipe

Commerce's approach to the issues raised by the scope inquiry and subsequent

application of AFA failed to comply with the statutory notice requirements in 19 U.S.C.

§1677m(d).  Defendant and Defendant-Intervenors rely primarily on exhaustion to excuse

Commerce's failure to observe 19 U.S.C. §1677m(d). Def. Br. at 21-22, Def.-Int. Br. at

19-21.  Defendant argues that Commerce was not aware of Saha Thai's position that

Commerce had failed to argue that the application of AFA would violate 19 U.S.C.

§1677m(d). Def. Br. at 22.  This position is legally and factually wrong.  In addition,

Defendant's position relies on the flawed premised that Commerce actually requested

that Saha Thai report sales of dual-stenciled pipe.  This argument is without basis in the

record and must also fail.

### 1.   The argument is properly before the Court

Defendant's exhaustion argument ignores entirely the progression of events.  In

the Preliminary Results, Commerce accepted Saha Thai's reporting and calculated an

antidumping duty of zero.  Therefore, by definition, there was no Commerce finding in

the preliminary results that Saha Thai could have raised or addressed in its opening brief

before the agency.

In the course of briefing, Petitioner argued that Commerce should apply AFA to

Saha Thai relying heavily on certain factual information submitted after the Preliminary

Results were issued and arguing that alleged circumvention made the sales listing incomplete.  Wheatland Admin. Case Br. at 2, Appx10689 ("{b}y participating in this evasion scheme, Saha Thai impeded Commerce's review in numerous ways. Because a large volume of pipe was not originally reported as a Type 03 . . . Saha Thai's U.S. sales database is woefully incomplete.").  Once Petitioner raised this argument, Saha Thai rebutted the argument stating in the first subheading in its argument section that "PETITIONER'S REQUEST FOR AFA HAS NO BASIS IN THIS RECORD."  Saha Thai Rebuttal Brief at 1, Appx10738.  Saha Thai addressed the only argument it could at the time – that presented by Petitioners.  It was not until after briefing concluded – not until the Commerce's Final Results – that Saha Thai became aware of the application of AFA and the specific basis that Commerce asserted for applying AFA.  Commerce claimed that its initial questionnaire should have placed Saha Thai on notice that its sales of dual-stenciled line pipe needed to be included, but as discussed above, its statements about conjoining the scope proceeding with the review suggested just the opposite.  Final Results at 5, Appx10799.  Other than addressing Petitioner's argument, Saha Thai cannot be required to specifically brief an AFA conclusion that Commerce had not yet made.

Defendant observes that "interested parties must raise arguments relevant to Commerce's final determination in their administrative case briefs," Def. Br. at 21,  as enunciated in statute, regulation, and various court cases.  Defendant fails, however, to cite a single case that suggests that a party has failed to exhaust by not addressing a new issue not raised by the agency until after the briefing in its final decision.  The facts above show that Saha Thai did not fail to exhaust its administrative remedies. *Godaco Seafood*

*Joint Stock Co. v. United States*, 435 F. Supp. 3d 1342, 1360 (Ct. Int'l Trade 2020) (finding that no failure to exhaust where "Commerce neglected to address South Vina in the separate rate analysis until the Final IDM."); *see also Zhejiang Mach. Imp. & Exp. Corp. v. United States*, 471 F. Supp.3d 1313, 1342 (Ct. Int'l Trade 2020) (finding that argumentation sufficient to "avail{} Commerce of the opportunity to address the argument" satisfied exhaustion.");  The facts show that Commerce failed to comply with 19 U.S.C. §1677m(d).

 In support of its position, Defendant cites *Boomerang Tube LLC v. United States*. Def. Br. at 21-22.  *Boomerang*, however, considered a situation where parties were arguing about whether data placed on the record in response to a questionnaire prior to the preliminary determination should be used.  *Boomerang Tube LLC v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017).  There was a specific question and a specific response.  In this case, the information at issue was not on the record because Commerce never requested it and thus Saha Thai could not be on notice that Commerce might require it.

 In support of its argument about exhaustion Defendant-Intervenor cites *United States v. L.A. Tucker Truck Lines*,  Def.-Int. Br. at 21, but misses the key point of that case.  The Supreme Court stated generally that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."  *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952).  No one disagrees with this basic proposition.  This case makes clear, however, that exhaustion

focuses on what the agency actually does.  Here, the agency's action did not become clear until after the time for briefing had passed.  There was no indication in the Preliminary Results that Commerce had concerns over the completeness of Saha Thai's reporting and Commerce did not note any deficiencies with subsequent questionnaire responses.  Further, Saha Thai affirmatively rebutted petitioners' arguments regarding AFA in its case brief, preserving the issue the appeal.  As noted above, the AFA provisions do not require respondents to be "mind-readers."  Despite Defendant and Defendant-Intervenors arguments, Commerce's failure to comply with 19 U.S.C. §1677m(d) is properly before this court.

### 2.    Commerce did not request sales data on dual-stenciled line pipe

Defendant also argues that Commerce's March 23, 2020 supplemental questionnaire was sufficient to comply with the notification requirement in 19 U.S.C. §1677m(d).  Def. Br. at 24.  Defendant argues that "issuing a supplemental questionnaire is one way to satisfy the notice requirement."  Def. Br. at 23 (citing *Deacero S.A.P.I. De C.V. v. United States*, 996 F.3d 1283, 1298 (Fed. Cir. 2021)).  The facts of *Deacero*, however, show that the respondent failed to substantiate changes to its cost database after multiple requests for specific information about that specific issue.  *Deacero*, 996 F.3d at 1291-92.  Here, Defendant fails to point to a specific request for a completely revised

U.S. sales database (to include U.S. sales of dual-certified line pipe) and a closer review of the referenced supplemental questionnaire reveals that none was made.

The questionnaire asks, in pertinent part, for "a schedule that lists the sales of all merchandise (subject and non-subject) during the POR" to a specific customer.  Second Supplemental Questionnaire at 1, Appx4581.  In addition, Commerce requested "Saha Thai's three largest sales (by value) of merchandise to {that customer} during the POR." *Id*., Appx4581.  Commerce also requested this information for another specific customer. *Id.* at 2, Appx4582.  These requests for information reveal only a request for a "schedule" and sales traces for just three sales.  Expecting Saha Thai to infer that the appropriate way to comply this request was to provide a comprehensive amendment to its previously submitted sales database is nonsensical and unreasonable.

Saha Thai responded to the questionnaire on April 20, 2020.  Second Supplemental Questionnaire Response, Appx6970-7083. Saha Thai provided the requested schedules for these two specific customers stating that "{t}his information includes the date of sale, description of merchandise, indication of dual stenciling or line pipe sales, ultimate destination of merchandise, and invoice number."  Second Supplemental Questionnaire Response at 2, 6, Appx6977, 6981.  The only gap in the reporting was that Saha Thai could not provide the mill test certificate <u>number</u> in the schedule. *Id.*, Appx6977, 6981.  Commerce did not ask any additional questions even though the Final Results were not issued for six months after the questionnaire response was submitted.  Notice of Final Results, Appx10804 (with a date of January 27, 2021).

As a result there is no basis for Commerce to conclude that Saha Thai was less than fully cooperative with Commerce's requests for information. If Commerce wanted a sales database that included dual-stenciled pipe it was under a statutory obligation to ask for that specific information. Saha Thai made clear early in the proceeding its view that questionnaire requests for subject merchandise (standard pipe) did not require reporting of non-subject line pipe. Commerce never requested the specific sales transactions for that line pipe. Even when the issue arose later in the proceeding, Commerce asked for only general information, and not for a complete U.S. sales data base for those transactions. For these reasons, Commerce's finding that Saha Thai failed to cooperate by not providing a sales database that included out-of-scope merchandise is unsupported by substantial evidence.

We also note the new posture of this particular argument. It would be absurd to apply AFA to Saha Thai for failing to report sales of merchandise that this Court has already found to be outside of the scope of the order under review. *See Saha Thai Steel Pipe Pub. Co. v. United States*, 2021 Ct. Intl. Trade LEXIS 138 (Ct. Int'l Trade October 6, 2021). This was Saha Thai's position during the underlying proceeding at issue. This is the point that Saha Thai made early in the underlying proceeding, when it explicitly said it was not reporting non-subject line pipe, even though there was a pending scope inquiry on that merchandise. As it turns out, Saha Thai was correct on this key point. But in any event, since Saha Thai was quite transparent in what it was reporting, Commerce had no legal basis to punish Saha Thai for answering only those questions specifically posed.

- 23 -

**D.      Commerce Improperly Rejected the Saha Thai U.S. Sales**

As done in numerous prior AD reviews without any issues, Saha Thai provided

Commerce with complete U.S. sales databases, home market U.S. sales databases, and

complete costs of production.  As it had always done before, Saha Thai provided

information for the subject merchandise at issue in the proceedings. Defendant now

assumes the database was incomplete because Saha Thai did not include information that

was neither requested nor ever required in the past, Def. Br. at 24,  but this argument

ignores the reality of the record here.  As we show at length in Section III.B. and III.C.,

Saha Thai provided everything that Commerce had actually requested.  Moreover, this

argument ignores the fact that the Court has already found that Commerce's effort to

include dual-stenciled pipe improperly expanded the scope of the proceeding.

Building on false premises, Defendant asserts that Saha Thai did not fulfill two of

the 19 U.S.C. §1677m(e) criteria by failing to submit information by an established

deadline and by providing incomplete information. Def. Br. at 25.  Both of these

arguments are wrong.  Saha Thai submitted timely, complete, and certified responses to

each section of the initial questionnaire as well as the supplemental questionnaires.  *See*

Opening Br. at 11.  Saha Thai did not miss any deadlines and did not provide any

incomplete answers to the actual questions posed.

Saha Thai is not a mind-reader and cannot be expected to supply information that

was never requested.  That is precisely why the statute requires Commerce to provide

notice of any deficiencies and an opportunity for the respondent to remedy those

deficiencies. 19 U.S.C. §1677m(d).  Commerce does not have discretion to change its

mind at the end of the proceeding, after the record has closed, and then fault respondents

for not providing information never requested.   This basic principle has been confirmed

by the Federal Circuit:

> Before resorting to facts otherwise available, Commerce must notify the respondent of the nature of the deficiency and, to the extent practicable, provide an opportunity for the respondent to remedy or explain the deficiency. 19 U.S.C. § 1677m(d). If the respondent's explanation is unsatisfactory or untimely, Commerce may "disregard all or part of the original and subsequent responses." Id. <u>Commerce may not, however, refuse to consider necessary information that satisfies the five criteria outlined in section 1677m(e).</u>

*Mukand, Ltd. v. United States*, 767 F.3d 1300, 1304 (Fed. Cir. 2014) (emphasis added).

As demonstrated above in Section III.C., Commerce never requested or notified Saha

Thai of a deficiency in its submissions and therefore as shown by the administrative

record, Saha Thai did not violate the criteria of 19 U.S.C. § 1677m(e), when providing

complete and timely responses, regarding subject merchandise, to the initial and

supplemental questionnaires.

Moreover, the Court held on October 6, 2021 that "Commerce's determination

that dual-stenciled pipe is covered by the Thailand Order is not supported by substantial

evidence" and further stated that "Commerce's Final Scope Ruling constitutes an

unlawful expansion of the scope of the underlying order." *Saha Thai Steel Pipe Pub. Co.

v. United States*, No. 1:20-cv-133, 2021 Ct. Intl. Trade LEXIS 138 at *2 (Ct. Int'l Trade

Oct. 6, 2021).  So not only has Commerce explicitly stated in its Letter dated February

24, 2020, Appx4421–4422, that it would not combine this AD review with the ongoing

scope inquiry, but this Court has also issued a decision.  Commerce unlawfully rejected

the complete database of U.S. sales that Saha Thai provided in response to the

questionnaires and that fully satisfied the five criteria outlined in 19 U.S.C. §1677m(e).

## III.   COMMERCE'S RELIANCE ON THE EAPA REPORT WAS UNREASONABLE AND UNLAWFUL

In contrast to Commerce's characterization of the argument, Def. Br. at 26, Saha

Thai does not contest Commerce's ability to open the record to new factual information

under appropriate circumstances.  Rather, Saha Thai contends that Commerce's reliance

on the EAPA report provided by Wheatland Tube and subsequently applying AFA was

unreasonable and therefore unlawful.  The EAPA report did not materially change the

evidence before Commerce on the key issues.

Prior to the new factual information being submitted, Commerce had already

stated that the issue of scope relating to dual-certified line pipe would not affect the

review, making the EAPA report irrelevant.  Commerce Letter dated February 24, 2020,

Appx4421–4422.  The new factual information -- the EAPA report -- demonstrates

nothing as to the accuracy of Saha Thai's sales and cost data submitted in response to the

questionnaires.  And the EAPA report says nothing about the timing of sales transactions

that would or would not fall within the scope of the review.

Defendant-Intervenor also cites the EAPA report, Def. Int. Br. at 25-26, but relies

on the report for conclusions the report never reaches.  In effect the EAPA report

provides no additional insight into Saha Thai's practices as it relies entirely on

Commerce's own conclusion the report then repeats. Moreover, the EAPA report is at

most an initiation to an investigation of a U.S. importer that is not affiliated with Saha

Thai and therefore does not provide a final determination of misconduct for either the U.S. importer or any unaffiliated company such as Saha Thai.  Therefore, it is unreasonable for Commerce to rely on such information in making the decision to apply AFA to Saha Thai in the AD review.

## CONCLUSION

For all of the foregoing reasons, Saha Thai respectfully requests this Court hold unlawful Commerce's decision to apply total AFA in its Final Results.  We ask the Court to remand this matter to the agency and to direct the agency to recalculate a dumping margin consistent with the record evidence about Saha Thai's actual dumping margin.


Respectfully submitted,

/s/  Daniel L. Porter

Daniel L. Porter
James P. Durling
James C. Beaty
Ana Amador

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC, 20006

*Counsel for Plaintiff Saha Thai Steel Pipe Public Company Limited*

October 25, 2021

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13-point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 6974 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter
Daniel L. Porter

**Curtis, Mallet-Prevost, Colt & Mosle, LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006

*Counsel for Plaintiff Saha Thai*

October 25, 2021