IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> WHEATLAND TUBE COMPANY, <br><br> Defendant-Intervenor. | Court No. 21-00049 |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MINUTE ORDER ISSUED JANUARY 11, 2022**

Of Counsel

JONZACHARY FORBES
U.S. Department of Commerce
Office of Chief Counsel for Trade Enforcement and Compliance
1401 Constitution Avenue, NW.
Washington, DC 20230-0001
Telephone: (240) 449-5906
Facsimile: (202) 482-8184
Email: JonZachary.Forbes@trade.gov

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

IN K. CHO
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile:  (202) 305-7644
Email:    In.K.Cho@usdoj.gov
*Attorneys for Defendant*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   Court No. 21-00049 |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| WHEATLAND TUBE COMPANY, | ) ) ) |
| Defendant-Intervenor. | ) ) |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MINUTE ORDER ISSUED JANUARY 11, 2022**

On January 11, 2022, the Court conducted oral argument on the motion for judgment on the agency record filed by plaintiff Saha Thai Steel Pipe Public Company Limited (Saha Thai). In a minute order issued on the same day, this Court directed the United States to file a supplemental brief that addresses two additional issues:

> Following Oral Argument, it is ORDERED that: Within 30 days after the publication of the Supreme Court's decision in *National Federation of Independent Business v. Department of Labor*, No. 21A244, Defendant shall file a supplemental brief to the Court addressing (1) the application of the Supreme Court's interpretation of the word "necessary," if any, to 19 U.S.C. § 1677e(a)(1) and/or to this case; and (2) what remains on the record to support Commerce's determination given the Court's October 6, 2021 order (Slip Op. 21-135) in the related case, No. 20-133, in which the Court found that the scope of the relevant order did not include dual-stenciled line pipe.

Minute Order, Jan. 11, 2022, ECF No. 43. Two days later, on January 13, 2022, the Supreme Court published its decision in *National Federation of Independent Business v. Department of Labor*. *See* 142 S. Ct. 661 (2022). For the reasons discussed below, the *National Federation of Independent Business* decision does not apply here, and this Court should sustain Commerce's final determination in all aspects despite this Court's decision to remand Commerce's scope ruling.

**I.     The Supreme Court's Decision In *National Federation of Independent Business v. Department of Labor* Has No Application To This Case**

In its order, the Court directed the United States to address "the application of the Supreme Court's interpretation of the word 'necessary,' if any, to 19 U.S.C. § 1677e(a)(1) and/or to this case." In *National Federation of Independent Business*, however, the Supreme Court ultimately did not interpret the word "necessary." *See generally id*. The Supreme Court's decision in that case, therefore, does not aid in the application of 19 U.S.C. § 1677e(a)(1). Nor does it have any other application here.

In *National Federation of Independent Business*, the Supreme Court considered whether the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, "plainly authorizes" the Secretary of Labor to issue a certain emergency temporary standard, COVID19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61,402 (Dep't of Labor Nov. 5, 2021), through the Occupational Safety and Health Administration (OSHA). *See* 142 S. Ct. at 665. The statute directs the Secretary to set "occupational safety and health standards," 29 U.S.C. § 655(b), and defined an "occupational safety and health standard" by using the phrase "reasonably necessary":

> The term "occupational safety and health standard" means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, *reasonably*

> *necessary* or appropriate to provide safe or healthful employment and places of employment.

29 U.S.C. § 652(8) (emphasis added).  The statute also allows the Secretary to issue emergency measures, provided that such measures are "necessary," without using the statutory text "reasonably":

> The Secretary shall provide, without regard to the requirements of chapter 5 of Title 5, for an emergency temporary standard to take immediate effect upon publication in the Federal Register if he determines (A) that employees are exposed to grave danger from exposure to substances or agents determined to be toxic or physically harmful or from new hazards, and (B) that such emergency standard is *necessary* to protect employees from such danger.

29 U.S.C. § 655(c)(1) (emphasis added).  Numerous businesses, trade groups, nonprofit organizations, and states challenged the validity of the OSHA emergency standard across the country in multitude of cases.  *See In re MCP NO. 165*, 21 F.4th 357, 368 (6th Cir. 2021) (summarizing procedural history and multidistrict litigation).  The Court of Appeals for the Fifth Circuit stayed the enforcement of the OSHA emergency standard, *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021), but after the judicial panel on multidistrict litigation designated the Court of Appeals for the Sixth Circuit for consolidation, the Sixth Circuit dissolved the stay.  *See In re MCP NO. 165*, 21 F.4th at 388.  The Supreme Court disagreed with the Sixth Circuit and granted emergency relief staying the enforcement of the OSHA emergency standard.  *See Nat'l Fed'n of Indep. Bus.*, 142 S. Ct. at 666-67.[1]

---

[1] After the Supreme Court's decision, OSHA withdrew its emergency standard.  *See* 87 Fed. Reg. 3,928 (withdrawing emergency standard effective Jan. 26, 2022).

3

In granting emergency relief, the Supreme Court reasoned that the Occupational Safety and Health Act of 1970 allows OSHA to issue standards pertaining to occupational safety, but that COVID-19 is not an "*occupational* hazard." *See id*. at 665 (emphasis in original).  Relevant here, the Supreme Court in *National Federation of Independent Business* did *not* interpret the term "necessary" or opine on the differences between "reasonably necessary" standards and "necessary" standards. *See id*.  Indeed, the Supreme Court noted that it expressed no opinion whether the emergency standard was "proper under the requirements for an emergency temporary standard." *Id*. at 666 n.1 ("The dissent says that we do 'not contest,' post, at 672-673, that the mandate was otherwise proper under the requirements for an emergency temporary standard see 29 U.S.C. § 655(c)(1).  To be clear, we express no view on issues not addressed in this opinion.").  Given that the Court ultimately did not interpret the word "necessary", even in dicta, and the Court's explicit statement that it expressed no opinion on 29 U.S.C. § 655(c)(1), where the statutory term "necessary" appears, its decision in *National Federation of Independent Business* does not help interpret the term "necessary" in this case.

## II.     This Court Should Sustain Commerce's Determination Despite The Court's Order Remanding Commerce's Scope Ruling

Commerce applied facts available with an adverse inference to Saha Thai based on a finding that Saha Thai had failed to cooperate to the best of its ability.  *See* IDM at 4-8, 11-15, Appx10781-85, Appx10788-92; 2018-2019 Antidumping Duty Administrative Review of Circular Welded Carbon Steel Pipes and Tubes from Thailand: Application of Adverse Facts Available (Dep't of Commerce Jan. 19, 2021) (AFA Memo.) at 1-9, Appx804703-711.  In particular, Commerce found that Saha Thai had failed to cooperate by not acting to the best of its ability in complying with a request for information under 19 U.S.C. § 1677e(b) by not reporting its sales of dual-stenciled pipe in U.S.  *See* IDM at 4-8, 11-15, Appx10781-85, Appx10788-92;

4

AFA Memo. at 1-9, Appx804703-711; *see also Canadian Solar, Inc. v. United States*, 918 F.3d 909, 920 (Fed. Cir. 2019) (holding that substantial evidence supported Commerce's finding that Chinese solar industry was shifting its supply chains to evade duties due to Commerce's prior use of substantial transformation test). The Court should uphold Commerce's determination that Saha Thai failed to cooperate to the best of its ability during the administrative review because it did not provide the sales data for dual-stenciled pipe despite its knowledge that such information was relevant given the ongoing scope inquiry.

Satisfying the best of its ability standard requires "maximum effort" from an interested party "to provide Commerce with full and complete answers to all inquiries." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003); *accord Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1295 (Fed. Cir. 2021). Among other situations, use of an adverse inference may be appropriate when an interested party fails to respond to a request for information, and when "it is reasonable for Commerce to expect that more forthcoming responses should have been made." *Deacero*, 996 F.3d at 1298 (quoting *Nippon Steel*, 337 F.3d at 1383); *see also Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1299 (Ct. Int'l Trade 2010) (reasoning that respondent "should have produced" information it deemed irrelevant in "the event that Commerce reached a different conclusion"); *Shandong Huarong Mach. Co. v. United States*, 435 F.Supp.2d 1261, 1272-73 (Ct. Int'l Trade 2006) ("Commerce was entitled to seek the requested information regardless of the status of the scope inquiries, and that Huarong and TMC were required to respond.").

The Court's analysis of this issue should be guided by *Fengchi Import & Export Co., Ltd. of Haicheng City v. United States*, where the Court rejected the argument that a respondent had no obligation to respond to Commerce's inquiry in light of a decision that overturned the

5

agency's scope ruling.  *See* 70 F. Supp. 3d 1255, 1257-58 (Ct. Int'l Trade 2015).  During the administrative review in that case, Commerce conducted a separate scope inquiry to determine whether magnesia alumina carbon bricks (MACBs) from China were subject to the antidumping order.  *Id*. at 1258.  Commerce issued the final results of its scope inquiry finding MACBs in-scope and then issued a supplemental questionnaire requesting that respondent Fengchi report its sales of MACBs.  *Id*.  But Fengchi did not report its sales of MACBs, and Commerce subsequently applied facts available with an adverse inference.  *Id*.  Analogous to this case, after briefing in *Fengchi* had been completed, the United States Court of Appeals for the Federal Circuit issued a decision that reversed Commerce's final scope ruling.  *Id*. at 1259-60; *see also Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014).  Plaintiffs in *Fengchi* then argued that a reversal of the MACB scope ruling resolved the issues in the litigation involving the application of facts available with an adverse inference in the administrative review because "there would be no lawful basis for Commerce to impose antidumping duties on {MACBs} under the {Orders}, and thus, no lawful basis for Commerce to have directed Fengchi to report sales of {MACBs} in the administrative review."  *See Fengchi*, 70 F. Supp. 3d at 1260.  This Court rejected that argument, reasoning that the *Fedmet* ruling concerned only the final scope ruling:

> The *Fedmet* litigation concerned the MACB Scope Ruling.  This case concerns Commerce's ability to request information on products subject to a scope ruling during an administrative review and its imposition of {AFA} after Fengchi declined to comply with that request.  Thus, the CAFC's decision in *Fedmet* does not resolve the legal issues raised in the instant case.

*Id*. (citation omitted).

Here, the Court should similarly consider whether it was reasonable at the time of Commerce's issuance of its final results of the administrative review to use facts available with

6

an adverse inference based on Saha Thai's failure to cooperate to the best of its ability by not reporting sales information of dual-stenciled pipe, which is distinct from the question whether dual-stenciled pipe is subject merchandise.

In *Fengchi*, Commerce specifically asked for Fengchi to report sales of MACBs in a supplemental questionnaire following the issuance of Commerce's scope ruling early in the administrative review, i.e., three months before publication of the preliminary results. *Id*. at 1258. In this case, the final scope ruling finding dual-stenciled pipe covered by the Order was issued on June 30, 2020, i.e., after the issuance of the preliminary results on April 2, 2020. *See* Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe (June 30, 2020); Circular Welded Carbon Steel Pipes and Tubes From Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019, 85 Fed. Reg. 18,552 (Dep't of Commerce Apr. 2, 2020). The issuance of the Final Scope Ruling was followed by Wheatland's September 18, 2020 submission of the U.S Customs and Border Patrol's final determination under the Enforce and Protect Act of 2015 finding that entries of dual-stenciled pipe were entered into the customs territory of the United States through evasion. Wheatland Letter, "New Factual Information" (Sept. 18, 2020) at Exhibit 1 (EAPA Report) at 1-8, Appx10583-90. The EAPA Report was brought to Commerce's attention months after Commerce's preliminary results issued on April 2, 2020. *See* EAPA Report*; Circular Welded Carbon Steel Pipes and Tubes From Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019*, 85 Fed. Reg. 18,552 (Dep't of Commerce Apr. 2, 2020). Commerce determined, based on the record evidence and Saha Thai's responses on the record, that Saha Thai had failed to cooperate by not acting to the best of its ability in responding to Commerce's request for sales of subject

merchandise fully and transparently when it did not report its sales of dual-stenciled pipe during the period of review.

The question of whether dual-stenciled pipe was covered by the term "subject merchandise" was a disputed issue that was being resolved as part of the then-ongoing scope inquiry, and it was "reasonable for Commerce to expect that more forthcoming responses should have been made," by Saha Thai in the administrative review. *See Deacero*, 996 F.3d at 1298. It was reasonable for Commerce to expect that Saha Thai's response should have included Saha Thai's complete U.S. sales database including the sales of dual-stenciled pipe, or at least acknowledgment of their existence. But Saha Thai decided on its own that the sales data for dual-stenciled pipe was irrelevant. *See Essar Steel*, 721 F. Supp. 2d at 1299.

After Commerce's determination, this Court, in October 2021, held that Commerce's determination that dual-stenciled pipe was not covered by the scope of the Thailand Order was unsupported by substantial evidence. However, at the time of Commerce's Final Results, the only valid determination was Commerce's scope ruling finding it to be in-scope merchandise. *See* 19 U.S.C. 1516a(c). As demonstrated above, the law requires that Saha Thai respond timely to Commerce's requests for information and not fail to respond or choose not to respond hoping that a court might eventually agree with its position. If this were the case, parties would be incentivized to withhold information without Commerce knowing that information is being withheld. The statute is constructed to incentivize parties' participation, not to incentivize ignoring Commerce's requests for information.

Saha Thai did not inform Commerce that it was omitting from its response its U.S. sales of dual-stenciled pipe. To the contrary, it informed Commerce that it was not reporting line pipe:

> Saha Thai has reported subject merchandise and foreign like product as standard pipe. During the POR, Saha Thai also sold API 5L pipes

8

> ("Line Pipe"). Based on the scope of this administrative review and
> the Department's practice, these products have not been reported as
> subject merchandise. Petitioner has claimed that Line Pipe is included
> within the scope of the Order on standard pipe from Thailand. The
> Department has initiated a scope inquiry to determine whether Line
> Pipe is subject merchandise. *See* Letter from the Department entitled,
> "Circular Welded Carbon Steel Pipes and Tubes from Thailand: Scope
> Inquiry on Line Pipe," dated July 29, 2019. However, as of the date of
> the filing of this response, the Department has not determined whether
> Line Pipe is included within the scope of this administrative review.
> Thus, Saha Thai has only reported standard pipe in its volume and
> value of subject merchandise and foreign like product.

Saha Thai Section A Questionnaire Response (Nov. 26, 2019) at 3 n.3, Appx800040; *see also Circular Welded Carbon Steel Pipes and Tubes from Thailand: Scope Inquiry on Line Pipe* (Dep't of Commerce July 29, 2019), Appx1115-16 (stating, "{t}he scope language provides that 'pipe and tube with an outside diameter of 0.375 inches or more but not over 16 inches' is subject to the Order," *without* referring to product in question as dual-stenciled pipe). This footnote mentions standard pipe and line pipe, but it does not mention dual-stenciled pipe, despite the fact that Commerce had self-initiated the scope inquiry before the submission of this questionnaire response on November 22, 2019. *See also* Final Scope Ruling on Line Pipe and Dual-Stenciled Standard and Line Pipe (Dep't of Commerce June 30, 2020) (Final Scope Ruling) at 2, Appx10600. There is no construction of this footnote that would indicate to Commerce that Saha Thai had sales of dual-stenciled pipe and omitted them from its U.S. sales database. Even were the Court to interpret this language (and the Court should not) as Saha Thai's oblique way of saying that it was excluding its U.S. sales of dual-stenciled pipe from its questionnaire response, Commerce should still prevail because the possibility of inconsistent conclusions from the record does not make Commerce's finding unsupported by substantial evidence. *See Consolo*, 383 U.S. at 620. Saha Thai should have reported its U.S. sales of dual-stenciled pipe in response to Commerce's questionnaire. By failing to do so, Saha Thai failed to cooperate by not

9

acting to the best of its ability in complying with a request for information by Commerce, and as such the application of facts available with an adverse inference is warranted. For these reasons and the reasons already established in the Government's prior brief, and at the hearing before this Court, this Court should sustain Commerce's determination.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Saha Thai's Rule 56.2 motion for judgment on the agency record and sustain the challenged determination in its entirety.

          Respectfully submitted,

          BRIAN M. BOYNTON
          Acting Assistant Attorney General

          PATRICIA M. MCCARTHY
          Director

          /s/ Franklin E. White, Jr.
          FRANKLIN E. WHITE, JR.
          Assistant Director

Of Counsel           /s/ In K. Cho
JONZACHARY FORBES           IN K. CHO
U.S. Department of Commerce           Trial Attorney
Office of Chief Counsel for Trade Enforcement and           Commercial Litigation Branch
Compliance           Civil Division
1401 Constitution Avenue, NW.           U.S. Department of Justice
Washington, DC 20230-0001           P.O. Box 480
Telephone: (240) 449-5906           Ben Franklin Station
Facsimile: (202) 482-8184           Washington, DC 20044
Email: JonZachary.Forbes@trade.gov           Telephone: (202) 616-0463
          Facsimile: (202) 305-7644
          Email: In.K.Cho@usdoj.gov

February 14, 2022           *Attorneys for Defendant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Standard Chambers Procedure 2(B)(2) of the U.S. Court of International Trade, I certify that this brief contains 3,132 words and complies with the word-count limit set forth in Standard Chambers Procedure 2(B)(1). To make this certification, I have relied on the word-count feature of Microsoft Word.

February 14, 2022

/s/ In. K. Cho
IN K. CHO
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0463
Facsimile: (202) 305-7644
Email: In.K.Cho@usdoj.gov