## UNITED STATES COURT OF INTERNATIONAL TRADE

SAHA THAI STEEL PIPE
PUBLIC COMPANY LIMITED,

        *Plaintiff,*

  v.

UNITED STATES,

        *Defendant,*

    and

WHEATLAND TUBE COMPANY,

        *Defendant-Intervenor.*

Hon. Gary S. Katzmann, Judge
Court No. 21-00049

PUBLIC VERSION

## DEFENDANT-INTERVENOR WHEATLAND TUBE COMPANY'S
## REPLY IN OPPOSITION TO THE REMAND REDETERMINATION

/s/ Luke A. Meisner
Roger B Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube
Company*

Dated: November 17, 2025

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY .................................................................. 1

II.   Background and Procedural History ................................................................ 3

    A. Saha Thai's Evasion ................................................................................. 3

    B. The Underlying Review and Scope Ruling ............................................... 5

    C. The Ensuing Court Challenges and Appeals ............................................ 7

    D. Commerce's Subsequent Remand Redetermination ................................ 8

    E. The Court's Decision in *Blue Pipe* .......................................................... 9

III.  This Court's Remand Order and Commerce's Final Remand Results Are Both Based on Erroneous Grounds ............................................................................................. 9

IV.   The Exhaustion Doctrine Does Not Apply to Defendant-Intervenor's Challenge to the Final Remand Results ............................................................................................ 12

    A. A Subsequent Judicial Decision Materially Affected the Issues in This Case ............. 13

    B. Challenging Commerce's Preliminary Remand Results Would Have Been Futile ....... 14

    C. Whether Commerce Was Obligated by § 1677m(d) to Give Saha Thai a Chance to Remedy Its Failure Is a Pure Question of Law ............................................................. 15

V.    CONCLUSION ........................................................................................... 16

PUBLIC VERSION

# TABLE OF AUTHORITIES

## CASES

*Bendure v. United States*, 554 F.2d 427, 213 Ct. Cl. 633 (1977) .................................................. 14

*Biafora v. United States*, 773 F.3d 1326 (Fed. Cir. 2014) ........................................................... 14

*Blue Pipe Steel Ctr. Co. v. United States*, No. 21-00081, 2025 WL 2731541 (Ct. Int'l Trade Sept. 25, 2025) ...................................................................................................................................... 2

*Consol. Bearings Co. v. United States*, 166 F. Supp. 2d 580 (Ct. Int'l Trade 2001)................... 15

*Cooper v. Marsh*, 807 F.2d 988 (Fed. Cir. 1986) ........................................................................ 14

*Gerber Food (Yunnan) Co. v. United States*, 33 CIT 186, 601 F. Supp. 2d 1370 (2009) ........... 12

*Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ..................... 12

*Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025)................................................... 13

*Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016) .............. 9, 10, 11

*Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986)................... 14

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024) ........ passim

*Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309, 221 L. Ed. 2d 396 (2025)........................................................................................................................................... 2

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) ..................................................................................................................................... passim

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 592 F. Supp. 3d 1299 (Ct. Int'l Trade 2022) ......................................................................................................................................... 2, 7

*Saha Thai Steel Pipe Public Co., Ltd., v. United States*, 605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ..................................................................................................................................... passim

*Toyo Kohan Co., Ltd. v. United States*, Slip Op. 25-141, Ct. No. 24-261 (Oct. 23, 2025) .......... 13

*Zhongce Rubber Group Co. Ltd. v. United States*, 352 F. Supp. 3d 1276 (Ct. Int'l Trade 2018) ............................................................................................................................................ 15

## STATUTES

19 U.S.C. § 1677m(d) ............................................................................................................. passim

28 U.S.C. § 2637(d) ................................................................................................. 12

**OTHER AUTHORITIES**

*Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes From Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986) .................................................... 3

*Circular Welded Carbon Steel Pipes and Tubes from Thailand*, 83 Fed. Reg. 51,927 (Dep't Commerce Oct. 15, 2018) (final results of antidumping duty admin. review; 2016-2017) ....... 3

*Circular Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019*, 86 Fed. Reg. 7259 (Dep't Commerce Jan. 27, 2021) .............................................................. 5

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743 (May 29, 2019)......................................................................................................... 4

**TREATISES**

Professor Davis in 3 K. Davis, Administrative Law Treatise § 20.07 (1958) .............................. 14

Defendant-Intervenor Wheatland Tube Company hereby submits its reply to the September 3, 2025 comments filed by Plaintiff Saha Thai Steel Pipe Public Company Limited ("Saha Thai") (ECF 82) and in opposition to the Final Results of Redetermination Pursuant to Court Remand (July 31, 2025) (ECF No. 80) ("*Remand Results*") issued by the U.S. Department of Commerce ("Commerce").

## I.     INTRODUCTION AND SUMMARY

This case involves Commerce's decision to apply adverse facts available ("AFA") to Saha Thai in the 2018-2019 administrative review of the antidumping duty ("AD") order on circular-welded pipe ("CWP") from Thailand (the "Order"). Commerce originally applied AFA because Saha Thai failed to report its U.S. sales of certain "dual-stenciled pipe" during the period of review ("POR"). Resolution of this case is intertwined with two other cases involving Saha Thai's sales of CWP to the United States. The first case involves a ruling by Commerce that pipe that is dual-stenciled to both standard pipe and line pipe specifications is covered by the AD order on CWP from Thailand. The second case involves a determination by Customs and Border Protection ("Customs") pursuant to the Enforce and Protect Act ("EAPA") that Saha Thai and another company, Blue Pipe, evaded the AD order on CWP from Thailand when they collaborated to ship dual-stenciled pipe to the United States, failed to declare that this pipe was subject to the AD order, and thus evaded payment of the AD duties owed on the imported pipe. Through the combined actions of Commerce and Customs, Saha Thai and Blue Pipe were initially held accountable for this brazen scam to defraud the government of AD duties that should have been paid on imports of CWP produced by Saha Thai.

After this initial agency action, this Court made several cascading errors in actions brought by Saha Thai that – if left uncorrected – will constitute a gross abortion of justice. First,

the Court held that dual-stenciled pipe is not covered by the scope of the AD order on CWP from Thailand. *See Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) ("*Saha Thai I*") (remanding to Commerce with instructions to find that dual-stenciled pipe is not covered by the scope of the order); *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 592 F. Supp. 3d 1299 (Ct. Int'l Trade 2022) ("*Saha Thai II*") (sustaining remand redetermination issued under protest that dual-stenciled pipe is not covered by the scope of the order). Second, based on its holding in *Saha Thai I*, the Court found in this case that Saha Thai's failure to disclose its sales of dual-stenciled pipe to the United States did not involve intentional conduct but instead involved a mere "misunderstanding of {Commerce's} instructions." *Saha Thai Steel Pipe Public Co., Ltd., v. United States*, 605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ("*Remand Order*"). Finally, because the Court found that Saha Thai did not intentionally hide its sales of dual-stenciled pipe, it remanded Commerce's decision to apply AFA to Saha Thai and instructed the agency to give Saha Thai another chance to report its sales of dual-stenciled pipe. *Id.*

The entire house of cards on which the *Remand Order* was built has now collapsed. First, after the Court issued its *Remand Order*, the Federal Circuit overturned *Saha Thai I* and upheld Commerce's original ruling that dual-stenciled pipe is covered by the scope of the order. *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1314 (Fed. Cir. 2024) ("*Saha Thai III*"), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. Ltd. v. Wheatland Tube Co.*, 145 S. Ct. 1309, 221 L. Ed. 2d 396 (2025). Second, after Commerce issued its *Remand Order*, this Court upheld Customs' finding that Blue Pipe and Saha Thai evaded the order through a scheme to ship dual-stenciled pipe instead of single-stenciled standard pipe. *Blue Pipe Steel Ctr. Co. v. United States*, No. 21-00081, 2025 WL 2731541, at *1 (Ct. Int'l Trade Sept. 25, 2025). Thus,

there is no foundation for the *Remand Order*'s finding that Saha Thai's failure to report its dual-stenciled pipe was a simple misunderstanding rather than intentional conduct. Accordingly, the Court should remand this proceeding for Commerce to reconsider its decision in light of the Federal Circuit's decision in *Saha Thai III* that dual-stenciled pipe is covered by the scope of the AD order and this Court's decision in *Blue Pipe* that Blue Pipe and Saha Thai evaded the AD order when they shipped dual-stenciled pipe to the United States to avoid declaring the pipe as covered by the order on CWP from Thailand.

## II.    Background and Procedural History

### A.  Saha Thai's Evasion

Commerce first issued the AD order on CWP from Thailand in 1986. *Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes From Thailand*, 51 Fed. Reg. 8341 (Dep't Commerce Mar. 11, 1986). In the ensuing decades, [



]. Saha Thai 2nd SQR (Apr. 20, 2020) at Exhibit 5, Appx804296-804298. This situation changed in October 2018, when Commerce published the final results of the 2016-2017 administrative review and assigned Saha Thai a dumping margin of 28.00 percent. *Circular Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 51,927 (Dep't Commerce Oct. 15, 2018). This dumping margin was substantially higher than the margins that Saha Thai had been receiving for several decades. *See* Saha Thai Br. (ECF 22) at 2. Indeed, Saha Thai had received dumping margins of 0.00% in five of the prior six reviews. *Id.*

In response to this increase in its dumping margin, Saha Thai stopped shipping single-stenciled standard pipe directly to the United States; instead, it sold dual-stenciled pipe to the

Thai company Blue Pipe, and Blue Pipe began shipping this dual-stenciled pipe to the United

States. *See* Domestic Interested Parties' Case Brief (Dec. 18, 2020) at 6-12, Appx10693-10699.

Over the course of just a few months, all of Saha Thai's shipments of single-stenciled pipe to the

United States were replaced by shipments of dual-stenciled pipe to the United States. *Id.*

Moreover, Blue Pipe's shipments of dual-stenciled pipe manufactured by Saha Thai were being

sold to Saha Thai's own customers in the United States. *Id.* at 11, Appx10698. None of these

entries of dual-stenciled pipe were declared as subject to the AD order on CWP from Thailand,

and thus no AD duties were paid on these entries. Wheatland Submission of NFI (Sept. 18, 2020)

at Exhibit 1, Appx10584. Moreover, there is simply no question whatsoever that Saha Thai was a

willing participant in the scheme, as the record shows that [

].[1] The bottom

line is that all the record evidence shows that Saha Thai shifted its course of business to ship

dual-stenciled pipe to its customers in the United States through Blue Pipe as part of an

intentional scheme to hide these shipments and evade payment of the higher AD duties.

---

[1]    Responses provided by Blue Pipe to Customs confirm that the only way that Blue Pipe could begin
selling dual-stenciled pipe to Saha Thai's U.S. customers was by acting in concert with Saha Thai to
evade payment of the AD duties. In particular, Blue Pipe informed Customs that it "is a small
trading company in Thailand" that "does not have a website" and "does not have marketing
materials or catalogs" and thus "uses its existing business relationships" to make new sales.
Wheatland RFI (June 26, 2020) at Exhibit 3, p. 2 and 18, Appx7967 and Appx7983. Yet despite
having no public presence whatsoever, and despite having never made any sales to the United States
before, Blue Pipe was suddenly able to start shipping dual-stenciled pipe to Saha Thai's customers in
2018. The only possible way for this to happen was through a concerted effort between Saha Thai
and Blue Pipe. Indeed, Blue Pipe reported that for its sales of dual-stenciled pipe to the United
States, "Blue Pipe worked with Saha Thai because Blue Pipe and Saha Thai have a long standing
relationship." *Id.* at p. 18, Appx7983. In addition, [

].
Saha Thai 2nd SQR (Apr. 20, 2020) at Exhibits 4 and 9, Appx804140-804295, Appx804354-
804355. [

]. *Id.* at Exhibit 4, Appx804181. Thus, there is
no question that Saha Thai was a knowing and willful participant in the evasion scheme.

### B. The Underlying Review and Scope Ruling

On May 29, 2019, Commerce initiated the 2018-2019 review of CWP from Thailand. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 24,743 (May 29, 2019). On November 22, 2019, Commerce initiated a scope inquiry to determine whether dual-stenciled standard pipe was subject to the Order on CWP from Thailand. *Circular Welded Carbon Steel Pipes and Tubes From Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019*, 86 Fed. Reg. 7259 (Dep't Commerce Jan. 27, 2021) and accompanying Issues and Decision Memorandum ("IDM") at 5, Appx10782. Saha Thai thus knew at that point that Commerce could consider any sales of dual-stenciled pipe to be covered by the scope of the Order and that it was thus obligated to report any sales of dual-stenciled pipe. *See id.* On December 18, 2019, Saha Thai submitted its response to Section C of Commerce's antidumping questionnaire, which purported to include all of Saha Thai's sales of subject merchandise to the United States during the relevant POR. *See* Saha Thai Sec. C Resp. (Dec. 18, 2019) at 2, Appx2060. However, Saha Thai failed to report any sales of dual-stenciled pipe in its response.

On January 9, 2020, Wheatland submitted factual information to Commerce that exposed Saha Thai's scheme for avoiding the payment of AD by shipping dual-stenciled pipe to its customers through Blue Pipe. *See* Wheatland RFI (Jan. 9, 2021), Appx2459. Wheatland requested that Commerce issue a supplemental questionnaire to Saha Thai that would confirm that Saha Thai had, in fact, engaged in this evasion scheme. *Id.* at 14-17, Appx2472-2475.

On February 24, 2020, Commerce issued a preliminary scope ruling that dual-stenciled pipe is covered by the Order, and it issued a final scope ruling to the same effect on June 30, 2020. Final Scope Ruling (June 30, 2020) at 1-2, Appx10599-10600. Thus, Saha Thai knew at

least as early as February 24, 2020, that its sales of dual-stenciled pipe were covered by the Order and must be reported to Commerce as sales of subject merchandise. *See id.*

On March 23, 2020, Commerce issued a supplemental questionnaire to Saha Thai requesting information that would confirm it had made undisclosed sales of dual-stenciled pipe during the POR. Commerce SQR (Mar. 23, 2020), Appx4579-4583. On April 20, 2020, Saha Thai submitted a response that completely validated Wheatland's allegations of evasion. In particular, Saha Thai's response showed that it had sold approximately [          ] worth of dual-stenciled pipe during the POR that it had not reported to Commerce in its U.S. sales database. Commerce AFA Memo (Jan. 19, 2021) at 4, Appx10798, Appx804706. These unreported sales accounted for approximately [     ] of its U.S. sales of subject merchandise during the POR. *Id.*

Meanwhile, Customs had been investigating whether Blue Pipe and Saha Thai had evaded the Order as defined under the EAPA statute. On September 11, 2020, Customs issued a final affirmative determination as to evasion of the Order with respect to the dual-stenciled pipe produced by Saha Thai and sold by Blue Pipe to Saha Thai's U.S. customers. *See* Wheatland Submission of Final EAPA Determination (Sept. 18, 2020) at 1 and Exhibit 1, Appx10574, Appx10583. As part of its determination, Customs issued findings that supported and corroborated the information that Wheatland had submitted to Commerce regarding Saha Thai's participation in an evasion scheme. *Id.* at Exhibit 1, pp. 7-8, Appx10589-10590. Wheatland submitted the Customs final determination for Commerce to include as part of the record of the review. *Id.*

On January 27, 2021, Commerce issued its final results in the underlying review. Commerce determined that, because Saha Thai had intentionally failed to report a substantial

portion of its U.S. sales during the POR, it would apply AFA to Saha Thai. Commerce AFA Memo (Jan. 19, 2021) at 1, Appx10795.

### C. The Ensuing Court Challenges and Appeals

Saha Thai challenged Commerce's ruling that dual-stenciled pipe is covered by the scope of the AD Order. *Saha Thai I,* 547 F. Supp. 3d at 1278. On October 6, 2021, this Court held that Commerce's determination that dual-stenciled pipe is covered by the AD Order was not supported by substantial evidence and constituted an unlawful expansion of the scope and then remanded ruling back to Commerce. *Id.* at 1299. Commerce then issued a remand redetermination concluding, under respectful protest, that dual-stenciled pipe is not covered by the scope of the AD Order. *Saha Thai II*, 592 F. Supp. 3d at 1301. On August 25, 2022, the Court sustained this remand redetermination. *Id.*

Not long thereafter, on December 2, 2022, the Court issued its *Remand Order* in this case. 605 F. Supp. 3d at 1348. The Court's *Remand Order* was predicated on its holding that dual-stenciled pipe is not covered by the scope of the AD Order. *See, e.g., id.* at 1353 ("Because many of the misunderstandings in this case are predicated on disagreements over the scope of the order, … a brief summary of the recent scope inquiry is necessary."). The Court found that Saha Thai did not report its sales of dual-stenciled pipe "because Saha Thai did not consider those products to be subject merchandise" and "Commerce had only requested sales of 'subject merchandise.'" *Id.* at 1355. The Court chalked the whole situation up to a "misunderstanding" and found that there was "no clear record evidence indicated deliberate product mislabeling by Saha Thai." *Id.* at 1358. As a result, the Court held that Commerce erred in applying AFA to Saha Thai based on "any allegations of intentional incompleteness." *Id.* at 1366. The Court also found that Commerce had never expressly requested that Saha Thai report its sale of dual-

stenciled pipe thus "failed to provide notice and an opportunity to remedy as § 1677m(d) requires." *Id.* at 1371.[2]

Meanwhile, Blue Pipe challenged Custom's determination of evasion under EAPA based on its failure to report the entries of dual-stenciled pipe as covered by the AD Order. The Court stayed this challenge pending the Court's final decision in *Saha Thai I* and subsequent appeals of that decision to the Federal Circuit. *See, e.g.,* Order in *Blue Pipe Steel Center Co., Ltd. v. U.S.*, CIT No. 21-81 (Mar. 19, 2025) (ECF 70) at 2-3. The Court explained that "{t}hese stays were necessary because Customs' evasion determination against Blue Pipe depends on {Commerce's} separate determination that dual-stenciled pipe was within the scope of the antidumping order." *Id.* at 2. The Court thus implicitly recognized that whether Blue Pipe and Saha Thai intentionally evaded the order hinged on whether dual-stenciled pipe is covered by the order.

On May 15, 2024, the Federal Circuit reversed this Court's decision in *Saha Thai I* and held that dual-stenciled pipe was within the scope of the AD Order. *Saha Thai III*, 101 F.4th at 1314. On March 3, 2025, the Supreme Court denied Saha Thai's petition for writ of certiorari. 145 S. Ct. 1309, 221 L. Ed. 2d 396.

### D.  Commerce's Remand Redetermination

On July 7, 2025, Commerce issued its draft remand redetermination in this case, reversing its finding that Saha Thai had failed to cooperate to the best of its ability, warranting the application of AFA. *Remand Results* at 1. The draft remand redetermination was premised on the Court's holding that "Commerce had failed to provide notice to Saha Thai of the deficiencies in the information submitted to Commerce and an opportunity to remedy such deficiency as

---

[2]    19 U.S.C. § 1677m(d) provides that if Commerce determines that a response to a request for information does not comply with the request, it "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency …."

required by law." *Id.* at 3. In the draft redetermination, after allowing Saha Thai to supplement the record to report its sales of dual-stenciled pipe, Commerce found that Saha Thai had cooperated to the best of its ability after being given a chance to correct the "deficiency" in its reporting. *Id.* at 4. On July 31, 2025, Commerce issued its final remand redetermination, making no changes to the draft. *Id.* at 12.

### E.  The Court's Subsequent Decision in *Blue Pipe*

On September 9, 2025, this Court issued an opinion affirming Customs' determination that Blue Pipe and Saha Thai had evaded the AD order. *Blue Pipe*, 2025 WL 2731541, at *1. Following the decision of the Federal Circuit in *Saha Thai III*, Blue Pipe had acknowledged to the Court that Customs' EAPA duty evasion determination should be affirmed and only quibbled with the timing of the effective date of Customs' EAPA determination. *Id.* at *3. The Court thus sustained Customs' determination of evasion. *Id.* at *6.

### III.  This Court's *Remand Order* and Commerce's *Final Remand Results* Are Both Based on Erroneous Grounds

Commerce's *Final Remand Results* must be remanded once again, because they are based on the Court's *Remand Order*, which itself was predicated on the Court's erroneous and overturned decision in *Saha Thai I*.

In the *Remand Order*, the Court rejected Commerce's "claims that Saha Thai's data was intentionally incomplete" and thus held that "Commerce violated § 1677m(d) when it did not provide notice and an opportunity to cure before applying an adverse inference to the facts available." *Remand Order*, 605 F. Supp. 3d at 1366. This holding was erroneous because the Court incorrectly distinguished the facts of this case from the Federal Circuit's decision in *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373 (Fed. Cir. 2016). In *Papierfabrik*, midway through the underlying review, Commerce discovered that the respondent had engaged

in a scheme to omit the reporting of certain German-market sales, thereby altering the home-market prices that were compared to U.S. prices to measure the dumping margin. *Id.* at 1376. After this scheme was uncovered, the respondent proffered an updated home-market sales database that included the omitted sales. *Id.* Commerce refused to accept the updated home-market sales data that included the omitted sales, explaining that the new sales data was untimely and that the respondent had not shown good cause for extending the deadline for data submission. *Id.* Commerce then applied AFA against the respondent. *Id.* The Federal Circuit upheld Commerce's decision:

> There is substantial evidence that Koehler engaged in an intentional transshipment scheme that caused it to withhold certain home-sales information from its responses to Commerce, an omission that impeded the investigation, and that it offered updated information only after the deadline for submitting data. Commerce could properly find one or more of the conditions stated in § 1677e(a) satisfied in this case. … Substantial evidence likewise supports Commerce's decision to apply § 1677e(b). There is substantial evidence that Koehler did not cooperate to the best of its ability. The kind of misconduct evidenced here is far from the cooperation that standard demands.

*Id.* at 1379. Here, similar to the respondent in *Papierfabrik*, Saha Thai engaged in an intentional scheme that caused it to withhold certain U.S. sales information from its responses to Commerce, an omission that impeded the review. This intentional misconduct did not meet the statutory requirement that Saha Thai cooperate to the best of its ability. Commerce was thus fully justified in applying AFA to Saha Thai.

In the *Remand Order*, the Court found that *Papierfabrik* did not control the outcome of this case because it found that Saha Thai, unlike the respondent in *Papierfabrik*, had not engaged in any "intentional" conduct of misreporting. *Remand Order*, 605 F. Supp. 3d at 1366 (citing *Papierfabrik,* 843 F.3d at 1384). The Court correctly recognized that "Commerce may refuse to provide notice when it can demonstrate bad faith on the respondent's part," but it incorrectly held

that because Saha Thai did not act intentionally, "Commerce violated § 1677m(d) when it did not

provide notice and an opportunity to cure before applying an adverse inference to the facts

available." *Id.* at 1366. In other words, even though Saha Thai had participated in an evasion

scheme where it intentionally concealed its sales of CWP, the Court refused to acknowledge

Saha Thai's misreporting was intentional, because the Court mistakenly found that dual-stenciled

pipe was not covered by the scope of the Order. *Id.* at 1367. ("There is no finding of fraud in this

case. Instead, what has happened could — most charitably to Commerce's position — be

characterized as 'a misunderstanding of the Department's questionnaire instructions.'").

Commerce's *Final Remand Results* are the fruit of this poisonous tree. First, because it

was bound to follow the instructions in the Court's *Remand Order*, Commerce issued a

questionnaire to Saha Thai that allowed it to report all the relevant details of its sales of dual-

stenciled pipe. *Final Remand Results* at 1. Commerce then calculated a weighted-average

dumping margin based on the revised response from Saha Thai. *Id.* at 1-2. As discussed above,

however, the *Remand Order*'s instructions to issue a supplemental questionnaire to Saha Thai to

correct the mere "deficiencies" in its reporting were erroneous, because the *Remand Order*

incorrectly found that Saha Thai did not act intentionally when it concealed its sales of dual-

stenciled pipe. After the Court issued the *Remand Order*, the Federal Circuit reversed the Court's

holding in *Saha Thai I* that dual-stenciled pipe is excluded from the scope of the Order, s*ee Saha

Thai III*, 101 F.4th at 1311, and based on the Federal Circuit's decision, this Court upheld the

affirmative evasion determination under EAPA involving Saha Thai and Blue Pipe, *see Blue

Pipe*, 2025 WL 2731541, at *1. *Papierfabrik* thus does control the outcome of this case, meaning

the requirements of § 1677m(d) do not apply to Saha Thai, because it engaged in a scheme to

intentionally evade reporting data to Commerce.

For all of these reasons, the Court should reverse Commerce's *Final Remand Results* with new instructions to reconsider its decision not to apply AFA to Saha Thai in light of the respondent's intentional conduct of misreporting.

## IV.    The Exhaustion Doctrine Does Not Apply to Defendant-Intervenor's Challenge to the *Final Remand Results*

Saha Thai will likely object that Defendant-Intervenor failed to exhaust its administrative remedies because this challenge was not raised in response to Commerce's preliminary remand results. As discussed below, Defendant-Intervenor's challenge is properly preserved for review by the Court for three reasons. First, the Court's decision in *Blue Pipe* – which materially affects this case – was not issued until after Commerce's *Final Remand Results*. Second, it would have been futile to raise this challenge below, because Commerce was obligated to follow the Court's *Remand Order* even though it had been rendered clearly erroneous by the Federal Circuit's decision in *Saha Thai III* and *Blue Pipe*. And third, whether the Court's holding regarding § 1677m(d) has been rendered erroneous is a pure question of law.

By statute, this Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). At least four exceptions exist to relieve a party from this exhaustion requirement, where: "(1) plaintiff's argument involves a pure question of law; (2) there is a lack of timely access to the confidential record; (3) a judicial decision rendered subsequent to the administrative determination materially affected the issue; or (4) raising the issue at the administrative level would have been futile." *Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1397 (Ct. Int'l Trade 2021) (quoting *Gerber Food (Yunnan) Co. v. United States*, 33 CIT 186, 193, 601 F. Supp. 2d 1370, 1377 (2009)).

**A.  A Subsequent Judicial Decision Materially Affected the Issues in This Case**

Here, as discussed above, the judicial decision in *Blue Pipe*, which was rendered

subsequent to the *Final Remand Results*, materially affects the issue of whether Saha Thai

intentionally misreported its U.S. sales data or whether Saha Thai's failure to report its sales of

dual-stenciled pipe was a mere "deficiency" due to a simple "misunderstanding" such that

§ 1677m(d) required Commerce to give Saha Thai a chance to remedy that deficiency. Because

*Blue Pipe* was issued after the *Final Remand Results*, it was impossible to raise the impact of this

judicial decision prior to Commerce issuing the *Final Remand Results*.

The Court recently applied this principle in *Toyo Kohan Co., Ltd. v. United States*, Slip

Op. 25-141, Ct. No. 24-261 (Oct. 23, 2025). There, in the underlying administrative review, the

respondent had not raised any challenge to Commerce's application of the Cohen's *d* test in its

case brief. *Id.* at 14. However, the Federal Circuit subsequently issued its decision in *Marmen*

*Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025), which foreclosed application of the

Cohen's *d* test to the U.S. sales at issue in *Toyo Kohan*. *Id.* The respondent then amended its

complaint to include a challenge to the Cohen's d test. *Id.* The Court held that the exhaustion

doctrine did not apply:

> {W}hile it is uncontested that Toyo Kohan failed to raise its challenge to
> Commerce's application of the Cohen's d test in the underlying proceedings, any
> such efforts would have been futile. … The Federal Circuit had not yet resolved
> the issue of how Cohen's d could be applied properly, while Commerce adhered
> to the methodology faithfully without ever considering the three factors that the
> government here considers factual, after several opportunities to reconsider the
> matter. The Federal Circuit's opinion in *Marmen* clarified the longstanding
> dispute about the proper application of the Cohen's d test. … Accordingly, the
> court remands to Commerce to perform its differential pricing analysis consistent
> with the Federal Circuit's opinion in *Marmen*.

*Id.* Here, as in *Toyo Kohan*, whether Saha Thai's conduct was intentionally evasive remained

unresolved until this Court definitively clarified this issue in the challenge to the EAPA

13

determination at issue in *Blue Pipe*. Commerce adhered to the Court's finding in the *Remand Order* that, because there was no intentional conduct involved, § 1677m(d) required Commerce to provide Saha Thai an opportunity to cure the "deficiency" in its reporting. However, in upholding the EAPA determination in *Blue Pipe*, the Court clarified that the failure to report dual-stenciled pipe as subject merchandise was evasive activity. Accordingly, the Court should remand this case to Commerce to analyze whether the application of AFA is warranted.

**B. Challenging Commerce's Preliminary Remand Results Would Have Been Futile**

Another well-settled exception to the exhaustion-of-administrative-remedies doctrine applies in this case. A party need not exhaust his administrative remedies where invoking such remedies would be futile. *Bendure v. United States*, 554 F.2d 427, 431, 213 Ct. Cl. 633 (1977) ("Courts will, as a general rule, refuse to require administrative exhaustion when resort to the administrative remedy would be futile, including situations where plaintiffs would be 'required to go through obviously useless motions in order to preserve their rights.'") (citations omitted). *See also Cooper v. Marsh*, 807 F.2d 988, 990 (Fed. Cir. 1986) (Plaintiff challenging court martial conviction "need seek review only before military tribunals empowered to provide the remedy sought"); *Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (referring to "the futility exception to the exhaustion requirement" and quoting the statement by Professor Davis in 3 K. Davis, Administrative Law Treatise § 20.07 (1958), that the exception applies where "following the administrative remedy would be futile  because of certainty of an adverse decision."). As the Federal Circuit has found, it would be futile for a party to request relief "when the administrative agency has no discretion to grant the requested relief." *Biafora v. United States*, 773 F.3d 1326, 1330 (Fed. Cir. 2014).

Here, it would have been futile for Defendant-Intervenor to request that Commerce ignore the *Remand Order*'s holding that "federal statute and Federal Circuit precedent require Commerce to have provided notice and an opportunity to cure to Saha Thai." *Remand Order* at 39. Commerce was obligated to follow the *Remand Order* by issuing a supplemental questionnaire to Saha Thai. Even though the *Remand Order* was rendered erroneous by the decision in *Blue Pipe*, Commerce had no discretion to overrule the *Remand Order*. Only this Court or a higher court has the discretion to overrule the *Remand Order*. It thus would have been futile for Defendant-Intervenor to request that Commerce invalidate the *Remand Order* and continue to apply AFA to Saha Thai. At the same time, that is precisely why it is proper for this Court to consider this request at this juncture.

### C. Whether Commerce Was Obligated by § 1677m(d) to Give Saha Thai a Chance to Remedy Its Failure Is a Pure Question of Law

In addition to the reasons discussed above, it would still be proper for the Court to consider whether, in light of the Court's holding in *Blue Pipe*, Commerce was required by § 1677m(d) to allow Saha Thai to cure its reporting, because that is a pure question of law. The pure-question-of-law exception to administrative exhaustion applies "when 1) plaintiff raises a new argument; (2) this argument is of a purely legal nature; (3) the inquiry requires neither further agency involvement nor additional fact finding or opening up the record; and (4) the inquiry neither creates undue delay nor causes expenditure of scarce party time and resources." *Zhongce Rubber Group Co. Ltd. v. United States*, 352 F. Supp. 3d 1276, 1279 (Ct. Int'l Trade 2018), *aff'd without opinion*, 787 F. App'x 756 (Fed. Cir. 2019) (citing *Consol. Bearings Co. v. United States*, 166 F. Supp. 2d 580, 587 (Ct. Int'l Trade 2001)).

All four requirements of the pure-question-of-law exception are met here. This is the first time Defendant-Intervenor has disputed the validity of the *Remand Order*'s holding with respect

to the application of § 1677m(d). Whether § 1677m(d) required Commerce to issue a supplemental questionnaire to Saha Thai is a purely legal question, and the facts relevant to that inquiry are present on the record. No further agency involvement is required for the Court to consider the question. Finally, the Court's inquiry into the question neither unduly delays justice nor expends scarce party time and resources.

Significantly, in the original underlying administrative review in this case, Saha Thai itself never raised the argument that Commerce was required to give it another chance to report its sales of dual-stenciled pipe before applying AFA. *Remand Order* at 27. Saha Thai first raised this argument to the Court in its opening brief accompanying its motion for judgment on the agency record. *Id.* Commerce then argued that Saha Thai failed to raise this argument during the administrative proceedings and therefore failed to exhaust its administrative remedies. *Id.* The Court found that it was "proper … to consider whether Commerce complied with § 1677m(d), as that is a pure question of law." *Id.* The Court should reach this same decision with respect to the issue of whether § 1677m(d) required Commerce to issue a supplemental questionnaire to Saha Thai in light of the holding in *Blue Pipe* that the failure to report dual-stenciled pipe as sales of subject merchandise constitutes evasion.

## V.    CONCLUSION

For the foregoing reasons, Defendant-Intervenor respectfully requests that the Court hold that Commerce's *Final Remand Results* are not supported by substantial evidence or in accordance with law and remand this proceeding to Commerce with instructions to reconsider its decision not to apply AFA to Saha Thai in light of the Federal Circuit's decision in *Saha Thai III* and this Court's decision in *Blue Pipe.*

Respectfully,

/s/ Luke A. Meisner_____
Roger B Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street NW
Suite 500
Washington, D.C. 20001

*Counsel to Defendant-Intervenor Wheatland Tube Company*

Dated: November 17, 2025

**PUBLIC VERSION**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 5,366 words, including accompanying motion, text, headings, table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Luke A. Meisner
Luke A. Meisner

Dated: November 17, 2025