Slip Op. 26-9

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SAHA THAI STEEL PIPE PUBLIC COMPANY LIMITED,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Before: Gary S. Katzmann, Judge** |
| **Defendant,** | **Court No. 21-00049** |
| **and** | |
| **WHEATLAND TUBE COMPANY,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Commerce's Remand Results are sustained.]

Dated: February 4, 2026

Daniel L. Porter, James P. Durling, and Gina M. Colarusso, Pillsbury Winthrop Shaw Pittman LLP, of Washington, D.C., for Plaintiff Saha Thai Steel Pipe Public Company Limited.

Claudia Burke, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant the United States. With her on the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director. Of counsel on the briefs was JonZachary Forbes, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Luke A. Meisner and Roger B. Schagrin, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company.

Katzmann, Judge: Before the court is a challenge to the U.S. Department of Commerce's

("Commerce") redetermination in the 2018–2019 administrative review of the antidumping duty

order on circular welded carbon steel pipes and tubes from Thailand, following remand by this

court.  See Final Results of Redetermination Pursuant to Court Remand (Dep't Com. July 31,

2025), July 31, 2025, ECF No. 80 ("Remand Results"); Saha Thai Steel Pipe Pub. Co. v. United

States, 46 CIT __, 605 F. Supp. 3d 1348 (2022) ("Remand Order").   Defendant-Intervenor

Wheatland Tube Company ("Wheatland")—a U.S. producer of circular welded carbon steel pipes

and tubes—raises the only issues now before the court.  See Def.-Inter.'s Reply in Opp'n to the

Remand Redetermination at 1, Nov. 17, 2025, ECF No. 86 ("Def.-Inter.'s Reply."); see also Def.-

Inter.'s Mot. to Intervene, Mar. 3, 2021, ECF No. 12.   Wheatland seeks another remand for

Commerce to reconsider its determination not to apply adverse facts available in light of

intervening decisions that Wheatland claims establish that Saha Thai intentionally misreported

sales such that the reasoning of the prior Remand Order has "no foundation."  Def.-Inter.'s Reply.

at 2; see also id. at 2–3 (first citing Saha Thai Steel Pipe Pub. Co. v. United States, 101 F.4th 1310

(Fed. Cir. 2024), cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. v. Wheatland Tube Co., 145

S. Ct. 1309 (2025) (mem.) ("Scope Appeal"); and then citing Blue Pipe Steel Ctr. Co. v. United

States, 49 CIT __, __, 2025 WL 2731541, at *1 (2025)).  Plaintiff Saha Thai Steel Pipe Public

Company Limited ("Saha Thai")—a Thai company that produces subject merchandise—and

Defendant the United States (the "Government") ask the court to sustain the Remand Results.  See

Pl.'s Cmts. on Remand Redetermination at 1, Sept. 3, 2025, ECF No. 82 ("Pl.'s Cmts."); Def.'s

Reply to Cmts. on Remand Redetermination and Resp. to Ct.'s Order at 1, Nov. 17, 2025, ECF

No. 85 ("Gov't Reply").

    The court first evaluates whether Wheatland's arguments are barred by Wheatland's failure

to exhaust its arguments before Commerce and concludes that the futility exception applies such

that failure to exhaust does not bar Wheatland's claims.  For the reasons set forth below, the court

sustains Commerce's <u>Remand Results</u>.

## BACKGROUND

The facts, legal framework, and administrative history of this case have been set out in the previous <u>Remand Order</u> and are recounted here to extent they are relevant.  <u>See</u> <u>Remand Order</u>, 605 F. Supp. 3d at 1352–60.

### I.      *Legal and Regulatory Framework*

"Dumping occurs when a foreign company sells a product in the United States at a lower price than" the company charges for the "same product in its home market."  <u>Sioux Honey Ass'n</u> <u>v. Hartford Fire Ins. Co.</u>, 672 F.3d 1041, 1046 (Fed. Cir. 2012).  This practice constitutes unfair competition because it permits foreign producers to undercut domestic companies by selling products below reasonable fair market value.  <u>Id.</u>  To address the impact of such unfair competition, Congress enacted the Tariff Act of 1930, as amended, which empowers Commerce to investigate potential dumping and, if necessary, to issue orders instituting duties on subject merchandise.  <u>Id.</u> at 1046–47.  Pursuant to 19 U.S.C. § 1673, Commerce imposes antidumping duties on foreign goods if they are being or are likely to be sold in the United States at less than fair value and the U.S. International Trade Commission (the "Commission") "determines that the sale of the merchandise at less than fair value materially injures, threatens, or impedes the establishment of an industry in the United States."  <u>See</u> <u>Diamond Sawblades Mfrs. Coal. v. United States</u>, 866 F.3d 1304, 1306 (Fed. Cir. 2017).

"Sales at less than fair value are those sales for which the 'normal value' (the price a producer charges in its home market) exceeds the 'export price' (the price of the product in the United States)."  <u>U.S. Steel Corp. v. United States</u>, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (quoting 19 U.S.C. § 1677(35)(A)).  Commerce imposes antidumping duties equal to the dumping margin,

or the "amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise." See 19 U.S.C. § 1673; see also id. § 1677(35)(A); Shandong Rongxin Imp. & Exp. Co. v. United States, 42 CIT __, __, 331 F. Supp. 3d 1390, 1394 (2018).  The statute provides for administrative review of antidumping duties at least once every twelve months, upon the request of an interested party.  19 U.S.C. § 1675(a)(1); see also Goodluck India Ltd. v. United States, 47 CIT __, __, 670 F. Supp. 3d 1353, 1363 (2023).

### A.    Adverse Facts Available

In an administrative review of antidumping duty orders, Commerce "obtains most of its factual information . . . from submissions made by interested parties during the course of the proceeding."  19 C.F.R. § 351.301(a); see also QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." (internal quotation marks and citation omitted)).  Commerce relies on facts otherwise available to reach the applicable determination if

> necessary information is not available on the record, or . . . an interested party or any other person—(A) withholds information that has been requested by [Commerce] under this subtitle, (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to [19 U.S.C. § 1677m(c)(1) and (e)], (C) significantly impedes a proceeding under this subtitle, or (D) provides such information but the information cannot be verified as provided in [§] 1677m(i).

19 U.S.C. § 1677e(a).  "Commerce can only use facts otherwise available to fill a gap in the record."  Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011).  If Commerce also finds that an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19

U.S.C. § 1677e(b)(1); <u>see also</u> <u>Remand Order</u>, 605 F. Supp. 3d at 1361. Additionally, "[i]f [Commerce] determines that a response to a request for information . . . does not comply with the request, [Commerce] shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . ." 19 U.S.C. § 1677m(d); <u>see also</u> <u>Remand Order</u>, 605 F. Supp. 3d at 1362.

### B. Exhaustion

Before challenging a determination by Commerce before the U.S. Court of International Trade ("USCIT"), a party must exhaust its arguments by first presenting those arguments to Commerce. <u>See</u> 28 U.S.C. § 2637(d); <u>Luoyang Bearing Corp. v. United States</u>, 44 CIT __, __, 450 F. Supp. 3d 1402, 1406 (2020), <u>aff'd</u>, 844 F. App'x 368 (Fed. Cir. 2021); <u>Qingdao Sea-Line Trading Co. v. United States</u>, 766 F.3d 1378, 1388 (Fed. Cir. 2014). To exhaust an argument, Commerce's regulations instruct that parties must "present all arguments" in a case brief following publication of the agency's preliminary determination, 19 C.F.R. § 351.309(c)(2); <u>see also</u> <u>Dorbest Ltd. v. United States</u>, 604 F.3d 1363, 1375 (Fed. Cir. 2010). The exhaustion requirement serves the purposes of promoting procedural fairness, fostering judicial efficiency, and protecting the agency's interest in being the initial decisionmaker. <u>See</u> <u>Dorbest Ltd.</u>, 604 F.3d at 1375; <u>Luoyang Bearing Corp.</u>, 450 F. Supp. 3d at 1409. The exhaustion requirement applies in remand proceedings. <u>See</u> <u>Mittal Steel Point Lisas Ltd. v. United States</u>, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008); <u>see also</u> <u>Prime Time Com., LLC v. United States</u>, No. 2021-1783, 2022 WL 2313968, at *4 (Fed. Cir. June 28, 2022).

Courts may lift the exhaustion requirement in "circumstances in which institutional interests are not sufficiently weighty or application of the doctrine would otherwise be unjust."

Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146 (Fed. Cir. 2013); see also Luoyang

Bearing Factory v. United States, 26 CIT 1156, 1186 n.26, 240 F. Supp. 2d 1268, 1297 n.26 (2002)

(listing exceptions as (1) futility, (2) a subsequent court decision that may impact the agency's

decision, (3) a pure question of law, or (4) when plaintiff had no reason to believe the agency

would not follow established precedent).   This court "generally takes a strict view of the

requirement that parties exhaust their administrative remedies before [Commerce] in trade cases."

Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (internal quotation marks

and citation omitted).

## II.    Factual Background

Commerce issued an antidumping duty order on welded carbon steel pipes and tubes from

Thailand in 1986, covering imports of " 'standard pipe' or 'structural tubing,' which includes pipe

and tube with an outside diameter of 0.375 inch or more but not over 16 inches, of any wall

thickness."   Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes from

Thailand, 51 Fed. Reg. 8341, 8341 (Dep't Com. Mar. 11, 1986) ("Antidumping Duty Order").

Three types of pipe are relevant to this case: standard pipe, line pipe, and dual-stenciled

pipe.  Standard pipe is used in "plumbing and heating systems, air for low-pressure conveyance of

air, steam, natural gas, water, oil, or other liquids and gases."  Certain Circular Welded Pipe and

Tube from Brazil, India, Korea, Mexico, Taiwan, Thailand, and Turkey, Inv. Nos. 701-TA-253

and 731-TA-132, 252, 271, 273, 532-534, and 536 (Fourth Review) at 6, USITC Pub. 4754 (Jan.

2018) ("2018 Injury Determination"); see also Certain Welded Carbon Steel Pipes and Tubes from

Turkey and Thailand (Final) at I-1–2, Inv. Nos. 701-TA-253 and 731-TA-252, USITC Pub. 1810

(Feb. 1986).   Standard pipe is manufactured to American Society for Testing and Material

("ASTM") specifications.  2018 Injury Determination at 6.  In contrast, "[l]ine pipe is used for

transportation of gas, oil, or water generally in a pipeline or utility distribution system," and is produced to American Petroleum Institute ("API") and American Water Works Association ("AWWA") specifications. Id. at I-15. A third category, "dual-stenciled pipe," is pipe that has received both an ASTM and an API stencil, indicating that it complies with both standards. Id. at 6.

During the administrative review at issue in this case, two related developments took place. First, Commerce initiated a scope inquiry into whether line pipe or dual-stenciled pipe produced by Saha Thai is included in the scope of the Antidumping Duty Order. See Mem. from L. Ayala to J. Maeder, re: Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Self Initiation of Scope Inquiry on Line Pipe and Dual-Stenciled Standard Line Pipe at 1, Case No. A-549-502, Bar Code: 3914022-01 (Dep't Com. Nov. 22, 2019). Commerce determined, in a scope ruling published June 9, 2020, that line pipe is not covered by the Antidumping Duty Order, but that "products that are dual-stenciled as standard and line pipe are covered by the order." Notice of Scope Rulings, 85 Fed. Reg. 35261, 35262 (Dep't Com. June 9, 2020) ("Scope Ruling"). This court initially remanded that Scope Ruling to Commerce, holding that Commerce lacked substantial evidence for its position that dual-stenciled pipe was included within the scope of the Antidumping Duty Order. See Saha Thai Steel Pipe Pub. Co. v. United States, 45 CIT __, __, 547 F. Supp. 3d 1278, 1281 (2021) ("Scope Review I"); see also Saha Thai Steel Pipe Pub. Co. v. United States, 46 CIT __, 592 F. Supp. 3d 1299, 1301 (2022) ("Scope Review II") (sustaining Commerce's redetermination under protest that dual-stenciled pipe was not included in the scope). On appeal, the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") reversed and reinstated Commerce's Scope Ruling, concluding that the

language of the Antidumping Duty Order covers dual-stenciled pipe and that additional factors

that Commerce must consider by statute support that interpretation.  Scope Appeal, 101 F.4th at

1331.

Second, U.S. Customs and Border Protection ("Customs") initiated an investigation under

the Enforce and Protect Act ("EAPA") into whether Blue Pipe Steel Center Company Limited

("Blue Pipe"), an importer of merchandise produced by Saha Thai, evaded the Antidumping Duty

Order by misclassifying standard pipe as line pipe;  Customs concluded that Blue Pipe had evaded

the Antidumping Duty Order.  See Letter from L. Meisner to W. Ross, re: New Factual Information

at Ex. 1 (Sept. 18, 2020), P.R. 199 ("Wheatland's New Factual Information") (submitting Letter

from B. Hoxie to Y. Lomloy, re: Notice of Final Determination as to Evasion, EAPA Case No.

7401 (Sept. 11, 2020) ("Evasion Determination")).  This court sustained Customs' determination.

Blue Pipe, 2025 WL 2731541, at *1.

### III.    History of Relevant Administrative Proceedings

Commerce initiated the 2018–2019 administrative review of the Antidumping Duty Order

on May 29, 2019, covering a period of review from March 1, 2018 to February 28, 2019.  Initiation

of Antidumping and Countervailing Duty Administrative Reviews, 84 Fed. Reg. 24743 (Dep't

Com. May 29, 2019), P.R. 21.[1]  Commerce selected Saha Thai as the sole mandatory respondent.[2]

See Mem. from S. Presing to T. Page, re: Respondent Selection at 1, (Oct. 18, 2019), P.R. 35.

---

[1] "P.R." refers to the index numbers of public documents in the joint appendix for the underlying proceeding that resulted in the Remand Order.  "P.R.2d" refers to the public document numbers in the joint appendix for the remand proceeding.

[2] In antidumping duty administrative reviews, Commerce is charged with "determin[ing] the individual . . . dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1).  However, where determining individual margins is "not practicable" due to the "large number of exporters" involved in the review, Commerce may limit its

Commerce preliminarily calculated a dumping margin of 0.00 percent.  Circular Welded Carbon Steel Pipes and Tubes From Thailand: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019, 85 Fed. Reg. 18552, 18553 (Dep't Com. Apr. 2, 2020), P.R. 136.  Wheatland later submitted new factual information that included the Customs EAPA determination that Blue Pipe, an importer of pipe produced by Saha Thai, had evaded the Antidumping Duty Order by not declaring entries of dual-stenciled pipe as subject merchandise.  Wheatland's New Factual Information at Ex. 1.  Following Wheatland's submission, Commerce concluded that "Saha Thai did not provide requested information with respect to a substantial portion of its U.S. sales," that information necessary to calculate an accurate dumping margin was therefore missing from the record, and that Saha Thai had failed to cooperate to the best of its ability.  Mem. from J. Maeder to J. Kessler, re: Issues and Decisions Memorandum for the Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination, In Part; 20182019 at 4 (Dept Com. Jan. 19, 2021), P.R. 214 ("IDM").  In the final determination, Commerce applied adverse facts available to calculate a dumping margin of 37.55 percent.  Id. at 4–6; Circular Welded Carbon Steel Pipes and Tubes from Thailand: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments, In Part; 2018-2019, 86 Fed. Reg. 7259, 7260 (Dep't Com. Jan. 27, 2021) ("Final Determination").  Commerce referenced the Evasion Determination to justify its application of adverse facts available, noting that Saha Thai produced the merchandise at issue in the Evasion Determination and concluding that "Saha Thai was therefore aware that sales of dual-stenciled

---

examination to a "reasonable number" of exporters, referred to as mandatory respondents.  Id. § 1677f-1(c)(2); see also 19 C.F.R. § 351.109.

standard pipe and line pipe should be reported to Commerce for purposes of this administrative review."  IDM at 5; see also Mem. from T. Page to M. Skinner, re: 2018-2019 Antidumping Duty Administrative Review of Circular Welded Carbon Steel Pipes and Tubes from Thailand: Application of Adverse Facts Available at 2–5 (Dep't Com. Jan. 19, 2021), P.R. 215, C.R. 96.

### IV.  Procedural History

Saha Thai originally challenged Commerce's application of adverse facts available.  Pl.'s Mot. for J. on Agency R. at 4–5.  This court remanded the Final Determination, finding that Commerce (1) failed to comply with the requirements of 19 U.S.C. § 1677m(d) to notify and provide Saha Thai with an opportunity to cure deficiencies in its submission and (2) "failed to explain adequately in the record the reason it chose to draw an adverse inference," such that the Final Determination was "not supported by substantial evidence nor in accordance with the law." Remand Order, 605 F. Supp. 3d at 1371.[3]  The court "state[d] no position whether on remand Commerce may draw adverse inferences or use facts otherwise available."  Id.

The Remand Order discussed both the concurrent scope inquiry case and the Evasion Determination by Customs regarding Blue Pipe.  Id. at 1353–59.  The court noted that the scope review involved the same parties and "intertwined" facts, id. at 1352 (citing Scope Review I, 547 F. Supp. 3d 1278 and Scope Review II, 592 F. Supp. 3d 1299), but the court stated that its "consideration of this case [was] wholly independent of the results in the related scope inquiry case."  Id. at 1361.  The court stayed the remand redetermination during the appeal of the scope

---

[3] Saha Thai separately challenged Commerce's 2019–2020 administrative review of the Antidumping Duty Order, in a case that is pending before this court.  See Saha Thai Steel Pipe Pub. Co. v. United States, No. 21-00627 (U.S. Ct. Int'l Trade filed Dec. 20, 2021).

inquiry case.  See id. at 1371; Order Staying Case, Oct. 11, 2024, ECF No. 69.[4]

On remand, Commerce reopened the record and solicited a revised questionnaire response from Saha Thai that "include[d] all details of sales of dual-stenciled pipe," pursuant to the Federal Circuit's decision upholding Commerce's Scope Ruling.  Remand Results at 1 (citing Scope Appeal, 101 F.4th 1310); see also Letter from T. Gilgunn to D. Porter, re: Administrative Review of the Antidumping Duty Order on Circular Welded Carbon Steel Pipes and Tubes from Thailand: Request for Information at 1, Aug. 30, 2024, P.R.2d 1.  Saha Thai timely responded to Commerce's requests for information and supplemental questionnaires.  See, e.g., Letter from D. Porter to H. Lutnick, re: Saha Thai's Section A Questionnaire Response (Mar. 12, 2025), P.R.2d 12, C.R.2d 1; Letter from D. Porter to H. Lutnick, re: Saha Thai's Supplemental Questionnaire Response (June 5, 2025), P.R.2d 34, C.R.2d 46.  Commerce published its preliminary remand redetermination on July 8, 2025, in which Commerce used Saha Thai's new responses to calculate a revised dumping margin of 0.00 percent.  See Draft Results of Redetermination Pursuant to Court Remand at 12, Case No: A-549-502, Bar Code: 4789103-01 (Dep't Com. July 8, 2025), ("Draft Remand Results").  No interested parties commented on the Draft Remand Results.  See Remand Results at 3.  Commerce filed its final Remand Results with the court on July 31, 2025, in which Commerce continued to determine the dumping margin to be 0.00 percent.  See id. at 2.

Saha Thai filed comments on September 3, 2025, asking the court to sustain the Remand Results.[5]  See Pl.'s Cmts. at 1.  On November 17, 2025, the Government filed its reply to Saha

---

[4] On July 7, 2025, this case was reassigned from the Honorable Stephen Alexander Vaden to the undersigned pursuant to 28 U.S.C. § 253(c) and USCIT Rule 77(e)(4).  Reassignment Order, July 7, 2025, ECF No. 78.

[5] In the Remand Results, Commerce concluded that "the prices of domestically sourced and imported [input materials] in Thailand were distorted during the [period of review], such that the

Thai's comments, asking the court to sustain the <u>Remand Results</u>, Gov't Reply at 1, and Wheatland

filed a reply arguing that the <u>Remand Order</u> was based on faulty reasoning and asking the court to

again remand to Commerce for reconsideration, Def.-Inter.'s Reply at 2–3.   The court on

November 18, 2025, directed Saha Thai and the Government to respond to Wheatland's

arguments, and the parties timely responded.  <u>See</u> Order, Nov. 18, 2025, ECF No. 90; Def.'s Suppl.

Reply to Cmts. on Remand Redetermination, Dec. 2, 2025, ECF No. 94 ("Gov't Suppl. Reply");

Pl.'s Suppl. Reply to Cmts. on Remand Redetermination, Dec. 2, 2025, ECF No. 95 ("Pl.'s Suppl.

Reply").

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction remains proper under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).   The

standard of review is provided by 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court will sustain

Commerce's redetermination on remand if it is supported by substantial evidence on the record

and is otherwise in accordance with law . . . , which includes compliance with the court's remand

order."  <u>SMA Surfaces, Inc. v. United States</u>, 47 CIT __, __, 658 F. Supp. 3d 1325, 1328 (2023)

(internal citation omitted).

## DISCUSSION

Wheatland challenges the <u>Remand Results</u> based on alleged flaws in the court's previous

<u>Remand Order</u>.  Def.-Inter.'s Reply at 2–3.  Wheatland argues that "this [c]ourt made several

---

costs of producing subject merchandise in Thailand were outside the ordinary course of trade,"
and that this constituted a particular market situation consistent with 19 U.S.C. § 1677b(e).
<u>Remand Results</u> at 10.  In its comments, Saha Thai notes that it "does not agree with Commerce's
reasoning or conclusion" that a particular market situation existed, but Saha Thai does not seek
remand on these grounds.  <u>Pl.'s Cmts.</u> at 3.  Additionally, the particular market situation
determination did not alter the calculated dumping margin.  <u>See</u> <u>Remand Results</u> at 12.  Because
no party seeks remand on these grounds, the court need not reach the issue of whether Commerce
erred in concluding that a particular market situation existed.

cascading errors" in cases involving Saha Thai, id. at 1, and that subsequent decisions have

undermined the court's reasoning in the Remand Order that Commerce failed to comply with its

obligation under 19 U.S.C § 1677m(d) to provide Saha Thai with notice and an opportunity to cure

a deficiency in its submission.   Id. at 2–3.   Specifically, Wheatland argues that the court's

conclusion that Saha Thai did not intentionally fail to report sales of dual-stenciled pipe was

"predicated on the [USCIT's] erroneous and overturned decision in [Scope Review I]" that dual-

stenciled pipe was not included in the scope of the Antidumping Duty Order.  Id. at 9.  Wheatland

also contends that the court "incorrectly distinguished the facts of this case" from a case in which

the Federal Circuit held that Commerce may refuse to provide notice under 19 U.S.C. § 1677m(d)

when a respondent acts fraudulently.   Id. at 9 (citing Papierfabrik August Koehler SE v. United

States, 843 F.3d 1373, 1384 (Fed. Cir. 2016)).   Wheatland argues that this court's subsequent

decision in Blue Pipe, sustaining an evasion determination by Customs, indicates that

"Papierfabrik . . . control[s] the outcome of this case, meaning the requirements of § 1677m(d) do

not apply to Saha Thai, because it engaged in a scheme to intentionally evade reporting data to

Commerce."  Id. at 11.

Wheatland takes issue with the Remand Results on the basis that they "are the fruit of this

poisonous tree," id. at 11, not based on any alleged flaws in Commerce's reasoning or procedure

on remand.  See id. at 3 ("[T]here is no foundation for the Remand Order's finding that Saha Thai's

failure to report its dual-stenciled pipe was a simple misunderstanding rather than intentional

conduct.   Accordingly, the [c]ourt should remand this proceeding.").   Wheatland argues that

remand would allow Commerce to "reconsider its decision in light of" the Scope Appeal and Blue

Pipe decisions.  Id. at 3.

Court No. 21-00049                                                                                     Page 14

 This case raises three issues: (1) whether Wheatland's arguments are barred because Wheatland did not exhaust its arguments; (2) whether the court should again remand to Commerce based on alleged flaws in the prior <u>Remand Order</u>; and (3) whether Commerce's <u>Remand Results</u> are unsupported by substantial evidence and not in accordance with law.  The court sustains the <u>Remand Results</u>, concluding (1) that the futility exception applies to Wheatland's arguments such that failure to exhaust does not bar Wheatlands claims, (2) that alleged flaws in the <u>Remand Order</u> do not provide grounds for remand, and (3) that the <u>Remand Results</u> are supported by substantial evidence and in accordance with law.

## I. *The Exhaustion Requirement Does Not Bar Wheatland's Claims*

 The court first turns to the question of whether Wheatland's claims are barred because Wheatland failed to exhaust its arguments before Commerce.  <u>See</u> Pl.'s Suppl. Reply at 5–6; Gov't Suppl. Reply at 5.  Recall that, prior to challenging a determination by Commerce before the USCIT, parties must "present all arguments" to Commerce in a case brief following publication of the agency's preliminary determination, 19 C.F.R. § 351.309(c)(2); <u>Dorbest Ltd.</u>, 604 F.3d at 1375, in this case the Draft Remand Results.  Wheatland did not file a case brief in response to Commerce's Draft Remand Results, <u>Remand Results</u> at 3, and therefore failed to exhaust its arguments before Commerce.  <u>See</u> Def.-Inter.'s Reply at 12.  Wheatland argues that its challenge to the <u>Remand Results</u> falls within an exception to the exhaustion doctrine.  <u>Id.</u> (citing <u>Gov't of Argentina v. United States</u>, 45 CIT __, __, 542 F. Supp. 3d 1380, 1397 (2021)).

### A. *The Futility Exception Applies to Wheatland's Arguments*

 Wheatland argues that the futility exception applies to its arguments for remand in this case.  Def.-Inter.'s Reply at 14–15.  Specifically, Wheatland argues that the exhaustion doctrine does not bar its claims because "Commerce had no discretion to overrule the <u>Remand Order</u>."  <u>Id.</u>

at 15.  Saha Thai and the Government do not respond to Wheatland's argument regarding the

futility of raising these claims before Commerce; Saha Thai merely states that "[a]ll of

[Wheatland's] defenses against exhaustion fail."  Pl.'s Suppl. Reply at 1; <u>see also</u> <u>id.</u> at 6; Gov't

Suppl. Reply at 5–6 (not addressing futility).

A "well-settled exception to the exhaustion-of-administrative-remedies doctrine" exists in

cases where "invoking [administrative] remedies would be futile."  <u>Asociacion Colombiana de</u>

<u>Exportadores de Flores v. United States</u>, 916 F.2d 1571, 1575 (Fed. Cir. 1990).  The Federal Circuit

has described the futility exception as "a narrow one."  <u>Corus Staal</u>, 502 F.3d at 1379.  The

exception applies in "situations where plaintiffs would be required to go through obviously useless

motions in order to preserve their rights," <u>Bendure v. United States</u>, 554 F.2d 427, 431 (Ct. Cl.

1977) (internal quotation marks and citation omitted), and "when the administrative agency has no

discretion to grant the requested relief," <u>Biafora v. United States</u>, 773 F.3d 1326, 1330 (Fed. Cir.

2014).

Commerce is obligated to comply with this court's remand orders.  <u>See</u> <u>Vertex Int'l, Inc. v.</u>

<u>United States</u>, 30 CIT 281, 281 (2006).  Indeed, failure to comply with the court's order would be

grounds for this court to remand to Commerce again.  <u>See</u> <u>Icdas Celik Enerji Tersane Ve Ulasim</u>

<u>Sanayi, A.S. v. United States</u>, 44 CIT __, __, 475 F. Supp. 3d 1293, 1304 (2020) (remanding after

finding Commerce's methodology to be unlawful because it did not comply with the court's

remand instructions).  If Commerce disagrees with a remand order from this court, it "may file

remand results under protest."  <u>Tai-Ao Aluminium (Taishan) Co. v. United States</u>, 43 CIT __, __,

415 F. Supp. 3d 1391, 1395 (2019), <u>aff'd</u>, 983 F.3d 487 (Fed. Cir. 2020).  Commerce may not,

however, reject the reasoning underlying the court's order.  <u>Cf.</u> <u>id.</u> (sustaining remand results filed

under protest and holding the results to be "consistent with the remand order").

At its core, Wheatland's challenge to the <u>Remand Results</u> is a challenge to this court's previous <u>Remand Order</u>. <u>See</u> Def.-Inter.'s Reply at 11. Wheatland asks the court to turn back the clock on these proceedings by issuing a second remand that would, in effect, serve to "overrule the <u>Remand Order</u>." <u>See id.</u> at 15. The agency has no discretion to grant the relief that Wheatland seeks. <u>See</u> <u>Biafora</u>, 773 F.3d at 1330. Furthermore, Wheatland does not challenge independent determinations Commerce made in the remand proceedings.[6] <u>See</u> Def.-Inter.'s Reply at 11. The court concludes that, because it would have been futile to challenge the basis of the <u>Remand Order</u> before Commerce, Wheatland's failure to exhaust its arguments does not bar it from raising these arguments before this court.[7]

---

[6] Wheatland argues that Commerce issued a supplemental questionnaire to Saha Thai because it was "bound to follow the instructions in the [c]ourt's <u>Remand Order</u>." Def.-Inter.'s Reply at 11. While Wheatland is correct that Commerce must follow the court's instructions, the previous <u>Remand Order</u> did not require Commerce to reopen the record. <u>See</u> <u>Remand Order</u>, 605 F. Supp. 3d at 1371 (stating that "Commerce may draw adverse inferences or use facts otherwise available" so long as it "provide[s] an adequate explanation in the record supported by substantial evidence and ensure[s] that it properly complies with the notice requirement of § 1677m(d)").

[7] Wheatland also argues that the exhaustion doctrine does not apply because (1) a subsequent court decision in <u>Blue Pipe</u> "materially affects this case," and (2) the question of whether the court's prior application of 19 U.S.C. § 1677m(d) "has been rendered erroneous is a pure question of law." Def.-Inter.'s Reply at 12. Saha Thai and the Government contest the applicability of these exceptions to the exhaustion requirement, arguing: (1) that <u>Blue Pipe</u> merely affirmed the underlying Customs determination, which Commerce and the court already considered, and therefore does not present any change in the facts before the court, Gov't Suppl. Reply at 6; Pl.'s Suppl. Reply at 7; and (2) that the court's analysis of § 1677m(d) is not a pure question of law, as it requires application to the facts of the case, Gov't Suppl. Reply at 5 n.1; Pl.'s Suppl. Reply at 1, 6. Because the court concludes that the futility exception applies, it need not evaluate the merits of Wheatland's other arguments that exhaustion does not bar its claims.

### II.    Wheatland's Challenge to the Prior <u>Remand Order</u> Does Not Provide Grounds for Remand

The court now turns to Wheatland's argument for remand.  As described above, Wheatland asks this court to remand based on alleged flaws in the court's previous <u>Remand Order,</u> which Wheatland argues "was predicated on the [c]ourt's erroneous and overturned decision" regarding the <u>Scope Ruling</u>.  Def.-Inter.'s Reply at 9 (citing <u>Scope Review I</u>, 547 F. Supp. 3d 1278).  For the reasons set forth below, Wheatland's argument does not provide a basis for remand.

#### A.    This Court Reviews Commerce's <u>Remand Results</u>, Not the Prior <u>Remand Order</u>

The Federal Circuit held in <u>Tung Mung Dev. Co. v. United States</u> that alleged errors in a remand order from the USCIT "d[o] not survive Commerce's decisions on remand" where the remand order "did not compel Commerce to adopt a new policy."  354 F.3d 1371, 1378–79 (Fed. Cir. 2004).[8]  Under such circumstances, "alleged errors in earlier interim decisions by the [USCIT], setting aside Commerce's initial determination . . . and remanding for further proceedings, provide no ground for setting aside Commerce's most recent decisions."  <u>Id.</u> at 1373; <u>see also id.</u> at 1379 ("[A]ny error in the remand orders is irrelevant because Commerce's redetermination decisions represent new, independent agency interpretations.").  Furthermore, this court has previously concluded that a party's "disagreement with the court's interpretation of the law set forth in [a prior remand order] . . . is extraneous" to the court's assessment of whether the remand results are in in

---

[8] By contrast, where the change in the agency's policy following remand is not independent, alleged errors in the remand order may be reviewed on appeal by the Federal Circuit.  <u>See Nippon Steel Corp. v. U.S. Int'l Trade Comm'n</u>, 494 F.3d 1371, 1376–78 (Fed. Cir. 2007) (concluding that the change in a vote by the U.S. International Trade Commission due to the departure of a single commissioner was "not . . . an independent change in agency policy" where the remaining commissioners did not change their votes); <u>see also</u> <u>Altx, Inc. v. United States</u>, 370 F.3d 1108, 1119 n.8 (Fed. Cir. 2004).

accordance with law.  Hosiden Corp. v. United States, 18 CIT 287, 291, 852 F. Supp. 1050, 1054

(1994), vacated on other grounds sub nom. Hosiden Corp. v. Advanced Display Mfrs. of Am., 85

F.3d 1561 (Fed. Cir. 1996).

As in Hosiden, "[a]t this point in the proceedings, the court is concerned solely with" the

validity of Commerce's remand redetermination.  See id. at 291, 1055; see also Pl.'s Suppl. Reply

at 5 ("[T]he question now before the [c]ourt is whether Commerce's Remand Results are supported

by substantial evidence, are in accordance with law, and comply with the [c]ourt's Remand

Order.")  The Remand Order did not compel a policy change; instead, it "state[d] no position

whether on remand Commerce may draw adverse inferences or use facts otherwise available," and

required only that—if Commerce does so—it "provide an adequate explanation in the record

supported by substantial evidence and ensure that it properly complies with the notice requirement

of § 1677m(d)."  Remand Order, 605 F. Supp. 3d at 1371.  While Commerce was obligated to

comply with the Remand Order, that order did not require Commerce to reopen the record or

determine not to apply adverse facts available.  Under Tung Mung, alleged errors in the Remand

Order "[do] not survive" Commerce's independent determinations in the remand proceedings.  See

Tung Mung, 354 F.3d at 1378.

### B.    *Subsequent Decisions Do Not Invalidate the Previous Remand Order*

In addition, the court finds Wheatland's argument that remand is warranted because

subsequent decisions undermine the Remand Order to be without merit.  First, Wheatland argues

that the Remand Order was "predicated on" this court's earlier Remand Order remanding the Scope

Ruling, which was later reversed by the Federal Circuit in Scope Appeal, 101 F.4th at 1310.  Def.-

Inter.'s Reply at 9.  While the Remand Order discussed the scope inquiry case at length, the court

stated that its "consideration of this case [was] wholly independent of the results in the related

scope inquiry case." Remand Order, 605 F. Supp. 3d at 1361; see also id. at 1354–55. Furthermore, Commerce referenced the Federal Circuit's ruling in the Scope Appeal when issuing its revised questionnaire on remand. See Remand Results at 1. No purpose would be served by remanding to Commerce to "reconsider its decision not to apply [adverse facts available] to Saha Thai in light of the Federal Circuit's decision" in that case, as Wheatland suggests. See Def.-Inter.'s Reply at 16.

Second, Wheatland asserts that the Remand Order "incorrectly found that Saha Thai did not act intentionally when it concealed its sales of dual-stenciled pipe," such that Commerce was required to provide an opportunity for Saha Thai to remedy its submission under 19 U.S.C. § 1677m(d). Def.-Inter.'s Reply at 11. Wheatland suggests that this result is inconsistent with the USCIT's subsequent decision in Blue Pipe, 2025 WL 2731541, at *1, sustaining Customs' determination that Blue Pipe evaded the Antidumping Duty Order. Id. The Remand Order, however, discussed the Evasion Determination sustained in Blue Pipe, including Customs' findings regarding Saha Thai's involvement. Remand Order, 605 F. Supp. 3d at 1357. The court nonetheless concluded that Commerce made "no finding of fraud in this case." Id. at 1367; see generally IDM. The court held that, "[b]ecause Commerce did not find Saha Thai acted fraudulently, Commerce violated § 1677m(d) when it did not provide notice and an opportunity to cure before applying an adverse inference to the facts available." Remand Order, 605 F. Supp. 3d at 1366. The subsequent Blue Pipe decision sustaining Customs' Evasion Determination does not invalidate this court's conclusion, based on the record in this case, that Commerce had failed to meet its obligations under § 1677m(d). See id. at 1369, see also Gov't Suppl. Reply at 6 ("[Wheatland] has not sufficiently explained how the [c]ourt's decision in Blue Pipe confirming

[Custom's] affirmative determination presents any change in the set of facts that were before this [c]ourt when issuing the <u>Remand Opinion</u>.").  The court concludes that subsequent decisions in the <u>Scope Appeal</u> and <u>Blue Pipe</u> do not provide a basis for remanding the <u>Remand Results</u> to Commerce for further consideration.

> ### III.    The <u>*Remand Results*</u> *Are Supported by Substantial Evidence and in Accordance With Law*

Recall that remand is warranted if the <u>Remand Results</u> are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."   <u>See</u> 19 U.S.C. § 1516a(b)(1)(B)(i); <u>SMA Surfaces</u>, 658 F. Supp. 3d at 1328.  Saha Thai and the Government argue that the <u>Remand Results</u> comply with the court's <u>Remand Order</u>, are supported by substantial evidence, and should be sustained.  Pl.'s Cmts. at 3; Gov't Reply at 4.  The Government further notes that Commerce's decision on remand to reopen the record "was consistent with 19 U.S.C. § 1677m(d) because Commerce explicitly allowed Saha Thai the chance to remedy a deficiency" in its prior submission.  Gov't Reply at 4.

Wheatland, as discussed previously, argues that the court should remand the <u>Remand Results</u> due to alleged errors in the underlying <u>Remand Order</u>.  Def.-Inter.'s Reply at 9.  Wheatland does not develop additional arguments based on Commerce's redetermination itself to support its claim that the <u>Remand Results</u> are unsupported by substantial evidence or not in accordance with law.  <u>See</u> <u>id.</u> at 16, 11–12.  Furthermore, no party now claims that there is a gap on the record regarding Saha Thai's sales of dual-stenciled pipe.  <u>See</u> Def.-Inter.'s Reply at 11 ("Commerce issued a questionnaire to Saha Thai that allowed it to report all the relevant details of its sales of dual-stenciled pipe."); Gov't Reply at 3 ("Saha Thai timely filed the requested response and supplemental response."); <u>see also</u> Pl.'s Cmts. at 2 (arguing that, with the Saha Thai's revised

questionnaire responses on the record, Commerce correctly "properly calculated Saha Thai's dumping margin, based on the company's reported data"). Given that Commerce has now calculated the dumping margin based on a complete record, there would be no basis for Commerce to apply facts available or an adverse inference on remand, as Wheatland suggests. See id. at 12; see also 19 U.S.C. § 1677e(a); Zhejiang, 652 F.3d at 1348.

## CONCLUSION

Commerce's decision to reopen the record on remand and its redetermination of the dumping margin for Saha Thai are supported by substantial evidence and in accordance with law. Commerce's Remand Results are sustained.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: February 4, 2026
        New York, New York